A

Dockets.Justia.com

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| GW EQUITY, LLC, | § § | |
| PLAINTIFF, | § § | |
| | § | CIVIL ACTION |
| v. | § § | No. _____ |
| XCENTRIC VENTURES, LLC, | § | |
| WWW.RIPOFFREPORT.COM, | § | |
| WWW.BADBUSINESSBUREAU.COM, | § | |
| and EDWARD MAGEDSON, | § § | |
| DEFENDANTS. | § | |

### AFFIDAVIT OF RYAN BINKLEY

THE STATE OF TEXAS     §
                       §
COUNTY OF DALLAS       §

On this day, before the undersigned authority, personally appeared Ryan Binkley, known to me to be the person whose name is subscribed hereto and under oath states:

1.   My name is Ryan Binkley. I am over the age of 21, have never been convicted of a felony or crime of moral turpitude, and am, in all ways, capable of making this Affidavit. The facts stated in this Affidavit are within my personal knowledge and are true and correct.

2.   I am currently employed as President of GW Equity, LLC ("GW Equity"). Based on my service in this capacity, I am personally familiar with the facts stated in this affidavit and the documents attached to this Affidavit as <u>Exhibit 3</u> through <u>Exhibit 9</u>.

I.   **The Parties**

3.   Plaintiff GW Equity is a Delaware Limited Liability Company with its principal place in Dallas, Texas. GW Equity is duly registered and licensed to do business in the state of Texas. GW Equity is a mergers & acquisitions firm in the middle market assisting clients in

EXHIBIT A

mergers, acquisitions, and strategic growth. With over three hundred professionals and employees. GW Equity brings a strategic domestic and international buying community to the middle market.

4. GW Equity has buyers, investors and other capital markets interested in GW Equity's inventory of companies. GW Equity therefore assists its customers in exit planning services including offering memorandum, evaluations, financial or ratio analysis and where appropriate, taking a customer to market.

5. GW Equity is not a $120 billion enterprise and is in no way related to a company known as Geneva Enterprises which is a subsidiary of CitiGroup. At no point in its history has GW Equity conducted business under the title of Geneva Enterprises. GW Equity has had no involvement or participation in a $45 million class action lawsuit that was based in Irvine, California.

6. Defendants Xcentric Ventures, LLC, www.ripoffreport.com, www.badbusinessbureau.com, and Edward Magedson (collectively, "Defendants") own and operate www.ripoffreport.com and www.badbusinessbueau.com (collectively, the "Websites") as centralized websites for publishing and posting alleged fraudulent business practices. Through their websites, Defendants purport to expose companies and individuals who "ripoff" consumers.

## II. Postings On Rip-off Report Regarding GW Equity

7. Beginning in November 2006, Defendants solicited, developed, created, authored, and published on the Websites numerous false and deceptively misleading statements of fact concerning GW Equity, its executives, and its employees to create the appearance that numerous businesses and clients are unhappy with GW Equity.

8. Additionally, portions of the reports on the Websites contain discussions of intellectual property and proprietary information that clearly belong to GW Equity. The information posted on the Websites contains facts that would only be known to GW Equity and essentially gives our competitors an unfair advantage now that this information has been revealed.

9. On November 2, 2006, the Defendants published and posted false, misleading, and disparaging statements about GW Equity on their websites and named the posting "GW Equity – Geneva Business Research – Geneva Companies – Geneva Marketing Services – Geneva Consulting Services rip off defrauded my company out of $30,000 for retainer to sell my business . . . The Truth about GW Equity and Geneva." Moreover, responses to this post include references that GW Equity is not related to Great Western Business Services, Inc. and they are two separate companies. I have attached a true and correct copy of this publication and posting to my affidavit as <u>Exhibit 3</u>.

10. On November 7, 2006, the Defendants published and posted false, misleading, and disparaging statements about GW Equity and its services on their websites and named the posting "Gw Equity, Geneva Corporate Finance, Geneva Capital Markets, wasted eight hours of my time then hit me up for $30K." I have attached a true and correct copy of this publication and posting to my affidavit as <u>Exhibit 4</u>.

11. On November 29, 2006, the Defendants published and posted false, misleading, and disparaging statements about GW Equity and its services on their websites and named the posting "GW Equity Wrongful Termination – Scam – perpetuating a fraud on the general public Dallas Texas." I have attached a true and correct copy of this publication and posting to my affidavit as <u>Exhibit 5</u>.

12. On November 29, 2006, the Defendants published and posted false, misleading, and disparaging statements about GW Equity on their websites and named the posting "GW Equity, Citibank, Citigroup, Citi Commerce Solutions M&A Business Consulting, paid $30,000 for an inflated analysis of company that has yielded no results New York New York." I have attached a true and correct copy of this publication and posting to my affidavit as <u>Exhibit 6</u>.

13. On November 29, 2006, the Defendants published and posted false, misleading, and disparaging statements about GW Equity and its services on their websites and named the posting "GW Equity, Citibank, Citigroup, Citi Commerce Solutions Big company Wasting Small Companies Time & Money New York New York." I have attached a true and correct copy of this publication and posting to my affidavit as <u>Exhibit 7</u>.

14. Immediately after learning of the postings regarding GW Equity, GW Equity's Office of General Counsel contacted the editor of Rip Off Report known as EDitor@ripoffreport.com and upon information and belief this was in fact Defendant Edward Magedson. The purpose of the inquiry was to explain the falsity of the information posted, to determine if there was a way to resolve the presence of numerous false and misleading statements on the Websites regarding GW Equity. GW Equity's Office of General Counsel asked Mr. Magedson to remove the false and misleading statements. Mr. Magedson, however, refused to remove the statements and demanded payment pursuant to the "Rip-off Report Corporate Advocacy Business Remediation & Customer Satisfaction Program." This is a program offered on Defendants' Websites that will resolve disputes between targeted companies and complainants if the targeted company pays Defendants a sum of money. After learning about this program, I perceived it to be nothing short of an extortion scheme and I refused to pay for these services.

### III. Loss of Existing and Potential Clients

15. Since Defendants have posted the false, misleading, disparaging, and defamatory statements about GW Equity, we have suffered severe business losses and other consequences. Specifically, the postings have disrupted GW Equity's ability to conduct business as most of our potential clients use Internet search engines to conduct due diligence about GW Equity. When potential clients discover the false postings about GW Equity on the Websites, they ultimately decide not to attend our educational seminars or to terminate their contracts with GW Equity. Since November 2006, GW Equity estimates a loss of at least eight clients per month due to Defendants' conduct.

16. The following non-exhaustive list represents potential clients who have decided not to pursue a business relationship with GW Equity in the last month due to the information on the Websites:

- On April 25, 2007, Total Immersion Software informed GW Equity that it was not interested in attending its conference after reading the statements on Defendants' Websites. GW Equity would have received $29,975.00 from this potential client.

- On May 2, 2007, Ledger Furniture Company informed GW Equity that it was not interested in attending its conference after reading the statements on Defendants' Websites. GW Equity would have received $29,975.00 from this potential client.

- On May 2, 2007, Salepoint, Inc. informed GW Equity that it was not interested in attending its conference after reading the statements on Defendants' Websites. GW Equity would have received $29,975.00 from this potential client.

- On May 3, 2007, Hubert Department Store informed GW Equity that it was not interested in attending its conference after reading the statements on Defendants' Websites. GW Equity would have received $29,975.00 from this potential client.

- On May 3, 2007, Wilson Corman & Taylor, LLC informed GW Equity that it was not interested in attending its conference after reading the statements

<ul>
<li>on Defendants' Websites. GW Equity would have received $29,975.00 from this potential client.</li>

<li>On May 7, 2007, Ames Lawn Care informed GW Equity that it was not interested in attending its conference after learning about the statements from another company who read the statements on Defendants' Websites. GW Equity would have received $29,975.00 from this potential client.</li>

<li>On May 8, 2007, Dave Brookhouse of Traffic Management Services, Inc. informed GW Equity that it was not interested in attending its conference after reading the statements on Defendants' Websites. GW Equity would have received $29,975.00 from this potential client.</li>

<li>On May 27, 2007, Communications Specialists informed GW Equity that it was not interested in attending its conference after reading the statements on Defendants' Websites. GW Equity would have received $29,975.00 from this potential client.</li>

<li>On May 28, 2007, Nigel Rhodes of American K-9 Interdiction, LLC informed GW Equity that it was not interested in attending its conference after reading the statements on Defendants' Websites. GW Equity would have received $29,975.00 from this potential client.</li>

<li>On May 31, 2007, Craig Looney of CompRep informed GW Equity that it was not interested in attending its conference after reading the statements on Defendants' Websites. GW Equity would have received $29,975.00 from this potential client.</li>

<li>On May 31, 2007, Jeff Lebowitz of The Laredo Group informed GW Equity that it was not interested in attending its conference after reading the statements on Defendants' Websites. GW Equity would have received $29,975.00 from this potential client.</li>
</ul>

17. In certain circumstances, GW Equity has received written correspondence from potential clients explaining their reasons for deciding not to pursue a business relationship with GW Equity. For instance, on December 4, 2006, GW Equity received a letter from Karl Fikar, an attorney at the law firm of Cleall Barristers Solicitors who represented Arttec Advertising, Inc. The letter was sent to Ray Wood of GW Equity's Office of General Counsel and I have attached a true and correct copy of this letter to my affidavit as <u>Exhibit 8</u>. After reading the statements about GW Equity on Defendants' Websites, Mr. Fikar explained that he and his client



became concerned about the business practices of GW Equity and decided to terminate their relationship with GW Equity. As a direct result of the false and misleading statements on Defendants' Websites, GW Equity was forced to refund Arttec Advertising, Inc. the contractually agreed upon payment for services to be rendered by GW Equity. This refund took place on or about December 19, 2006.

18.    In addition to the loss of business described above, other potential clients have demanded refunds from GW Equity after reading Defendants' false and misleading statements on the Websites. GW Equity has refunded money to the following clients in recent months:

- On January 4, 2007, GW Equity refunded American Furniture Liquidators $19,500.00 after they read Defendants' false and misleading statements on the Websites and questioned GW Equity's business practices.

- On January 29, 2007, GW Equity refunded Hargrave Dewayne $14,988.00 after they read Defendants' false and misleading statements on the Websites and questioned GW Equity's business practices.

- On February 6, 2007, GW Equity refunded Honquest Furniture $29,500.00 after they read Defendants' false and misleading statements on the Websites and questioned GW Equity's business practices.

- On March 2, 2007, GW Equity refunded Cardinal Fasteners $29,975.00 after they read Defendants' false and misleading statements on the Websites and questioned GW Equity's business practices.

- On April 29, 2007, GW Equity refunded Mary Nash $29,975.00 because after they read Defendants' false and misleading statements on the Websites and questioned GW Equity's business practices.

19.    GW Equity continues to suffer ongoing injury with respect to the false and misleading statements on Defendants' Websites in other ways as well. In May 2007, GW Equity learned that the false and misleading statements from Defendants' Websites were republished in *The Business Owner*, a bi-monthly business magazine that has approximately 30,000 subscribers, in an article entitled "Scam Alert: GW Equity?". I have attached a true and correct copy of this

publication and posting to my affidavit as <u>Exhibit 9</u>. Because of the wide distribution of this article regarding the business practices of GW Equity, the falsity of the statements contained on the Websites have continued to have a severe impact on GW Equity's reputation and goodwill. In fact, due to this article and the false and misleading statements contained therein, we almost lost our business relationship with our long-time certified public account.

### IV. **Irreparable Harm**

20. The false and misleading postings by Defendants on the Websites have disrupted GW Equity's ability to conduct business. The majority of GW Equity's client base uses the Internet to learn more information about our company. Yet, when potential clients discover the false postings regarding GW Equity, they decline to do business with us. Despite GW Equity's efforts to neutralize the persuasive force of the false and misleading statements on the Websites, Defendants' conduct has caused us to lose at least eight customers per month and has severely damaged GW Equity's business and reputation.

21. If the Defendants are not forced to remove the so-called "Rip-off Reports" regarding GW Equity from the Websites, GW Equity's will continue to suffer immediate and irreparable economic damage. The Defendants have refused to comply with GW Equity's reasonable requests to remove the false postings and delete every false statement of fact regarding GW Equity's business. Because GW Equity does not have the ability to monitor every person who accesses the Defendants' Websites and explain that the statements posted there are false, GW Equity will continue to lose potential clients at an increasing rate.

22. GW Equity does not have an adequate remedy at law for money damages in the event that the defamatory "Rip-off Reports" regarding GW Equity remain on the Defendants' Websites.

23. Defendants will not be prejudiced at all by taking down the false and misleading postings on the Websites because there is no evidence that they will suffer any damages.

24. Unless this Court grants the requested relief, GW Equity will be irreparably harmed because the loss of existing and potential clients would cause GW Equity to suffer irreparable economic harm in that GW Equity may never be able to get those relationships back.

25. I affirm under penalty of perjury that, to the best of my knowledge and belief, the above is true and correct.


AFFIANT SAYETH NOTHING FURTHER.

_____
RYAN BINKLEY

Subscribed and sworn to before me, this 1st day of June, 2007.

_____
Notary Public in and for the State of Texas

CHARITY L. PLATT
Notary Public, State of Texas
My Commission Expires
OCT. 31, 2009

My Commission Expires: 10/31/09

SEAL: