## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

| | | |
|---|---|---|
| GW EQUITY, LLC, | § | |
| | § | |
| PLAINTIFF, | § | |
| | § | CIVIL ACTION |
| v. | § | |
| | § | No. 3-07-CV-0976-K |
| XCENTRIC VENTURES, LLC, | § | |
| WWW.RIPOFFREPORT.COM, | § | |
| WWW.BADBUSINESSBUREAU.COM, | § | |
| and EDWARD MAGEDSON, | § | |
| | § | |
| DEFENDANTS. | § | |

---

## PLAINTIFF'S BRIEF IN SUPPORT OF ITS
## APPLICATION FOR A PRELIMINARY INJUNCTION

---

John T. Cox III
Texas Bar No. 24003722
**LYNN TILLOTSON & PINKER, LLP**
750 North Saint Paul Street, Suite 1400
Dallas, Texas 75201
(214) 981-3800
(214) 981-3839 Fax

**ATTORNEY FOR PLAINTIFF**

Dockets.Justia.com

# TABLE OF CONTENTS

TABLE OF CONTENTS ................................................................................................ i

TABLE OF AUTHORITIES ......................................................................................... ii

I.     BACKGROUND & PROCEDURAL HISTORY ................................................. 1

II.    DEFENDANTS' ACTIONS ENTITLE GW EQUITY TO A PRELIMINARY INJUNCTION ........................................................................ 4

    A.    There Is A Substantial Likelihood Of Success On The Merits................... 4

        1.    GW Equity Will Likely Succeed On Its Claim For Defamation/Libel ............................................................................5

        2.    GW Equity Will Likely Succeed On Its Claim For Business Disparagement ..................................................................8

        3.    GW Equity's Claims Are Not Barred By The Communications Decency Act.....................................................10

            A.    Defendants Are Information Content Providers ...............11

            B.    Defendants Are Not Acting As An Conduit For Information Originating From Third-Parties .........................................13

    B.    GW Equity Will Suffer Immediate And Irreparable Harm ..................... 14

    C.    The Threatened Harm To GW Equity Vastly Exceeds Any Possible Injury To Defendants.................................................................. 15

    D.    Issuing A Preliminary Injunction Against Defendants Serves The Public Interest ............................................................................... 16

    E.    This Court Has The Ability To Tailor An Injunction To Meet The Violations And Serve The Public Interest ................................................ 16

    F.    GW Equity Should Not Be Required To Post A Bond............................. 17

CONCLUSION & PRAYER......................................................................................... 18

## TABLE OF AUTHORITIES

### CASES

*Alexander v. United States*, 509 U.S. 544 (1993) .............................................................. 10

*Ben Ezra, Weinstein & Co. v. AOL*, 206 F.3d 980 (10th Cir. 2000) ................................. 11

*Cain v. Hearst Corp.*, 878 S.W.2d 577 (Tex. 1994) ........................................................... 5

*Califano v. Yamasaki*, 442 U.S. 682 (1979) ....................................................................... 9

*Carafano v. Metrosplash.com, Inc.*, 207 F. Supp. 2d 1055 (C.D. Cal. 2002) .................. 13

*Casarez v. Val Verde County*, 957 F. Supp. 847 (W.D. Tex. 1997) ................................... 4

*Cherokee Pump & Equip. Inc. v. Aurora Pump*, 38 F.3d 246 (5th Cir. 1994) .................. 4

*Commercial Hudson Gas & Elec. Corp. v. Public Serv. Comm'n*, 447 U.S. 557 (1980) ... 9

*Forbes v. Granada BioSciences*, 124 S.W.3d 167 (Tex. 2003) ........................................... 8

*Friedman v. Rogers*, 440 U.S. 1, 10 (1979) ................................................................. 9, 10

*Genderm Corp. v. Biozone Labs.*, No. 92-C-2533, 1992 WL 220638 (N.D. Ill. Sept. 3, 1992) ................................................................................................................................. 16

*Ibanez Fla. Dep't of Bus. & Prof'l Regulation*, 512 U.S. 136 (1994) ................................ 9

In *MCW, Inc. v. Badbusinessbureau.com*, No. 3:02-CV-2727-G, 2004 WL 833595 (N.D. Tex. Apr. 19, 2004) ................................................................................................. 11, 13

*Kaepa, Inc. v. Achilles Corp.*, 76 F.3d 624 (5th Cir. 1996) ............................................. 17

*Lakedreams v. Taylor*, 932 F.2d 1103, n.11 (5th Cir. 1991) .............................................. 4

*Proctor & Gamble Co. v. Amway Corp.*, 242 F.3d 539 (5th Cir. 2001), *cert. denied*, 534 U.S. 945 (2001) ............................................................................................................... 9

*Ramada Franchise Sys., Inc. v. Jacobcart, Inc.*, No. 3:01-CV-0306D, 2001 WL 540213 (N.D. Tex. May 17, 2001). ............................................................................................... 4

*Rent-A-Center West, Inc. v. Aaron Rents, Inc.*, No. 3:03-CV1595-K, 2004 WL 813225 (N.D. Tex. Apr. 14, 2004) .............................................................................................. 16

*WFAA-TV v. McLemore*, 978 S.W.2d 568 (Tex. 1998) ....................................................... 5

*Zeran v. AOL*, 129 F.3d 327 (4th Cir. 1997) ..................................................................... 11

### STATUTES

47 U.S.C. § 230 ........................................................................................................... 10, 13

### RULES

FED. R. CIV. P. 65 ............................................................................................................... 17

Tex. Civ. Prac. & Rem. Code § 73.001 ................................................................................ 5

TO THE HONORABLE COURT:

Plaintiff GW Equity, LLC ("GW Equity") respectfully requests that the Court enter a preliminary injunction preventing Defendants Xcentric Ventures, LLC, www.ripoffreport.com, www.badbusinessbureau.com, Edward Magedson (collectively, the "Defendants") from engaging in conduct in violation of Plaintiff's rights. In support of its initial request for injunctive relief, Plaintiff files this brief to more fully explain the legal grounds and factual bases to this Court that support the issuance of a preliminary injunction. Because Plaintiff has been and continues to be irreparably harmed by the false and misleading postings on Defendants' websites, Plaintiff is entitled to the preliminary injunction it hereby seeks. In addition, Defendants are not entitled to immunity under the Communications Decency Act ("CDA") because GW Equity is not attempting to hold Defendants liable as the publisher or speaker of any information provided by a third-party but only for their own statements and actions.

## I.

## BACKGROUND & PROCEDURAL HISTORY

GW Equity is a well-known and respected mergers and acquisition firm that offers assistance to clients in mergers, acquisitions, and strategic growth. Original Complaint for Damages and Emergency Application for Injunctive Relief ("Original Complaint") ¶ 10, Apx. at 000006. GW Equity conducts educational seminars and informational conferences that provide business owners an overview of the necessary processes of how and when to sell a private middle-market business for maximum value. *Id.* In order to promote its products and services, GW Equity created Internet websites to enable customers to learn about the company and its educational programs, and provide a means for clients to register for upcoming conferences. *Id.*

¶ 11, Apx. at 000006. GW Equity relies heavily on Internet search engines to direct potential clients to its websites. *Id.*

In November 2006, GW Equity learned that certain statements regarding its business practices and reputation could be found on two websites, www.ripoffreport.com and www.badbusinessbureau.com (collectively, the "Websites"). *Id.* ¶ 20, Apx. at 000009. The two Websites are actively controlled and maintained by Defendants Xcentric Ventures, LLC and Edward Magedson,[1] and purport to expose companies who "rip-off" customers. *Id.* ¶¶ 12-13, Apx. at 000007. Defendants post consumer complaints on the Websites, organizing the complaints geographically by company and under various other headings. *See* www.ripoffreport.com Webpage, Apx. at 000025-000028. Over the course of November 2006, Defendants posted five complaints or reports regarding the business practices and reputation of GW Equity. *Id.* ¶¶ 20-24, Apx. at 00058-00076. All of the information contained on these postings stated that GW Equity was affiliated with a company known as Geneva Enterprises, a subsidiary of Citigroup. *Id.* These statements are false and misleading assertions of fact. *See* Affidavit of Ryan Binkley ("Binkley Affidavit") ¶ 5, Apx. at 000050.

Shortly after GW Equity discovered the false and misleading statements on the Websites, GW Equity contacted the editor of the Websites at EDitor@ripoffreport.com. *Id.* ¶ 14, Apx. at 000052; Original Complaint ¶ 26, Apx. at 000011-000012. GW Equity explained the falsity of the information and requested that the false and misleading statements be removed from the Websites. Original Complaint ¶ 26, Apx. at 000011-000012. Defendants, however, refused to

---

[1] Xcentric Ventures, LLC ("Xcentric") and www.ripoffreport.com and www.badbusinessbureau.com (collectively, the "Websites") are nothing more than Defendant Magedson's alter ego because their acts and statements are inextricably intertwined. Defendant Magedson repeatedly states on the Websites that he is the creator and editor of the "Rip Off Report" and even authors and electronically signs many of the false and defamatory reports. *See, e.g.*, Reports from www.ripoffreport.com authored by Defendant Magedson, Apx. at 000079-000102 (identifying Magedson as the author of the posts on the Websites).

remove the false and misleading statements and instead demanded payment for remedying the falsities pursuant to the "Rip-off Report Corporate Advocacy Business Remediation & Customer Satisfaction Program." *Id*. GW Equity refused to pay for these services and participate in this form of corporate extortion. *Id*.

The existence of such statements on the Internet is particularly alarming to GW Equity because Defendants do not merely host complaints and reports on the Websites. Instead, Defendants also engage in aggressive marketing practices on the Internet. *Id*. ¶ 15, Apx. at 000007. The information contained in the so-called "Rip-off Reports" receives high placement on Internet search engines because Defendants include GW Equity's name in the caption of pages on the Websites, in report titles, and in metatags. *Id*. As a result, when potential clients use search engines to find out more information about GW Equity, they find results which feature high-placed links to one or more reports published on the Websites. *Id*. Clients that follow the links to the Websites are referred to the Websites containing the false and misleading information regarding GW Equity's business and reputation. *Id*. As of today, the false and misleading statements regarding GW Equity remain on the Defendants' Websites and GW Equity continues to suffer severe economic consequences to its business and reputation.

GW Equity filed its Original Complaint against Defendants expressly alleging that Defendants have participated in a pattern of wrongful conduct by developing, creating, writing, publishing, and posting defamatory information about GW Equity through the Websites on June 1, 2007. *See generally* Original Complaint, Apx. at 000003-000078. Based on the facts stated above, GW Equity seeks to enjoin Defendants from disseminating, using, publishing, maintaining and hosting such defamatory information regarding GW Equity on the Websites

because they have significantly disrupted GW Equity's ability to conduct business. *Id.* ¶¶ 72-81, Apx. at 000020-000022.

## II.

## DEFENDANTS' ACTIONS ENTITLE GW EQUITY TO A PRELIMINARY INJUNCTION

This Court has the power to grant a preliminary injunction if the movant demonstrates the following prerequisites: (1) a substantial likelihood of success on the merits; (2) a substantial threat of immediate and irreparable harm for which it has no adequate remedy at law; (3) that greater injury will result from denying the preliminary injunction than from its being granted; and (4) that a preliminary injunction order will not disserve the public interest. *Cherokee Pump & Equip. Inc. v. Aurora Pump*, 38 F.3d 246, 249 (5th Cir. 1994). As demonstrated below, GW Equity fulfills each of these requirements.

### A.    There Is A Substantial Likelihood Of Success On The Merits

To satisfy the element of substantial likelihood of success, GW Equity need not prove its case with absolute certainty. *See Lakedreams v. Taylor*, 932 F.2d 1103, 1109 n.11 (5th Cir. 1991). Courts have determined that "[a] reasonable probability of success, not an overwhelming likelihood, is all that need be shown for preliminary injunctive relief." *Casarez v. Val Verde County*, 957 F. Supp. 847, 858 (W.D. Tex. 1997). Thus, this Court need only look to whether one of GW Equity's asserted claims has a substantial likelihood of success. *See Ramada Franchise Sys., Inc. v. Jacobcart, Inc.*, No. 3:01-CV-0306D, 2001 WL 540213, at *1 (N.D. Tex. May 17, 2001).

In its Original Complaint, GW Equity asserted several causes of action against Defendants, including claims for defamation and business disparagement.[2]  *See* Original Complaint ¶¶ 29-38, 45-51, Apx. at 000012-000014.  Based on the facts and evidence GW Equity has presented to this Court, there is a strong likelihood of success on the merits of both of these claims.  *See also* Order of Proof, Apx. at 000103-000105 (outlining the facts and evidence GW Equity has to support the elements of both of these claims).

### 1.    *GW Equity Will Likely Succeed On Its Claim For Defamation/Libel*

In order to maintain a cause of action for defamation, GW Equity must establish that: (1) the defendant published a false statement; (2) that was defamatory to the plaintiff, in that it damaged the plaintiff's reputation, exposing him to financial injury; and (3) the defendant made the statement negligently as to its truth.  *See WFAA-TV v. McLemore*, 978 S.W.2d 568, 571 (Tex. 1998).  A statement is defamatory when it tends to injure the reputation or to impeach characteristics of honesty, integrity, or virtue thereby exposing one to public hatred, contempt, ridicule, or financial injury.  *See* TEX. CIV. PRAC. & REM. CODE § 73.001; *Cain v. Hearst Corp*., 878 S.W.2d 577, 580 (Tex. 1994).

In the instant case, GW Equity will likely succeed on the merits of its claim for defamation.  Defendants openly published statements of fact regarding GW Equity on the Websites.  *See* Exhibits 3-7 to the Binkley Affidavit, Apx. at 000058-000076; Deposition Transcript of Dickson Earl Woodward ("Woodward Deposition") at Vol. I, 183:6-8, 237:18-238:11, Apx. at 000106-000117.  Specifically, Defendants made the following misleading assertions of fact regarding GW Equity's business practices on the Websites:

---

[2] The other causes of actions in GW Equity's Original Complaint included: (1) tortious interference with existing and prospective business relations; (2) conspiracy; and (3) violations of the Racketeer Influenced and Corrupt Organizations Act (RICO).  *See* Original Complaint ¶¶ 39-44, 52-71, Apx. at 000014-000020.

- On November 2, 2006, Defendants published on the Websites that "GW Equity is actually a $120 billion dollar enterprise called Geneva Business Research that settled a $45 Million dollar class action suit in March 2003 in Irvine California 'for defrauding thousands of small businesses out of monies paid in advance.'" Additionally, Defendants published on the Websites that "[t]hey have changed their name to GW Equity and subsequently moved to Dallas, Texas" and "GW Equity is another fraud under a different name that just moved to another State." Exhibit 3 to Binkley Affidavit, Apx. at 000058-000063.

- On November 7, 2006, Defendants published on the Websites that "Gw Equity, Geneva Corporate Finance, Geneva Capital Markets, wasted eight hours of my time then hit me up for $30K Dallas Texas" and "GW Equity Is STILL a Rip-off." Exhibit 4 to Binkley Affidavit, Apx. at 000064-000067.

- On November 29, 2006 published on the Websites that GW Equity was "Scam - perpetuating a fraud on the general public Dallas Texas." Additionally, Defendants published on the Websites that "[t]here are NO investors or any kind of buyers that this company has for the victims that it assaults on an hourly basis." Exhibit 5 to Binkley Affidavit, Apx. at 000068-000069.

- On November 29, 2006, Defendants published on the Websites that "GW Equity is actually a $120 billion dollar enterprise called Geneva Business Research that settled a $45 Million dollars class action suit in March 2003 in Irvine California 'for defrauding thousands of small businesses out of monies paid in advance.'" Additionally, Defendants published on the Websites that "[t]hey have changed their name to GW Equity and subsequently moved to Dallas, Texas." Exhibit 6 to Binkley Affidavit, Apx. at 000070-000073.

- November 29, 2006, Defendants published on the Websites that "Gw Equity, Citibank, Citigroup, Citi Commerce Solutions Big company Wasting Small Companies Time & Money." Exhibit 7 to Binkley Affidavit, Apx. at 000074-000076.

These statements were disseminated to an indeterminate number of third-parties who visit Defendants' Websites each day. These statements and comments on the Websites regarding GW Equity refer both to GW Equity's business practices and reputation and all are unmistakably false. According to Mr. Binkley, President of GW Equity, GW Equity has no relationship whatsoever to Geneva Enterprises, which is a subsidiary of Citigroup, and does not conduct business under the title of Geneva Enterprises. *See* Binkley Affidavit ¶ 5, Apx. at 000050.

Additionally, a former employee of GW Equity testified under oath that these specific statements regarding GW Equity and its alleged relationship with Geneva Enterprises were false and were written by Defendants. *See* Woodward Deposition, Vol. II, 414:1-18, 480:15-481:2, Apx. at 000118-000126. This evidence clearly demonstrates that Defendants have published false statements of facts about GW Equity.

Because GW Equity's business relies heavily on Internet advertising, these statements are harmful to GW Equity's business and reputation. Defendants know the false and misleading statements on their Websites will harm GW Equity's business. Yet, Defendants intentionally continue to develop, host, and disseminate such statements regarding GW Equity on the Websites and encourage Internet users to access this unlawful content through the use of metatags and other means. GW Equity has presented substantial evidence to this Court that it has lost existing and potential clients as a direct result of Defendants' statements on the Websites. *See* Binkley Affidavit ¶¶ 15-19, Apx. at 000051-000054; Supplemental Affidavit of Ryan Binkley ("Supplemental Binkley Affidavit") ¶ 4, Apx. at 000128-000129. GW Equity has had existing clients inquire as to the veracity of Defendants' statements and, even after receiving GW Equity's explanation, these clients have demanded a refund. *See* Binkley Affidavit ¶¶ 17-18, Apx. at 000054-000055. Likewise, other potential clients, even after receiving GW Equity's explanation, have declined to initiate a business relationship with GW Equity. *See* Binkley Affidavit ¶¶ 15-16, Apx. at 000053-000054.

Consequently, there can be no question that GW Equity will likely prove that Defendants' statements and comments on the Websites have impugned the integrity of its business thereby causing clients to question whether they could ever trust any of GW Equity's representations regarding their products and services.

**2.    *GW Equity Will Likely Succeed On Its Claim For Business Disparagement***

To prevail on its business disparagement claim, GW Equity must establish (1) that absent any privilege, (2) the Defendants published disparaging and false words about their economic interests, (3) with malice, (4) that caused special damages. *See Forbes v. Granada BioSciences*, 124 S.W.3d 167, 170 (Tex. 2003) (citing *Hurlbut v. Gulf Atlantic Life Ins.*, 749 S.W.2d 762, 766 (Tex. 1987)).   To prove malice, GW Equity will have to show that Defendants knew their statements were false, acted with a reckless disregard concerning the falsity of their statements, or acted with ill will or intended to interfere in GW Equity's economic interests in an unprivileged fashion.    *Hurlbut*, 749 S.W.2d at 766.    Special damages are proved when Defendants "establish pecuniary loss that has been realized or liquidated as in the case of specific lost sales . . . . The communication must play a substantial part in inducing others not to deal with [GW Equity] with the result that special damage, in the form of loss of trade or other dealings is established."  *Id*. at 767.

GW Equity can demonstrate a substantial likelihood of proving the elements for this cause of action as well.   <u>First</u>, as explained above, GW Equity can prove that each of the statements on Defendants' Websites were false and disparaging assertions of fact regarding GW Equity's business and reputation.   *See* Binkley Affidavit ¶ 5, Apx. at 000050; Woodward Deposition, Vol. II, 414:1-18, 480:15-481:2, Apx. at 000118-000126.   <u>Second</u>, because Defendants had no basis for making these statements, it is abundantly clear that they acted with ill will in making such false statements.   Significantly, GW Equity contacted Defendants immediately after discovering the false and misleading statements on the Websites.   *See* Binkley Affidavit ¶ 14, Apx. at 000052.   Nevertheless, after repeated requests by GW Equity, Defendants refused to correct or remove the false and misleading statements from the Websites.   *Id*.

**Plaintiff's Brief in Support of its**
**Application for a Preliminary Injunction**                                                    **Page 8**
**02033-701/163370**

Defendants instead demanded that GW Equity pay them a substantial amount of money to enter into the "Rip-off Report Corporate Advocacy Business Remediation & Customer Satisfaction Program"—a program that Defendants offered to companies who experienced hardship due to the statements Defendants posted on the Websites. *Id.* Such actions taken by Defendants is evidence that they acted with malice to disparage GW Equity's business and reputation in order to extort money out of it.

<u>Third</u>, Defendants cannot provide any evidence that their disparaging conduct is somehow protected by a recognized privilege. As fully addressed *infra*, Defendants cannot provide any evidence to this Court that the CDA immunized their wrongful conduct. Similarly, Defendants cannot find refuge under the First Amendment for their false and misleading speech. It is well-established that false or misleading commercial speech may be prohibited in its entirety. *See Ibanez Fla. Dep't of Bus. & Prof'l Regulation*, 512 U.S. 136, 142 (1994); *Proctor & Gamble Co. v. Amway Corp.*, 242 F.3d 539, 557 (5th Cir. 2001), *cert. denied*, 534 U.S. 945 (2001). Commercial speech has been defined as "expression related solely to the economic interests of the speaker and its audience." *Commercial Hudson Gas & Elec. Corp. v. Public Serv. Comm'n*, 447 U.S. 557, 562 (1980). "[C]ommercial speech is more objective, and hence more verifiable, than other varieties of speech." *Friedman v. Rogers*, 440 U.S. 1, 10 (1979). Further, "because of its importance to business profits, and because it is carefully calculated, [it] is also less likely than other forms of speech to be inhibited by proper regulations." *Id.* For these reasons, restraints are appropriate to prevent speech from being deceptive.[3] *Id.*

---

[3] An injunction may be granted, even in the presence of First Amendment issues, if it is "no more burdensome to the defendant than necessary to provide complete relief to the plaintiffs." *Califano v. Yamasaki*, 442 U.S. 682, 702 (1979). In the instant case, GW Equity is not seeking to foreclose opinions posted on Defendants' Websites, rather GW Equity only seeks to foreclose the posting of false and defamatory information which has damaged and continues to damage GW Equity's reputation and goodwill.

In this case, because Defendants' statements are false and misleading, they should be restrained from maintaining such statements on the Websites as well as encouraging and soliciting consumers to post false complaints under the guise of "consumer advocacy." Even if the false commercial speech on Defendants' Websites can be considered "intertwined" with political or social speech, enjoining Defendants from posting false and defamatory statements about GW Equity in no way limits Defendants from continuing to engage in commentary or other forms of protected free speech. Defendants will therefore be unsuccessful in asserting the First Amendment privilege as a defense against GW Equity's claim for business disparagement.[4]

Finally, GW Equity has demonstrated special damages in the form of lost sales and loss of trade directly caused by Defendants' statements. *See* Binkley Affidavit ¶ 15-19, Apx. at 000053-000056; Supplemental Binkley Affidavit ¶¶ 4-6, Apx. at 000128-000130. For these reasons, there is a substantial likelihood that GW Equity will succeed on its business disparagement claim.

### 3.    *GW Equity's Claims Are Not Barred By The Communications Decency Act*

The CDA cannot be used as a means for Defendants to avoid liability. GW Equity's lawsuit is not about Defendants merely hosting websites. Rather, it is about Defendants acting as information content providers by creating, authoring, writing, providing, and posting false, misleading, defamatory and disparaging information on the Websites about GW Equity. The plain language of the CDA confirms that this statute has no application under the facts of this case.

---

[4] Additionally, entry of a preliminary injunction in this case cannot be construed as a prior restraint under the First Amendment. A prior restraint is an administrative or judicial order forbidding certain communications when issued in advance of the time that such communications are to occur. *See Alexander v. United States*, 509 U.S. 544, 550 (1993). Because Defendants' statements are commercial speech that intends to cause deception and confusion, such speech is not constitutionally protected and the prohibition against prior restrains is inapplicable here. *See Friedman*, 440 U.S. at 10.

The CDA provides that "[n]o provider or user of an interactive computer service shall be treated as the publisher or speaker of any information provided by another information content provider."[5]  47 U.S.C. § 230(c)(1).  For this immunity to be applicable in this case, Defendants must demonstrate: (1) that neither Xcentric nor Magedson is an information content provider with respect to the information that was posted; and (2) that GW Equity seeks to hold both Xcentric and Magedson liable for information originating with a third-party.

### a.    Defendants Are Information Content Providers

The CDA does not provide immunity to Defendants because they are the parties that posted the defamatory information that is the subject of the instant action.  The CDA defines "information content provider" as "any person or entity that is responsible, in whole or in part, for the creation or development of information provided through the Internet or any other interactive computer service."  *Id.* § 230(f)(3).  Courts interpreting the CDA have consistently held that the CDA does not immunize any person or entity, including an interactive computer service, with respect to information they themselves develop or create.  *See, e.g., Ben Ezra, Weinstein & Co. v. AOL*, 206 F.3d 980, 985 n.4 (10th Cir. 2000) (noting that the CDA "would not immunize Defendant with respect to information Defendant developed or created by itself"); *Zeran v. AOL*, 129 F.3d 327, 330 (4th Cir. 1997) (noting that "[n]one of this means . . . that the original culpable party who posts defamatory messages would escape accountability").  Notably, one court in the Northern District of Texas has previously considered this precise issue under facts identical to those in the present case.  In *MCW, Inc. v. Badbusinessbureau.com*, No. 3:02-

---

[5] The term "interactive computer service" is defined as "any information service, system, or access software provider that provides or enables computer access by multiple users to a computer server, including specifically a service or system that provides access to the Internet and such systems operated or services offered by libraries or educational institutions."  *Id.* § 230(f)(2).  Despite what Defendants may claim, there is no absolutely no evidence that Defendant Magedson, an individual, is an interactive computer service that provides or enables computer access by multiple users to a computer server.  Therefore, Defendants cannot enjoy immunity under the CDA as an interactive computer service.

CV-2727-G, 2004 WL 833595, at *9 n.10 (N.D. Tex. Apr. 19, 2004), the court found that defendants Magedson and www.badbusinessbureau.com did not qualify for immunity under the CDA because they created titles such as "con artists," "scam," and "Ripoff" on the websites, and created similar titles to categorize the reports created by the defendants. The court determined that immunity under the CDA was not available to the defendants due to the fact that the defendants authored and created original content on the websites. *Id*. at *10.

Here, GW Equity's Original Complaint is based solely on the allegations that Defendants have developed, created, written, authored and posted on the Websites false, misleading, disparaging and defamatory messages concerning GW Equity. Defendants do not just provide a website for people to post information they choose. Instead, Defendants take an active role in determining postings, including false and misleading information. For instance, Defendants create all of the titles to the postings. The titles to the postings contain defamatory statements, and include words in the titles such as "rip-off," "fraud," and "scam," to describe companies like GW Equity. *See* Original Complaint ¶ 16, Apx. at 000008; *see also* Exhibits 3-7 to Binkley Affidavit, Apx. at 000056-000074. Defendants also categorize postings under several headings, including one entitled "Corrupt Companies" that was used to group a report regarding GW Equity. *See id*. ¶ 17, Apx. at 000008; *see also* Exhibit 3 to Binkley Affidavit, Apx. at 000056-000061.

Further, Defendants openly alter report titles on these specific reports to reflect how companies have suddenly gone from "bad" to "good" after submitting to Defendants' remediation program as a means to remedy the false and misleading statements already posted on Defendants' Websites. *See* Various Reports from www.ripoffreport.com authored by Defendant Magedson, Apx. at 000079-000102. In these reports, Defendants Magedson provides *his own*

explanation regarding the results of the investigation and signs the report as the author of the material expressed therein. *See id.* Finally, Defendants contributed to and developed the content on the Websites through information they wrote, created, and posted. *See* Woodward Deposition, Vol. I, 146:24-149:3, 183:6-8, 236:13-237:13, 237:18-238:11; Vol. II, 293:6-20, 300:2-10, 480:15-481:2, Apx. at 000106-000126. As a result, this Court should find Defendants' actions were "responsible, in part, 'for the creation or development of information'" on the Websites. Indeed, the plain language of the CDA requires this Court to find that Defendants are information content providers under the statute, and "the immunity of Section 230 does not extend to [them] as a matter of law." *Carafano v. Metrosplash.com, Inc.*, 207 F. Supp. 2d 1055, 1067 (C.D. Cal. 2002); *see also MCW, Inc.*, 2004 WL 833595, at *10.

### b.    Defendants Are Not Acting As An Conduit For Information Originating From Third-Parties

Defendants are also not entitled to immunity under the CDA because GW Equity is not seeking to hold Defendants liable as "the publisher or speaker of any information provided by another information content provider." 47 U.S.C. § 230(c)(1). All of GW Equity's claims against Defendants are not based on an assertion that Defendants are the "publisher or speaker" of information provided by a third-party. Instead, Defendants are named because of their own actions in creating, developing and posting original, defamatory information concerning GW Equity. Defendants here are not acting as a conduit for the information but have instead taken an active role in creating and developing the false and defamatory information that gets posted on the Websites. Accordingly, Defendants cannot find protection for their own actions and publications under the CDA.

**B.**    <u>**GW Equity Will Suffer Immediate And Irreparable Harm**</u>

GW Equity has been and will continue to suffer immediate and irreparable damage if Defendants are not enjoined during the pendency of this lawsuit from disseminating, maintaining, hosting, using, or publishing false, misleading, disparaging and defamatory words and comments regarding GW Equity on the Websites.  GW Equity's remedies at law are inadequate to compensate it for this harm and damage.  Despite repeated requests from GW Equity to remove the false and misleading statements on the Websites, Defendants have continued to host such statements fully aware of the detrimental effect its acts have on GW Equity's business and reputation.  Every day that Defendants continue to host such false and misleading statements on the Websites severely impacts GW Equity's ability to form new business relationships with potential clients and persuades current clients to end their business relationships with GW Equity.

Since filing its Original Complaint approximately one week ago, GW Equity has continued to suffer the consequences of the false and misleading statements on the Websites. Nine more potential clients informed GW Equity this week that they were not interested in pursuing a business relationship with GW Equity after reading the statements on Defendants Websites.  GW Equity would have received a total of $269,775.00 from these nine potential clients.  *See* Supplemental Binkley Affidavit ¶ 4, Apx. at 000128-000129.  This new evidence coupled with the evidence GW Equity has already filed before this Court clearly establishes that the losses GW Equity continues to suffer are mounting weekly if not daily.  Such losses are essentially only the tip of the iceberg for GW Equity.  While GW Equity has knowledge of lost clients like those described above, it is virtually impossible for it to know how many cancellations, non-calls from potential clients, and lost commissions it has lost and will continue

to lose due to Defendants' false and misleading statements.  *Id.* ¶¶ 5-7, Apx. at 000128-000130.

Because GW Equity cannot control who visits Defendants' Websites and who reads the false and misleading statements about it, GW Equity has no ability to neutralize the damaging effect Defendants' statements have on its clients.  As a result, unless Defendants are enjoined from disseminating and hosting such statements regarding GW Equity on the Websites, GW Equity's known losses as well as its unknown losses will continue to grow at an exponential rate.

In addition to the loss of business, GW Equity will suffer irreparable injury to its reputation and goodwill if an injunction is not entered.  GW Equity has devoted and continues to devote enormous amounts of time, money and effort into promoting its products and services on the Internet to direct potential clients to its websites.  As a product of these efforts, GW Equity has developed a well-deserved reputation for excellent client service.  It is precisely to preserve and protect this goodwill that GW Equity has developed with its clients that it now requests Defendants to be enjoined from engaging in the acts alleged above.  Only equity, in the form of an injunction, can offer full relief to GW Equity.

## C.  The Threatened Harm To GW Equity Vastly Exceeds Any Possible Injury To Defendants

In the instant case, there can be no question that should this Court require Defendants to remove the false and misleading statements from the Websites no harm will result to them.  As the operators of the Websites, Defendants do not make a profit by maintaining this information on the Websites.  Thus, they will not suffer *any* monetary losses if they are forced to remove the false and misleading statements regarding GW Equity.  Notably, the only potential "profit" Defendants experience as operators of the Websites is the money they receive by forcing companies—in positions similar to GW Equity—to submit to the "Rip-off Report Corporate

Advocacy Business Remediation & Customer Satisfaction Program."  Accordingly, Defendants have no legitimate or honest business interest in disseminating this false and misleading information to potential GW Equity customers.  If the statements on the Websites are not removed, GW Equity will continue to suffer immediate and irreparable harm that clearly outweighs any harm that Defendants may suffer.

**D.    Issuing A Preliminary Injunction Against Defendants Serves the Public Interest**

The public will benefit from the granting of a preliminary injunction in this case. Although some readers of Defendants' postings may be interested in legitimate criticisms of the various companies, these literally false postings do nothing but deceive the public as to GW Equity's business and reputation.  Moreover, courts have determined that there is a strong public interest in preventing false and misleading advertisements such as the comments here advising potential clients not to do business with GW Equity for clearly inaccurate reasons.  *See, e.g., Rent-A-Center West, Inc. v. Aaron Rents, Inc.*, No. 3:03-CV1595-K, 2004 WL 813225, at *5 (N.D. Tex. Apr. 14, 2004); *Genderm Corp. v. Biozone Labs.*, No. 92-C-2533, 1992 WL 220638, at *19 (N.D. Ill. Sept. 3, 1992).  For these reasons, GW Equity's motion for a preliminary injunction should be granted.

**E.    This Court Has The Ability To Tailor An Injunction To Meet The Violations And Serve The Public Interest**

In order to protect GW Equity from the false and misleading statements Defendants have posted on their Websites regarding its reputations and services and any legitimate interest of the public, this Court must enter an injunction which would accomplish the following:

1.    Prevent Defendants from disseminating, using, developing, creating, authoring, hosting or publishing false, misleading, disparaging and/or defamatory words and comments concerning either (i) GW Equity and its services, (ii) GW Equity and

its reputation or commercial activities, or (iii) GW Equity's officers, directors and employees.

2. Prevent Defendants from disseminating, using, developing, creating, authoring, hosting or publishing any information related to GW Equity's confidential business information, intellectual property, and trade secrets.

3. Require Defendants to remove from the Websites operated by the Defendants the specific posts regarding GW Equity.

4. Prevent Defendants from maintaining on www.ripoffreport.com and www.badbusinessbureau.com any false, misleading, disparaging and/or defamatory words and comments concerning either (i) GW Equity and its services or (ii) GW Equity and its reputation or commercial activities.

5. Prevent Defendants from maintaining on www.ripoffreport.com and www.badbusinessbureau.com any intellectual information or trade secrets that belong to GW Equity.

6. Prevent Defendants from using, creating, or disseminating metatags on the false, misleading, disparaging and/or defamatory words and comments contained in the postings on www.ripoffreport.com and www.badbusinessbureau.com.

7. Require Defendants to remove the false, misleading disparaging and/or defamatory words and comments regarding either (i) GW Equity and its services or (ii) GW Equity and its reputation or commercial activities and all confidential information regarding GW Equity's intellectual property and trade secrets.

8. Prevent Defendants from posting any further comments and statements regarding GW Equity on the Websites without GW Equity having the opportunity to first respond to the alleged author privately.

9. Require defendants to contact and notify any and all Internet business directory providers and Internet search engines to terminate all associations, including all cached pages, if any, between Defendants and GW Equity.

## F.    GW Equity Should Not Be Required To Post A Bond

Federal Rule of Civil Procedure 65(c) provides that no "[n]o . . . preliminary injunction shall issue except upon the giving of security by the applicant, in such sum as the court deems proper . . . ." FED. R. CIV. P. 65(c).  It is well-settled that the amount of security required pursuant to Rule 65(c) "is a matter for the discretion of the trial court."  *See Kaepa, Inc. v.*

*Achilles Corp.*, 76 F.3d 624, 628 (5th Cir. 1996) (quoting *Corrigan Dispatch Co. v. Casa Guzman*, 569 F.2d 300, 303 (5th Cir. 1978)).  Thus, courts "may elect to require no security at all."  *Corrigan Dispatch*, 569 F.2d at 303.  Given the factual and procedural history of this action, GW Equity respectfully requests that this Court refrain from requiring it to post a bond. Because there is little to no economic harm to Defendants if the preliminary injunction is granted, a bond is entirely unnecessary here and will not serve any justifiable purpose.

## CONCLUSION & PRAYER

For the reasons stated herein, GW Equity respectfully asks this Court to enter preliminary injunction prohibiting the further dissemination, use, hosting, maintaining, or publishing of the false, misleading, disparaging and/or defamatory words and comments regarding GW Equity and its services and reputation during the pendency of this lawsuit.  GW Equity has suffered and continues to suffer harm due to these defamatory statements in that potential clients are deterred from doing business with GW Equity and that the reputation of GW Equity has been lowered in the eyes of its client base.

Dated: June 11, 2007                Respectfully submitted,

                                       */s/ John T. Cox III*

John T. Cox III
Texas Bar No. 24003722
**LYNN TILLOTSON & PINKER, L.L.P.**
750 N. St. Paul Street, Suite 1400
Dallas, Texas  75201
(214) 981-3800 Telephone
(214) 981-3839 Facsimile

**ATTORNEY FOR PLAINTIFF
GW EQUITY, LLC**

## CERTIFICATE OF SERVICE

The undersigned does hereby certify that a true and correct copy of the foregoing was served upon the following counsel it believes represents Defendants by *via ECF and certified mail* on this 11th day of June, 2007.

Maria Crimi Speth, Esq.
Jaburg & Wilk, PC
3200 North Central Avenue, Suite 2000
Phoenix, Arizona 85012
mcs@jaburgwilk.com
Tel: (602) 248-1000
Direct:  (602) 248-1089
Fax:  (602) 248-0522

                                         */s/ John T. Cox III*

John T. Cox III