

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | | |
|---|---|---|
| **GW EQUITY, LLC,** | § | |
| | § | |
| **PLAINTIFF,** | § | |
| | § | |
| **v.** | § | **CIVIL ACTION** |
| | § | **No. 3-07CV0976-K** |
| **XCENTRIC VENTURES, LLC,** | § | |
| **WWW.RIPOFFREPORT.COM,** | § | |
| **WWW.BADBUSINESSBUREAU.COM,** | § | |
| **and EDWARD MAGEDSON,** | § | |
| | § | |
| **DEFENDANTS.** | § | |

**U.S. DISTRICT COURT**
**NORTHERN DISTRICT OF TEXAS**
**FILED**
**JUN – 1 2007**
**CLERK, U.S. DISTRICT COURT**
**By** _____
       Deputy

## PLAINTIFF'S ORIGINAL COMPLAINT FOR DAMAGES AND EMERGENCY APPLICATION FOR INJUNCTIVE RELIEF

Plaintiff GW Equity, by its undersigned attorneys, for its Complaint against the Defendants Xcentric Ventures, LLC, www.ripoffreport.com, www.badbusinessbureau.com, Edward Magedson (collectively, the "Defendants"), for damages and emergency application for injunctive relief under the laws of the United States and the State of Texas alleges as follows:

## I.    SUBJECT MATTER JURISDICTION

1. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332 because there is complete diversity of jurisdiction of citizenship and the matter in controversy, exclusive of costs and interests, exceeds the sum or value of seventy-five thousand dollars. In addition, this Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 because claims arise under 18 U.S.C. §§ 1962(c), 1962(d), and 1964 of the Racketeer Influenced and Corrupt Organizations Act (RICO).

2. This Court has supplemental jurisdiction over the claims in this Complaint that arise under the statutory and common law of the State of Texas pursuant to 28 U.S.C. § 1367(a)

APX 000003
Dockets.Justia.com

and of pendant jurisdiction and any other applicable law, since the state law claims are so related to the federal claims that they form part of the same case or controversy and derive from a common nucleus of operative facts.

## II.   VENUE

3.   Venue is proper in the Northern District of Texas and this Court pursuant to 28 U.S.C. § 1391 because the Defendants have committed and continue to commit tortious acts in the State of Texas and this district.

## III.   PARTIES AND PERSONAL JURISDICTION

4.   Plaintiff, GW Equity, LLC, is a Delaware limited liability company with its principal offices located in Dallas, Texas.  GW Equity is a mergers and acquisitions firm in the middle market assisting clients in mergers, acquisitions, and strategic growth.  With over three hundred professional advisors, GW Equity brings a strategic domestic and international buying community to the middle market and does business in this district.

5.   Upon information and belief, Defendant Xcentric Ventures, LLC ("Xcentric"), is a limited liability company organized and existing under the laws of Arizona with its principal office located in Arizona.  Defendant is a citizen of Arizona and no other state.  Defendant transacts business in this district through the Internet, by the domains names of ripoffreport.com and badbusinessbureau.com which are registered to Xcentric, and may be served through its owner and/or operator at 1138 S. Rose, Mesa, Maricopa County, AZ 85204, and/or P.O. Box 310, Tempe, Maricopa County, AZ 85280 and/or 8833 S. JB Road, Reevis Mountain, Gila County, AZ 85545.  Upon information and belief, Defendant Xcentric is, or will be subject to the jurisdiction of this Court.

6.    Upon information and belief, Defendant www.ripoffreport.com is an unknown business entity whose owner and/or speaker is Edward Magedson. www.ripoffreport.com also is an Internet website address and platform where, upon information and belief, Defendant transacts business in this district through the World Wide Web and may be served through its owner and/or operator at 1138 S. Rose, Mesa, Maricopa County, AZ 85204, and/or P.O. Box 310, Tempe, Maricopa County, AZ 85280.    Upon information and belief, Defendant www.ripoffreport.com is, or will be subject to the jurisdiction of this Court.

7.    Upon information and belief, Defendant www.badbusinessbureau.com is an unknown business entity whose owner and/or operator is Edward Magedson. www.badbusinessbureau.com also is an Internet website address and platform where, upon information and belief, Defendant transacts business in this district through the World Wide Web and may be served through its owner and/or operator at 1138 S. Rose, Mesa, Maricopa County, AZ 85204, and/or P.O. Box 310, Tempe, Maricopa County, AZ 85280.  Upon information and belief, Defendant www.badbusinessbureau.com is, or will be, subject to the jurisdiction of this Court.

8.    Edward Magedson, an individual who, upon information and belief, is, and at all relevant times was the owner and/or operator of www.ripoffreport.com and www.badbusinessbureau.com.  In addition, Mr. Magedson has used www.ripoffreport.com and www.badbusinessbureau.com to conduct and direct the unlawful and tortious conduct described herein within the jurisdiction of this Court.  Upon information and belief, Mr. Magedson may be served at 1138 S. Rose, Mesa, Maricopa County, AZ 85204, and/or P.O. Box 310, Tempe Maricopa County, AZ 85280.  Upon information and belief, Mr. Magedson is, or will be, subject to the jurisdiction of this court.

9.      The acts of defamation, interference with business relationships, business disparagement, conspiracy, and other wrongful acts alleged in this Complaint occurred, arose and were directed in whole or part in the Northern District of Texas.

### IV.   FACTUAL ALLEGATIONS

10.     Founded in 1987, GW Equity Group, Inc. is the parent company of GW Equity, LLC. GW Equity, LLC is a mergers and acquisitions firm in the middle market assisting clients in mergers, acquisitions, and strategic growth. With over three hundred professional advisors, GW Equity brings a strategic domestic and international buying community to the middle market. GW Equity engages in the business of consulting middle-market business owners who are contemplating a sale or seeking merger and acquisition opportunities. GW Equity conducts educational or informational conferences or seminars that provide business owners with an overview of the processes of how and when to sell a private middle-market business for maximum value. GW Equity has more than three hundred professional advisors located in offices nationwide and consults thousands of clients each year.

11.     Through its offices and professional advisors, GW Equity has become well-known to both its clients and the general public. GW Equity has gone to considerable expense and effort to develop and maintain its image to potential companies who might engage its services. As a means to promote its products and services, GW Equity created Internet websites to enable consumers to learn about its programs, and to provide a conduit for prospective and current clients to learn about its services and register for upcoming conferences. Clients use Internet search engines to locate GW Equity's website. GW Equity thus relies heavily on Internet search engines to direct potential clients to its websites.

12.    The Defendants own and/or operate websites located at www.ripoffreport.com and www.badbusinessbureau.com (collectively, the "Websites") as centralized websites for publishing and posting alleged fraudulent business practices. Upon information and belief, the Defendants operate these Websites for profit. Magedson and Xcentric actively control and maintain the Websites, together with the assistance of one or more unknown agents.

13.    The Websites hold themselves out to the public as a "worldwide consumer reporting Website and Publication, by consumers for consumers" and purport to expose companies and individuals who "ripoff" customers. A true and correct copy of the Defendants' homepage is attached hereto as Exhibit 1 and incorporated herein by reference.

14.    The Defendants actively solicit and receive complaints from all over the country. The Defendants have edited and published well over 13,241 reports directed at Texas companies, some of which were purportedly authored by Texas residents.

15.    Due to the aggressive marketing activities of the Defendants, existing and potential clients of GW Equity receive search engine results which feature lists to one or more reports published on the Websites. Clients that follow the links to the Websites are referred to the Websites containing information regarding GW Equity's business and reputation which is false, misleading, disparaging and/or defamatory. Additionally, the reports on the Websites contain discussions of intellectual property and proprietary information that clearly belong to GW Equity. Indeed, the information posted on the Websites contains facts that would only be known to GW Equity and serves to gives its competitors an unfair advantage now that the information has been revealed. The information contained in the so-called "Rip-off Reports" on the Websites receive high placement on Internet search engines because Defendants include GW Equity's name in the caption of pages on the Websites, in page titles, and in metatags.

16.     The Defendants do not substantiate the source or accuracy of the information published and posted on the above referenced Websites, including but not limited to, information published and posted regarding GW Equity's business practices. Upon information and belief, the Defendants author the posts on the Websites, including but not limited to, information regarding GW Equity and then publish them for the public to view. *See* Exhibit 2, Deposition Transcript of Dixon Earl Woodward, Vol. I, 146:24-149:3; 183:6-8; 237:18-238:11.    The Defendants exercise editorial control over the content on the Websites by including additional language to the so-called "Rip-off Reports," such as "ripoff," "fraud," and "scam," to imply that the company named in the report is "ripping off" the consumer.

17.     Further, in order to improve and enhance search engine results regarding GW Equity, the Defendants edit, alter, change, and create report names and identifiers.    The Defendants' websites also provide a search function where users can search postings organized by state, including postings allegedly involving Texas residents.  In order to inflame the readers and overstate the postings, the Defendants categorize postings under several groupings, including one entitled "Corrupt Companies."

18.     Upon information and belief, the Defendants have also solicited, developed, created, written, authored, and published on the Websites numerous false and deceptively misleading statements of fact concerning GW Equity, its executives, and its employees made at least in part in concert or conspiracy with a disgruntled former GW Equity employee using different identities to disparage GW Equity and to create the appearance that numerous businesses and clients are unhappy with GW Equity.

19.     The Defendants have published false, misleading, disparaging and/or defamatory statements about GW Equity on their above-referenced websites.    The Defendants have

developed, created, written, authored, and published on the Websites, in the form of report content, titles, and various headlines, numerous false and deceptively misleading statements of fact concerning GW Equity, its executives, and its employees. *See* Exhibit 2, Deposition Transcript of Dixon Earl Woodward, Vol. I, 236:13-237:13; Vol. II, 293:6-20, 300:2-10, 480:15-481:2.

20.    On or about November 2, 2006, the Defendants, without authorization or consent, published and posted false, misleading, disparaging and/or defamatory statements about GW Equity and its services on the websites located at www.ripoffreport.com and www.badbusinessbureau.com. The Defendants' categorized this posting under the category "Corrupt Companies" and named the posting "Gw Equity – Geneva Business Research – Geneva Companies – Geneva Marketing Services – Geneval Consulting Services ripoff defrauded my company out of $30,000 for retainer to sell my business Dallas Texas. . . The Truth about GW Equity and Geneva." A true and correct copy of this publication and posting is attached hereto as Exhibit 3 to the Affidavit of Ryan Binkley and incorporated herein by reference. In developing, creating, writing and publishing report content, titles, and various headings concerning GW Equity, the Defendants have produced original content in the so-called "Rip-off Reports" found on the Websites.

21.    On November 7, 2006, the Defendants without authorization or consent published and posted false, misleading, disparaging and/or defamatory statements about GW Equity and its services on the websites located at www.ripoffreport.com and www.badbusinessbureau.com. The Defendants named the posting "Gw Equity, Geneva Corporate Finance, Geneva Capital Markets, wasted eight hours of my time then hit me up for $30K." A true and correct copy of this publication and posting is attached hereto as Exhibit 4 to the Affidavit of Ryan Binkley and

incorporated herein by reference. In developing, creating, writing and publishing report content, titles, and various headings concerning GW Equity, the Defendants have produced original content in the so-called "Rip-off Reports" found on the Websites.

22.    On November 29, 2006, the Defendants without authorization or consent published and posted false, misleading, disparaging and/or defamatory statements about GW Equity and its services on the websites located at www.ripoffreport.com and www.badbusinessbureau.com. The Defendants named the posting "GW Equity Wrongful Termination – Scam – perpetuating a fraud on the general public Dallas Texas." A true and correct copy of this publication and posting is attached hereto as Exhibit 5 to the Affidavit of Ryan Binkley and incorporated herein by reference. In developing, creating, writing and publishing report content, titles, and various headings concerning GW Equity, the Defendants have produced original content in the so-called "Rip-off Reports" found on the Websites.

23.    On November 29, 2006, the Defendants without authorization or consent published and posted false, misleading, disparaging and/or defamatory statements about GW Equity and its services on the websites located at www.ripoffreport.com and www.badbusinessbureau.com. The Defendants named the posting "Gw Equity, Citibank, Citigroup, Citi Commerce Solutions M&A Business Consulting, paid $30,000 for an inflated analysis of company that has yielded no results New York New York." A true and correct copy of this publication and posting is attached hereto as Exhibit 6 to the Affidavit of Ryan Binkley and incorporated herein by reference. In developing, creating, writing and publishing report content, titles, and various headings concerning GW Equity, the Defendants have produced original content in the so-called "Rip-off Reports" found on the Websites.

24.    On November 29, 2006, the Defendants without authorization or consent published and posted false, misleading, disparaging and/or defamatory statements about GW Equity and its services on the websites located at www.ripoffreport.com and www.badbusinessbureau.com.    The Defendants named the posting "Gw Equity, Citibank, Citigroup, Citi Commerce Solutions Big company wasting Small Companies Time & Money New York New York."  A true and correct copy of this publication and posting is attached hereto as Exhibit 7 to the Affidavit of Ryan Binkley and incorporated herein by reference.    In developing, creating, writing and publishing report content, titles, and various headings concerning GW Equity, the Defendants have produced original content in the so-called "Rip-off Reports" found on the Websites.

25.    The Defendants, presumably with the aid of unknown agents, have created the "Rip-off Report Corporate Advocacy Business Remediation & Customer Satisfaction Program." Through this so-called program, the Defendants offer to resolve disputes between targeted companies and complainants regarding published "Rip-off Reports" on the Websites if the target company pays the Defendants a sum of money.    This so-called service is offered on the Websites.

26.    GW Equity's Office of General Counsel contacted the editor of Rip Off Report known as EDitor@ripoffreport.com, which upon information and belief is an alias for Defendant Edward Magedson, via email and informed him of the presence of numerous false and misleading statements on the Websites regarding GW Equity. The Office of General Counsel explained the falsity of the information and requested that the false and misleading statements be removed from the Websites.  In a series of emails, Magedson refused to remove the false and misleading statements and instead demanded payment for remedying the falsities pursuant to the

"Rip-off Report Corporate Advocacy Business Remediation & Customer Satisfaction Program" offered on the Websites. Mr. Binkley declined to pay for these services.

27.    The postings on the Websites have significantly disrupted and continue to cause significant disruption GW Equity's ability to conduct business in that prospective clients use Internet search engines to find information about GW Equity, but then discover the false postings regarding GW Equity. GW Equity must respond to these false, misleading, disparaging and/or defamatory comments and allegations in its dealings with existing and prospective clients. GW Equity may not have the opportunity to respond to every person who accesses the Websites because GW Equity does not know the identities of persons who access the Websites and review the false information. The Defendants' conduct has caused GW Equity to lose at least eight customers per month and has damaged GW Equity's business and reputation.

28.    The Defendants continue to pose a threat of harming GW Equity and its business through the creation, publishing, and transmission of false and defamatory statements regarding GW Equity. The Defendants have refused to comply with GW Equity's requests to remove the false postings and to delete every false statement of fact about or concerning GW Equity's business. Without knowing the identity of some of the presently unknown sources of such information, GW Equity does not have the ability to prevent others from disseminating such false, misleading, disparaging and/or defamatory comments and allegations to third parties.

## V.    CAUSES OF ACTION
### COUNT 1 – DEFAMATION/LIBEL

29.    GW Equity realleges and incorporates by reference all preceding paragraphs as fully set forth herein.

30.    The statements regarding GW Equity on the Websites are false. The statements pertain to GW Equity by intentionally making one or more false, misleading, disparaging and/or

defamatory comments and allegations concerning GW Equity's executives, management, employees, business methods, activities, policies, and practices.

31.    The Defendants publicly communicated false, misleading, disparaging and/or defamatory comments and allegations to third parties by disseminating such comments and allegations via the Websites on the Internet and by placing metatags on the Websites designed to publicize those false statements.

32.    The Defendants have hosted and transmitted false, misleading, disparaging and/or defamatory comments and allegations to such third parties on the Websites knowing the same were false or with a high degree of awareness that the same were probably false, or with a reckless disregard for the truth.

33.    The Defendants disseminated false, misleading, disparaging and/or defamatory comments and allegations with the intent to damage the business, goodwill, and professional reputation of GW Equity.

34.    The Defendants' false, misleading, disparaging and/or defamatory comments and allegations have caused general defamation damages to GW Equity by exposing it to contempt and ridicule by the third parties receiving such comments and allegations.

35.    GW Equity has also suffered special damages in the form of financial loss resulting from the effect of the Defendants' statements, relating to, among other things, lost clients.

36.    The Defendants acted maliciously by disseminating comments and allegations with wanton disregard for GW Equity's rights, and with the intent to defame and injure GW Equity.

37.    The Defendants' conduct as alleged above has caused special damages and will continue to cause special damages to GW Equity in the form of lost sales to potential clients. Further, the Defendants' publishing of false, misleading, disparaging and/or defamatory words, statements, and comments about GW Equity and its services has played a substantial part in inducing others not to deal with GW Equity with the result that GW Equity has suffered special damages, in the form of the loss of trade or other dealings. The Defendants' conduct entitles GW Equity to injunctive relief.

38.    Unless the Defendants are restrained and enjoined, the Defendants will continue to harm GW Equity irreparably, thereby further damaging GW Equity and impairing GW Equity's business reputation and activities. By reason of the foregoing, the Plaintiff has been injured in an amount not yet ascertained, and is entitled to monetary and equitable remedies.

### COUNT TWO – INTERFERENCE WITH BUSINESS RELATIONSHIPS

39.    GW Equity realleges and incorporates by reference all preceding paragraphs as fully set forth herein.

40.    The Defendants have created, solicited, and published on the Websites false and defamatory statements regarding GW Equity that have interfered with GW Equity's business relationships with its existing and potential clients.

41.    These false and defamatory statements have been communicated with the knowledge that clients and potential clients had an existing or prospective business relationship with GW Equity and with the intention of interfering with that relationship.

42.    The Defendants' wrongful interference with GW Equity's business relations has been willful and deliberate and has caused GW Equity to incur loss and damages.

43.    The Defendants' conduct has caused damages and will continue to cause damages to GW Equity in the form of lost clients. Further, the Defendants' publishing of false,

APX 000014

misleading, disparaging and/or defamatory words, statements, and comments about GW Equity and its services has played a substantial part in inducing others not to deal with GW Equity with the result that GW Equity has suffered special damages, in the form of the loss of trade or other dealings. Defendants' conduct entitles GW Equity to injunctive relief.

44.     Unless the Defendants are restrained and enjoined, the Defendants will continue to harm GW Equity irreparably, thereby further damaging GW Equity and impairing GW Equity's business reputation and activities. By reason of the foregoing, GW Equity has been injured in an amount not yet ascertained and is entitled to monetary and equitable remedies.

### COUNT THREE – TEXAS BUSINESS DISPARAGEMENT

45.     GW Equity realleges and incorporates by reference all preceding paragraphs as fully set forth herein.

46.     The acts and conduct of the Defendants as alleged above in this Complaint constitute injurious falsehood or business disparagement under Texas law.

47.     The Defendants published false, misleading, disparaging and/or defamatory words, statements, and comments about GW Equity and its services.

48.     The Defendants' false, misleading, disparaging and/or defamatory words, statements, and comments were published without GW Equity's consent and with a lack of privilege.

49.     The Defendants published the false, misleading, disparaging and/or defamatory words, statements, and comments about GW Equity and its services with knowledge of the falsity of the words, statements, or comments or with reckless disregard for the words, statements, and comments' falsity.

50.     The Defendants' conduct as alleged above has caused special damages and will continue to cause special damages to GW Equity in the form of lost sales to potential clients.

PLAINTIFF'S ORIGINAL COMPLAINT FOR DAMAGES                                          PAGE 13
AND EMERGENCY APPLICATION FOR INJUNCTIVE RELIEF
02033-701/162931

APX 000015

Further, the Defendants' publishing of false, misleading, disparaging and/or defamatory words, statements, and comments about GW Equity and its services has played a substantial part in inducing others not to deal with GW Equity with the result that GW Equity has suffered special damages, in the form of the loss of trade or other dealings. The Defendants' conduct entitles GW Equity to injunctive relief.

51.     Unless the Defendants are restrained and enjoined, the Defendants will continue to harm GW Equity irreparably, thereby further damaging GW Equity and impairing GW Equity's business reputation and activities. By reason of the foregoing, the Plaintiff has been injured in an amount not yet ascertained, and is entitled to monetary and equitable remedies.

### COUNT FOUR – CIVIL CONSPIRACY

52.     GW Equity realleges and incorporates by reference all preceding paragraphs as fully set forth herein.

53.     The Defendants and unknown agents have had a common design by means of concerted action to solicit, develop, create, and publish on the Websites false and misleading statements regarding GW Equity.

54.     The Defendants and unknown agents have solicited, developed, created and published on their Websites such false and misleading statements.

55.     The Defendants and unknown agents have created the "Rip-off Report Corporate Advocacy Business Remediation & Customer Satisfaction Program." Through this so-called "program," the Defendants offer to attempt to resolve disputes between targeted companies and complainants regarding published "Rip-off Reports" on the Websites. This so-called service is offered on the Websites.

56.     Representatives of GW Equity informed Magedson of false statements regarding GW Equity on the Websites. Magedson demanded payment and participation in the Defendants'

"Rip-off Report Corporate Advocacy Business Remediation & Customer Satisfaction Program" before taking any action to remedy the false and misleading statements.

57.    These actions constitute a civil conspiracy to use coercion to obtain GW Equity's property.  These actions also constitute a civil conspiracy to create, solicit, and publish false, misleading, disparaging and/or defamatory statements regarding GW Equity.  These actions have caused GW Equity to incur loss and damages and entitle GW Equity to compensatory and punitive damages in an amount to be determined at trial.

### COUNT FIVE – VIOLATION OF THE RACKETEER INFLUENCED AND CORRUPT ORGANIZATIONS ACT (RICO), 18 U.S.C. § 1962(C)

58.    GW Equity realleges and incorporates by reference all preceding paragraphs as fully set forth herein.

59.    Xcentric is a "person" within the meaning of 18 U.S.C. §§ 1961(3) and 1962(c).

60.    Magedson is a "person" within the meaning of 18 U.S.C. §§ 1961(3) and 1962(c).

61.    Xcentric is an "enterprise" within the meaning of 18 U.S.C. § 1961(4) and 1962(c), which enterprise engaged in and the activities of which affected interstate commerce during the relevant times.

62.    Magedson was employed by or associated with an enterprise, Xcentric, and did conduct or participate, directly or indirectly, in the conduct of affairs of Xcentric through a pattern of racketeering activity within the meaning of 18 U.S.C. §§ 1961(1)(B) and 1961(5) and 1962(c), through the following acts:

(a) The Defendants have repeatedly attempted to obtain GW Equity's property, without its consent, through the wrongful use of actual or threatened fear by requiring payment to remedy the publication of false and defamatory statements that the

Defendants created and/or solicited. This conduct amounts to extortion under 18 U.S.C. § 1951(b)(2).

(b) The Defendants have repeatedly and intentionally used their Websites as a scheme to obtain money from GW Equity and other companies by means of false and defamatory complaints created or solicited by the Defendants. The Defendants have repeatedly created, solicited, and published false, misleading, disparaging and/or defamatory statements on the Websites and sent emails requesting that GW Equity pay a fee before the Defendants would agree to take any action related to the material on the Websites. This conduct amounts to wire fraud under 18 U.S.C. § 1343.

63.     The Defendants' violation of 18 U.S.C. § 1962(c) has caused GW Equity to lose at least eight sales per month and has damaged GW Equity's business, goodwill, and reputation. The Defendants' unlawful conduct has caused damages to GW Equity, in an amount to be determined at trial, and threatens to cause additional damage. GW Equity seeks three times its actual damages sustained, as well as other relief which is necessary and proper, including reasonable attorney's fees and costs.

64.     Because its remedy at law is inadequate, GW Equity seeks injunctive relief to protect its reputation and interests. Unless the Defendants are restrained and enjoined, the Defendants and anonymous sources making false representations of fact about GW Equity will continue to harm GW Equity irreparably, thereby further damaging GW Equity's business reputation.

### COUNT SIX – VIOLATION OF THE RACKETEER INFLUENCED AND CORRUPT ORGANIZATIONS ACT (RICO) 18 U.S.C. § 1962(D)

65.     GW Equity realleges and incorporates by reference all preceding paragraphs as fully set forth here.

66.    Xcentric is a "person" within the meaning of 18 U.S.C. §§ 1961(3) and 1962(c).

67.    Magedson is a "person" within the meaning of 18 U.S.C. §§ 1961(3) and 1962(c).

68.    Xcentric is an "enterprise" within the meaning of 18 U.S.C. § 1961(4) and 1962(c), which enterprise engaged in and the activities of which affected interstate commerce during the relevant times.

69.    Magedson was employed by or associated with an enterprise, Xcentric, and conspired with Xcentric within the meaning of 18 U.S.C. § 1962(d) to violate 18 U.S.C. § 1962(c). The Defendants and one or more unknown agents did conspire to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity within the meaning of 18 U.S.C. §§ 1961(1)(B) and 1961(5) and 1962(c), through the following acts:

(a) The Defendants have repeatedly attempted to obtain GW Equity's property, without its consent, through the wrongful use of actual or threatened fear by requiring payment to remedy the publication of false and defamatory statements that the Defendants created and/or solicited. This conduct amounts to extortion under 18 U.S.C. § 1951(b)(2).

(b) The Defendants have repeatedly and intentionally used their Websites as a scheme to obtain money from GW Equity and other companies by means of false and defamatory complaints created or solicited by the Defendants. The Defendants have repeatedly created, solicited, and published false, misleading, disparaging and/or defamatory statements on the Websites and sent emails requesting that GW Equity pay a fee before the Defendants would agree to take any action related to the material on the Websites. This conduct amounts to wire fraud under 18 U.S.C. § 1343.

70.     The Defendants' violation of 18 U.S.C. § 1962(c) has caused GW Equity to lose at least eight sales per month and has damaged GW Equity's business, goodwill, and reputation. The Defendants' unlawful conduct has caused damages to GW Equity, in an amount to be determined at trial, and threatens to cause additional damage. GW Equity seeks three times its actual damages sustained, as well as other relief which is necessary and proper, including reasonable attorney's fees and costs.

71.     Because its remedy at law is inadequate, GW Equity seeks injunctive relief to protect its reputation and interests. Unless the Defendants are restrained and enjoined, the Defendants and anonymous sources making false representations of fact about GW Equity will continue to harm GW Equity irreparably, thereby further damaging GW Equity's business reputation.

## VI.
## REQUEST FOR EMERGENCY *EX PARTE* TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION

72.     GW Equity realleges and incorporates by reference all preceding paragraphs as fully set forth here.

73.     The Affidavit of Ryan Binkley, which proves the allegations in this application for injunctive relief, is attached as Exhibit A and incorporated by reference.

74.     Defendants Xcentric Ventures, LLC, www.ripoffreport.com, www.badbusinessbureau.com, and Edward Magedson have solicited, developed, and published on the Websites numerous false and misleading statements of fact concerning GW Equity, its executives, and its employees and have essentially placed the reputation and goodwill of GW Equity in the hands of Defendants.

75.    Plaintiff GW Equity has been and will continue to suffer immediate and irreparable damage if Defendants are not enjoined during the pendency of this lawsuit from disseminating, using, or publishing false, misleading, disparaging and/or defamatory words and comments regarding GW Equity and its services and reputation and from disseminating, using, or publishing confidential information regarding GW Equity.    GW Equity's remedies are inadequate to compensate it for this harm and damage.    Defendants have refused to remove false and misleading statements after repeated requests by GW Equity.    Every day that Defendants continue to disseminate, use, or publish false, misleading, disparaging and/or defamatory words and comments regarding GW Equity impacts GW Equity's business opportunities and persuades potential clients not to do business with GW Equity.    GW Equity has no ability to monitor who visits the Websites and reads the false postings.    As a result, its reputation can only suffer at the hands of Defendants.    GW Equity's only option is to respond to these false and misleading comments and allegations in its dealings with existing and prospective clients.    Once its reputation is tainted, it is virtually impossible to regain the trust of these potential clients.

76.    There is a substantial likelihood that GW Equity will prevail on the merits. Defendants have been repeatedly notified to cease and desist disseminating, using, or publishing false, misleading, disparaging and/or defamatory words and comments regarding GW Equity and its services and reputation, but they have willfully continued to host such statements on the Websites with the understanding that such disparaging acts would be detrimental to GW Equity.

77.    Any harm associated by the entry of a restraining order and preliminary injunction is outweighed by the potential damage to GW Equity's goodwill and reputation.    As the operators of the Websites, Defendants will not suffer any monetary losses if they are forced to remove the false and misleading statements regarding GW Equity.

78.    Issuance of a restraining order and preliminary injunction would not adversely affect the public interest and public policy because the public interest is served by preventing the dissemination of false and misleading statements about other businesses.

79.    Plaintiff GW Equity is willing to post a bond in the amount the Court deems appropriate.

80.    The Court should enter a temporary restraining order without notice to Defendants because GW Equity will suffer immediate and irreparable injury, loss, or damage if the temporary restraining order is not granted before Defendants can be heard and there is no less drastic means to protect Plaintiff's interests. *See* FED. R. CIV. P. 65(b).

81.    GW Equity further asks the Court to set its application for preliminary injunction for hearing at the earliest possible time, and after hearing the request issue a preliminary injunction against Defendants from disseminating, using, or publishing false, misleading, disparaging and/or defamatory words and comments concerning either GW Equity and its services and reputation.

## VII.
## REQUEST FOR PERMANENT INJUNCTION

82.    GW Equity realleges and incorporates by reference all preceding paragraphs as fully set forth here.

83.    GW Equity further asks the Court to set its application for injunctive relief for a full trial on the issue in this application, and after the trial, to issue a permanent injunction against Defendants from disseminating, using, or publishing false, misleading, disparaging and/or defamatory words and comments concerning either GW Equity and its services and reputation.

## VIII.

## DEMAND FOR JURY TRIAL

84.    Plaintiff hereby demands a trial by jury.

## PRAYER FOR RELIEF

WHEREFORE, GW Equity demands that judgment be entered against the Defendants as follows:

(1)    That pursuant to federal and Texas state law, the Court issue preliminary and permanent injunctive relief that the Defendants, their officers, agents, representatives, servants, employees, attorneys, successors and assigns, and all others in active concert or participation with the Defendants, be enjoined and restrained, during the pendency of this action and permanently from disseminating, using, or publishing false, misleading, disparaging and/or defamatory words and comments concerning either (i) GW Equity and its services or (ii) GW Equity and its reputation or commercial activities;

(2)    That the Defendants be required to remove the false, misleading disparaging and/or defamatory words and comments regarding either (i) GW Equity and its services or (ii) GW Equity and its reputation or commercial activities and all confidential information regarding GW Equity's intellectual property and trade secrets;

(3)    That the Defendants be enjoined from posting any further comments and statements regarding GW Equity on the Websites without GW Equity having the opportunity to first respond to the alleged author privately;

(4)    That the Defendants be required to contact and notify any and all Internet business directory providers and Internet search engines to terminate all associations, if any, between Defendants and GW Equity and that all cached pages being kept by any Internet search engine be terminated as well;

(5)    That the Defendant be required to pay three times GW Equity's actual damages

for violations of 18 U.S.C. §§ 1962(c) and 1962(d) of the Racketeer Influenced and Corrupt

Organizations Act (RICO) pursuant to 18 U.S.C. § 1964(c);

(6)    That GW Equity recover all damages it has sustained as a result of Defendants'

defamation, business disparagement, and tortious interference with prospective contracts;

(7)    That GW Equity recover compensatory damages in an amount to be determined at

trial;

(8)    That the Defendants be required to pay GW Equity's costs, expenses, and

reasonable attorney's fees in connection with this action; and

(9)    That GW Equity be entitled to such other relief as this Court deems just and

equitable.

Dated: June 1, 2007                              Respectfully submitted,

 

John T. Cox III
Texas Bar No. 24003722
LYNN TILLOTSON & PINKER, L.L.P.
750 N. St. Paul Street, Suite 1400
Dallas, Texas 75201
(214) 981-3800 Telephone
(214) 981-3839 Facsimile

**ATTORNEY FOR PLAINTIFF
GW EQUITY, LLC**



**EXHIBIT**

1

APX 000025

## Helping you, the consumer...

Search the Rip-off Report before you do business with retail stores with bad return policies, checking & credit theft, rebate fraud or other unscrupulous business policies such as phony auto repairs, auto dealer bait-and-switch tactics, restaurants with bad service or food, corrupt government employees & politicians, police corruption, home builders, contractors, unethical doctors & lawyers, online stores that sell non-existent products, dead beat dads & moms, landlords & tenants, fraudulent employment & business opportunities, and individual con artists who scam consumers. These are just a few of the countless topics available, and the list is continually modified as new categories emerge.

## Filing a class action lawsuit & notifying the authorities

Filing a Rip-off Report is important because you are helping us to help you, and others like you, achieve justice. We are able to accomplish this by working with the proper authorities for prosecution, and working with lawyers by using your report to help organize lawsuits. It is important that you know that your information is held strictly confidential, and your identity is protected by the First Amendment of the US Constitution.

We will contact you if a lawsuit is being considered or has been filed which you may want to be a party to. The more reports filed on a company or individual, the more likely it is that the authorities and attorneys will want to take action.

## Media attention

Quite often the media is interested in the reports you filed and ask us to assist in their investigations giving you the publicity needed to help your cause. File your Report now! In the event your Rip-off Report is of interest to the media, we will put you in contact with them.

Rip-off Report works with almost every state Attorney Generals office, U.S. Postal Inspectors office, the Justice Department, Homeland Security, FBI, FTC and local and state authorities, including those in Canada, UK, Australia, and other government agencies around the world. We also supply story ideas along with victim information to every network and most local affiliates and to every major TV News Magazine including Dateline, 20/20, 48 Hours, 60 Minutes, Inside Edition, W2 Canada, CNN, along with most major news papers including, NY Times, Wall Street Journal, Forbes, Money, Inc. and hundreds of others.

## Helping you, the reported business or individual

### My company has been reported! How do I respond?

If you are a business with one or more reports filed against you, you can make it right. If handled correctly, Rip-off Report(s) filed against you can actually help improve your credibility and reputation. We offer you the opportunity to file a REBUTTAL to any report. (See the RESPOND rebuttal box at the end of the specific Rip-off Report you wish to comment on). Every company receives complaints, but how they handle those complaints separates good business from bad business.

Businesses that want to make a real difference should read about the very successful, groundbreaking and innovative program that both businesses and consumers are raving about. This program is a way businesses can turn negatives into a positive. Rip-off Report Corporate Advocacy Business Remediation and Customer Satisfaction Program is a program that benefits the consumer, assuring them of complete satisfaction and confidence when doing business with a member business. For more information, visit our Corporate Advocacy section.

### Employee insider / ex-employee information

If you are an employee or ex-employee with privileged or insider information about a reported company or individual, please click on the REBUTTAL box at the end of the Rip-off Report to post your comments. This sort of information is often very helpful to an investigation.

### Whistleblowers

Employees who want to expose corruption should file a Report! Any employees who do so should be protected by Federal Whistleblower Laws, and Rip-off Report treats all victims as a confidential source. Remember, we are a publication, just like a major newspaper, and we will never voluntarily reveal your identity. Instead we will protect our sources under the First Amendment of the U.S. Constitution.

## DOING BUSINESS WITH THE COMPANY OR INDIVIDUAL REPORTED

Consumers, just because a company or individual is reported on Rip-off Report does not necessarily mean you should not do business with them. By reading the experiences of other consumers, you will now be able to make more educated decisions, because now you know what to watch for.

## USE YOUR REPORT TO GET WHAT IS COMING TO YOU

Faxing your Rip-off Report to the company or individual you have just reported can serve as a very valuable negotiating tool. Include in your negotiation that you have the ability to UPDATE your Report and reflect their good business practices by explaining that their eagerness to satisfy the complaint and make things right will be seen by the entire world. Also, explain that failure to respond/rectify the situation will also be seen.

YOU MUST NOT call them threatening to file a report if they do not comply with your demands, as this may be construed as blackmail. You must first file a Rip-off Report, then fax them a copy, offering them a chance to rectify the wrong that they did to you. Explain that then, and only then, you will UPDATE your Rip-off Report in a positive way, if deserved.

## Organizing class action lawsuits

Victims & lawyers who want to sue companies or individuals reported
Victims & attorneys who are interested in pursuing litigation against a particular company reported on this website must contact us directly. It is inappropriate to solicit business using this website other than through prior

APX 000026