Ripoff Report - Microsoft Internet Explorer
File  Edit  View  Favorites  Tools  Help
Address http://www.ripoffreport.com/default.asp
Google



If you are an employee or ex-employee with privileged or insider information about a reported company or individual, please click on the REBUTTAL box at the end of the Ripoff Report to post your comments. This sort of information is often very helpful to an investigation.

## Whistleblowers

Employees who want to expose corruption should file a Ripoff Report. All employees who do so should be protected by Federal Whistleblower Laws, and Ripoff Report treats all victims as a confidential source. Remember, we are a publication, just like a major newspaper, and we will never voluntarily reveal your identity. Instead we will protect our sources under the First Amendment of the U.S. Constitution.

## DOING BUSINESS WITH THE COMPANY OR INDIVIDUAL REPORTED

Consumers, just because a company or individual is reported on Ripoff Report does not necessarily mean you should not do business with them. By reading the experiences of other consumers, you will now be able to make more educated decisions, because now you know what to watch for.

## USE YOUR REPORT TO GET WHAT IS COMING TO YOU

Faxing your Ripoff Report to the company or individual you have just reported can serve as a very valuable negotiating tool. Include in your negotiation that you have the ability to UPDATE your Report and reflect their good business practices by explaining that their eagerness to satisfy the complaint and make things right will be seen by the entire world. Also, explain that failure to respond/rectify the situation will also be seen.

YOU MUST NOT call them threatening to file a report if they do not comply with your demands, as this may be construed as blackmail! You must first file a Ripoff Report, then fax them a copy, offering them a chance to rectify the wrong that they did to you. Explain that then, and only then, you will UPDATE your Ripoff Report in a positive way, if deserved.

## Organizing class action lawsuits

### Victims & lawyers who want to sue companies or individuals reported

Victims & attorneys who are interested in pursuing litigation against a particular company reported on this website must contact us directly. It is inappropriate to solicit business using this website other than through prior arrangement. This is largely because we need to ensure, the best we can, that our readers are not being taken advantage of again.

If you are interested in filing a class action lawsuit based on Reports you've seen posted, and you want to identify a class representative, we can help by e-mailing those victims that gave permission and asking them to contact you. In this way, we protect victim identities while allowing them to make the decision as to whether to participate or not.

Additionally, if you would like to know whether any new reports are being posted AS THEY GET POSTED, such as during the early stages of an investigation, you may be interested in our upcoming Ripoff Alerts program. We'll update you shortly on how you can participate in these valuable programs.

We are anxious and willing to join forces with victims and attorneys to stand up for the rights of consumers and help them get justice. Both victims and attorneys should send their e-mails to: ClassActionRipoffReport.com.

### It's important to file on Ripoff Report because we're important to government and media agencies

Many government sites (and the BBB) are a place to collect information from you, the consumer, but in many cases, those reports never become available for others to see. Listing your complaint on many government sites is usually no better than filing with the Better Business Bureau (BBB) because they just go into a database where only privileged eyes can see them. In fact, utilizing such sites may seem a waste of time, as you rarely hear back on what's being done, if anything, about your complaint.

By failing to make this information available publicly, it makes it harder for consumers to get educated about exactly what scams they should watch for. In addition, when these agencies fail to make these individual complaints public, consumers are robbed of the opportunity to know how bad a company or individual really is, and why.

On the other hand, many government agencies come to the Ripoff Report for information. We have assisted, and continue to assist, many government agencies, including local and state police departments, the FBI, FTC and Attorney General offices from around the country.

Since all the Reports are out in the open, consumers, journalists, attorneys and investigators from all types of agencies can research existing problems and anticipate potential problems. We provide immediate access to all kinds of fraud and scams, all out in the open, all unedited and all for FREE.

Unfortunately, many agencies will not take action on a potential rip-off unless there are substantial numbers of people or substantial sums of money involved. Sadly, it often takes public embarrassment to motivate such several local TV stations from all around the country come to the Ripoff Report for information. They do this because they know other agencies are not as reliable or as cooperative a source as the Ripoff Report. News stations know that they will get information from us that is unobtainable elsewhere.

By filing a Ripoff Report, you might be contacted by one of us to notify you to make contact with a law firm that has shown interest in your case. We get requests every week for class action lawsuits, bringing victims together with lawyers willing to sue the company after reading your Ripoff Report.

## Get a company or individual listed on Top Rip-off Links

If there are more than five (5) Reports filed from different consumers on a company or individual then you can request they be added to the list. Ripoff Report will verify that the Reports are filed by different people. Send request to EditorRipoffReport.com.

Top Rip-off Report Links

**Ripoff Report - Microsoft Internet Explorer**

File   Edit   View   Favorites   Tools   Help

Address  http://www.ripoffreport.com/default.asp

...the articles and linking to our forces with other victims and attorneys to share their pain. But justice. Both victims and law-justice should send their emails to: Class-Action@RipoffReport.com.

It's important to file on Ripoff Report because we're important to government and media agencies

Many government sites (and the BBB) are in place to collect information from you, the consumer, but in many cases, those reports never become available for others to see. Listing your complaint on many government sites is usually no better than filing with the Better Business Bureau (BBB) because they just go into a database where only privileged eyes can see them. In fact, utilizing such sites may seem a waste of time, as you rarely hear back on what's being done, if anything, about your complaint.

By failing to make this information available publicly, it makes it harder for consumers to get educated about exactly what scams they should watch for. In addition, when these agencies fail to make these individual complaints public, consumers are robbed of the opportunity to know how bad a company or individual really is, and why.

On the other hand, many government agencies come to the Ripoff Report for information. We have assisted, and continue to assist, many government agencies, including local and state police departments, the FBI, FTC and Attorney General offices from around the country.

Since all the Reports are out in the open, consumers, journalists, attorneys and investigators from all types of agencies can research existing problems and anticipate potential problems. We provide immediate access to all kinds of fraud and scams, all out in the open, all unedited and all for FREE.

Unfortunately, many agencies will not take action on a potential rip-off unless there are substantial numbers of people or substantial sums of money involved. Sadly, it often takes public embarrassment to motivate such agencies into action. Your reports, however, help to change this. Reporting your experiences on Ripoff Report is the next best thing to getting your story on TV or in a newspaper. In fact, many national TV networks and several local TV stations from all around the country come to the Ripoff Report for information. They do this because they know other agencies are not as reliable or as cooperative a source as the Ripoff Report. News stations know that they will get information from us that is unobtainable elsewhere.

By filing a Ripoff Report, you might be contacted by one of us to notify you to make contact with a law firm that has shown interest in your case. We get requests every week for class action lawsuits, bringing victims together with lawyers willing to sue the company after reading your Ripoff Report.

Get a company or individual listed on Top Rip-off Links

If there are more than five (5) Reports filed from different consumers on a company or individual then you can request they be added to the list. The Reports are filed by different people. Send request to Editor@RipoffReport.com.

**Top Rip-off Report Links**

A  B  C  D  E  F  G  H  I  J  K  L  M  N  O  P  Q  R  S  T  U  V  W  X  Y  Z

**Ripoff Report**

| Thank You! | Donate | Links | Past Featured Reports | Consumer Resources | About Us | Want to sue Ripoff Report? |

Copyright © 1999-2007, Ripoff Report

| Privacy Policy | FAQ | Ed Magedson - Ripoff Report Founder | Contact Us |

1                      CAUSE NO. 06-12231

2    GW EQUITY, L.L.C.,           ) IN THE DISTRICT COURT
                                  )
3     Plaintiff,                  )
                                  )
4    VS.                          ) DALLAS COUNTY, TEXAS
                                  )
5    DIXON WOODARD, et al.,       )
                                  )
6     Defendants.                 ) 116TH JUDICIAL DISTRICT

7


8

   ------------------------------------------------------------
9
                      ORAL DEPOSITION OF
10
                    DICKSON EARL WOODARD
11
                       VOLUME 1 OF 2
12
                       MAY 3, 2007
13
   ------------------------------------------------------------
14


15


16       ORAL DEPOSITION OF DICKSON EARL WOODARD, produced as

17   a witness at the instance of the plaintiff, and duly

18   sworn, was taken in the above-styled and numbered cause

19   on the 3rd of May, 2007, from 10:03 a.m. to 5:22 p.m.,

20   before Julia E. Whaley, CSR, CRR, RMR, and Notary Public

21   in and for the State of Texas, reported by machine

22   shorthand, at the law offices of McCreary & Stockford,

23   L.L.P., 18333 Preston Road, Suite 150, Dallas, Texas,

24   pursuant to the Texas Rules of Civil Procedure and the

25   provisions stated on the record or attached hereto.

**EXHIBIT**

2

1    people off and not --

2        A.    Oh, absolutely.  I mean the complaints filed

3    just with the Better Business Bureau, which was something

4    I should have looked at to begin with, is that -- there's

5    a little clause in there that will guarantee they will

6    get you a job in 90 days.

7            But after the first nine days after the work

8    has been done on the resumes, it's kind of a sliding

9    scale toward that 90 days.  If you're still there after

10   90 days, they don't owe you any money because, you know,

11   they're already doing work for you at the end of 90 days.

12           What they'll do is redo your resume for you for

13   another 90 days.  But I mean as far as the money-back

14   guarantee for you being employed in 90 days, it's

15   complete bullshit.

16       Q.    So did Ed believe --

17       A.    That was his problem.

18       Q.    Did Ed believe that McKenzie Scott was also

19   ripping people off?

20       A.    He knew -- he knew way before -- I mean he's

21   the one that explained to me in detail I mean how this

22   was being done.  And when I researched into it, he

23   couldn't have been any more accurate.

24       Q.    So it was Ed who told you they were ripping

25   people off, McKenzie Scott was ripping people off?

1        A.    He said, I don't know what you're so mad at me

2    for.   These guys are ripping people off.

3        Q.    Do you realize that if you go onto Rip Off

4    Report today and you look up McKenzie Scott, there's a

5    banner from Ed saying that he has looked into this and

6    researched this matter and that McKenzie Scott's actually

7    a great company?

8        A.    They paid him off, then.

9        Q.    Okay.  So Ed's willing to write that if you pay

10   him enough money?

11       A.    Yeah.  Absolutely.  He takes it off.  And not

12   only does he take off the negative report.  He replaced

13   them with positive reports.  He's writing them, himself.

14   So everything that's in the negative, he will spin it and

15   say the company feels terrible about this situation

16   happening and we -- we rectify it the best we possibly

17   can, and it looks like you're -- you're timely in your --

18   in your response to the general public.

19            So he takes you from zero to hero.  And now if

20   they pull up Rip Off Reports, you're one of the few

21   positive things on there.  These other people have got

22   negative reports.  Man, this company is -- I mean he has

23   got nothing bad to say about them at all.  He makes his

24   money off --

25       Q.    Ed will actually write the reports, though?

1      A.    Yes.

2      Q.    He'll write the reports, and he'll write the

3  headings on the report?

4      A.    Yeah.   I mean that's part of what he does, is

5  the background and the due diligence, and probably more

6  than highly likely hacking into the networks that would

7  afford him the necessary data to produce details or --

8  and/or he does have some complaints that he can -- he can

9  kind of combine or make -- make with the data that he

10  does have and what he -- the result is a very readable,

11  believable sounding, heart-wrenching story about

12  somebody's getting shafted.

13          But he only needs, like, two complaints or just

14  to get into their net -- somebody's network, and he's

15  got, you know, all of their clients.   And if there's any

16  kind of Better Business Bureau, he's checking courthouse

17  records, anything he can compile that will even remotely

18  look like it could possibly be based on fact.

19          I think you said there's a Bill or somebody in

20  Wisconsin or something.   I'm sure there's a Bill in

21  Wisconsin, you know.   It -- typically more a -- a little

22  bit more detailed than that as far as how it fits into

23  whatever the person that's looking for the due diligence

24  that it's going to make sense to them.

25          He's got to know enough about their business,

1   what they do, to undermine the confidence the person has

2   in them.   And that's how he puts these people out of

3   business.

4       Q.   So why would Ed do this?

5       A.   He actually has completely -- I mean -- and I

6   believe this honestly.  He actually believes that he is

7   conducting a -- a -- an endeavor that's helping the

8   general public.  And his rationalization for this

9   thinking is if it wasn't so insane, it would be

10  brilliant.

11        But he -- and he's had a hard life.  He got

12  screwed over early at 17 by some major corporation, and

13  somebody stole his bicycle or something.  And he changed

14  his name to Ed Magedson when he was 17, and he's been Ed

15  ever since.  And he just -- some people do look at him as

16  the quickest way for consumer protection out there and --

17      Q.   That's interesting that you say that, Dickson,

18  because just five minutes ago, we were talking about how

19  even though he believed McKenzie Scott was this big

20  fraud, he was willing to change his opinion and write

21  good things about them to the detriment of consumers if

22  they paid him money.

23      A.   And I have a perfect explanation for that, too.

24  You're exactly right.  I mean I'm not saying the man is

25  not an extortionist, but he does have the Robin Hood

1    maintains that he has never posted anything either.  So

2    gnomes are putting it on there.

3        Q.    What?

4        A.    Gnomes like cobblers.  He maintains that he's

5    never written one before in his life, but there's --

6        Q.    You already testified that he told you that he

7    wrote some of those reports?

8        A.    Exactly.

9        Q.    Okay.  So that was --

10       A.    It's a completely different conversation, I

11   mean.

12       Q.    But I'm asking you, when you get onto the web

13   site, ripoffreport.com, do you have to sign in and, like,

14   write your user name, or can you sign in as an

15   unregistered guest, or how does that work?

16       A.    I don't know.  It's a public web site.  It's

17   like Better Business Bureau.  You don't have to sign in

18   to anything.

19       Q.    So I can just get on there and post whatever I

20   want?  I don't have to provide an e-mail address --

21       A.    I don't --

22       Q.    -- or -- I don't have to provide an e-mail

23   address or anything?

24       A.    I don't know about posting.  I just know if you

25   want to search via his little Google thing in there for

1        Q.   I don't care how many days later it was,

2   Dickson.  Did you, in fact, go and look into filing class

3   action lawsuits after you got the idea from Jeff Robinson

4   that it was a lucrative industry?

5        A.   Yes.  That would be -- that would be -- that

6   would be good.

7        Q.   Thank you.

8        A.   I mean that's a good question to ask me if it

9   wasn't tripping over itself with inconsistencies.

10                MR. STOCKFORD:  Objection; nonresponsive.

11                THE WITNESS:  You can object your ass off.

12                MR. STOCKFORD:  Objection; nonresponsive.

13        Q.   (By Ms. Pannell)  Okay.  I'm going to hand you

14   now, Dickson, what has been marked Plaintiff's Exhibit

15   No. 2.  This is a printout of a posting that has been

16   made on www.ripoffreport.com.  Do you see at the top of

17   this posting, Dickson, where it says, "Submitted on

18   11/2/2006 at 5:14 a.m."?

19            At the very top of your page there, the top

20   right-hand corner, do you see where it says submitted?

21        A.   Yeah, I do.

22        Q.   Okay.  Did you, in fact, author or post or

23   write any part of this report?

24        A.   Absolutely not.  Let me read it first.  I

25   mean -- I mean this is the same one you put in the

1    complaint.  This is something that 200 -- numbers -- $120

2    million -- I think we've already established that it's

3    not --

4        Q.    Okay.  Did you write this?

5        A.    I did not write this.

6        Q.    Okay.

7              MR. STOCKFORD:  Do you know who did?

8              THE WITNESS:  I'm positive I know who did.

9              MR. STOCKFORD:  Who did it?

10       Q.    (By Ms. Pannell)  Who did?

11       A.    I mean --

12             MR. STOCKFORD:  Who did it?

13             THE WITNESS:  Of course Ed did it.

14             MR. STOCKFORD:  Thank you.

15       Q.    (By Ms. Pannell)  Ed Magedson made this post?

16       A.    Yeah.  He's the -- this is his -- this is his

17   gift.

18       Q.    How do you know Ed Magedson did this post?

19       A.    Because I'm pretty sure he's one of the only

20   people that posts on his own web site.  I mean there may

21   be some people that complain, but not to the quantity

22   he's talking about.

23       Q.    How are you -- how do you get this information?

24       A.    As far as him doing the postings?

25       Q.    Yeah, as far as him posting.

1     A.   Just the adamancy to which he -- he objects

2   to -- objects to posting of himself.  I mean he just --

3   you know, I think he does protest too much.  You know, he

4   told me a hundred thousand times, I don't do any of the

5   postings.

6        So many times, and the fact that -- coupled

7   with his -- his ability to access sensitive databases of

8   large corporations, it's just -- it's a hybrid of

9   complaints, stuff found in public -- in the public

10   sector, and then stuff that he hacks into on his -- on

11   his own.

12        I mean together, the three make -- with his

13   creative ability can -- can weave a pretty hideous --

14   some of this stuff about McKenzie Scott was like -- I was

15   mad knowing it was a lie.  I was like, Dang, did we do

16   that?  No, that was me.

17     Q.   Okay.  So it's your testimony today that you

18   did not author this, that Ed Magedson authored this post?

19     A.   I'm telling you that anything that's on his web

20   site regarding GW Equity is a combination of exactly the

21   things I -- that I just explained to you, it's got

22   nothing to do with me.

23     Q.   Okay.  Let's go through this post, then,

24   Dickson.  If you look at the very beginning, it says, "GW

25   Equity is actually a $120 billion enterprise called

CAUSE NO. 06-12231

GW EQUITY, L.L.C.,                    )  IN THE DISTRICT COURT
                                      )
    Plaintiff,                        )
                                      )
VS.                                   )  DALLAS COUNTY, TEXAS
                                      )
DIXON WOODARD, et al.,                )
                                      )
    Defendants.                       )  116TH JUDICIAL DISTRICT

REPORTER'S CERTIFICATION

ORAL DEPOSITION OF DICKSON EARL WOODARD, VOLUME 1

MAY 3, 2007

I, Julia E. Whaley, CSR, CRR, RMR, and Notary Public

in and for the State of Texas, hereby certify to the

following:

That the witness, DICKSON EARL WOODARD, was duly

sworn by the officer and that the transcript of the oral

deposition is a true record of the testimony given by the

witness;

That the original deposition transcript was

submitted on the _____ day of May, 2007, to the witness

for examination, signature, and return to the court

reporter by June _____, 2007;

That the amount of time used by each party at the

deposition is as follows:

Ms. Pannell - 4 hours, 55 minutes

That pursuant to information given to the deposition

officer at the time said testimony was taken, the

APX 000038

following includes all parties of record:

FOR THE PLAINTIFF:

    MS. KRISTEN M. PANNELL
    and MR. BRAD E. STOCKFORD
    McCreary & Stockford, L.P.
    18333 Preston Road
    Suite 150
    Dallas, Texas   75252

APPEARING PRO SE:

    MR. DICKSON EARL WOODARD
    5317 Anchor Bay Drive
    Garland, Texas   75043

    I further certify that I am neither counsel for,
related to, nor employed by any of the parties in the
action in which this proceeding was taken, and, further,
that I am not financially or otherwise interested in the
outcome of the action.

    Further certification requirements pursuant to Rule
203 of TRCP will be certified to after they have
occurred.

    Sworn and certified to by me this _____ day of May,
2007.

                    Julia E. Whaley, CSR NO. 2961
                    LONE STAR REPORTING
                    723 Woodlake Drive
                    Coppell, Texas   75019
                    (972) 402-9885  Fax (972) 393-3611
                    Firm registration number 379
                    Certification Expires 12-31-07
                    Notary Comm. Expires 11-20-09

FURTHER CERTIFICATION UNDER RULE 203 TRCP

1    The original deposition was/was not returned to the

deposition officer on                                    ;

    If returned, the attached changes and signature page

contains any changes and the reasons therefor.

    If returned, the original deposition was delivered

to Ms. Kristen M. Pannell, Custodial Attorney.

    That $_____ is the deposition officer's

charges for preparing the original deposition transcript

and any copies of exhibits, charged to Ms. Kristen M.

Pannell, Attorney for Plaintiff.

    That the deposition was delivered in accordance with

Rule 203.3 and that a copy of this certificate was served

on all parties shown herein and filed with the Clerk.

    Certified to by me this     day of              ,

2007.


                        Julia E. Whaley, CSR NO. 2961
                        LONE STAR REPORTING
                        723 Woodlake Drive
                        Coppell, Texas   75019
                        (972) 402-9885  Fax (972) 393-3611
                        Firm registration number 379
                        Certification Expires 12-31-07
                        Notary Comm. Expires 11-20-09

1                    CAUSE NO. 06-12231

2   GW EQUITY, LLC,              )  IN THE DISTRICT COURT
          Plaintiff,            )
3                                )
    VS.                          )  116TH JUDICIAL DISTRICT
4                                )
    DIXON WOODARD, et al.,       )
5        Defendants.             )  DALLAS COUNTY, TEXAS

6

7

8   ************************************************************

9            VIDEOTAPED ORAL DEPOSITION OF
                 DICKSON EARL WOODARD
10                    VOLUME 2
                   MAY 8, 2007
11
    ************************************************************
12

13

14

15      ORAL DEPOSITION OF DICKSON EARL WOODARD,

16   produced as a witness duly sworn by me at the

17   instance of the Plaintiff, taken in the above-styled

18   and -numbered cause on the 8th day of May, A.D.,

19   2007, from 9:11 a.m. to 2:43 p.m., before Carla J.

20   Shanks, Certified Shorthand Reporter No. 5054 in and

21   for the State of Texas, at the offices of McCreary &

22   Stockford, located at 18333 Preston Road, Suite 150,

23   in the City of Dallas, County of Dallas and State of

24   Texas, in accordance with the Texas Rules of Civil

25   Procedure and the provisions stated on the record.

1    A.    I mean, submitted by the original author,

2  you're saying Jim was one and Greg was another

3  version?

4    Q.    Right.

5    A.    It doesn't match.

6    Q.    It doesn't match, you're right.  Did you

7  author this post?

8    A.    No.

9    Q.    Did you direct Ed to author this post?

10    A.    No, not at all.

11    Q.    Okay.  Do you know who made this post?

12    A.    No, I couldn't, I couldn't, I couldn't

13  honestly give you an answer.  I mean, I've got my

14  suspicions, but it's -- I don't have any --

15    Q.    What are your suspicions?

16    A.    -- direct evidence.  I mean, it's just --

17  it just looks like the same guy that wrote all of

18  them.

19    Q.    And who would that be?

20    A.    It's -- in my opinion, it's Ed.

21    Q.    Is Ed familiar with where you live?

22    A.    He's familiar with where my parents used

23  to live.

24    Q.    Which is where?

25    A.    They used to live in Rockwall.

1    the search engines.

2         Q.    So Ed has told you that he needs to have

3    four or five posts before he can manipulate search

4    engines?

5         A.    Yeah, I think so.

6         Q.    Is that something he told you?

7         A.    I think it's on his website.

8         Q.    What website, the Rip-Off Report?

9         A.    That wouldn't be on the website.  That

10   would not make any sense.

11        Q.    No.

12        A.    He's alleging that he's doing this for

13   free.  It would have had to have been in a

14   conversation that I had with him.

15        Q.    Okay.  Well, look at the headings on

16   these, on these two.  Do you see the headings are

17   different?

18        A.    It looks like this one is an absolute

19   duplication of the same thing.

20        Q.    The same post, but look at the headings,

21   the big bold print at the top.

22        A.    GW Equity, Citibank, CitiGroup, Citi -- I

23   don't -- GW.

24        Q.    I mean, do you see that the headings are

25   different?  There are two different headings.

1    himself, because he has nowhere else to put it, and

2    the admission to this little program was that -- I

3    was surprised to see that last night.  That was the

4    first time I had seen anything that he admitted to

5    becoming part of some kind of a plan.  I mean, he

6    denied that even to me, you know, until I read that.

7    He always denied taking money for, for -- I mean,

8    taking money for taking the reports off his site.

9            But I mean, there was just too many people

10   out there complaining about him about the same thing,

11   just enough to know that he's -- it's got to come up

12   as extortion.  I mean, he's got some kind of legal

13   defense against it, but to me it's just -- it's

14   extortion.  There is no way out of it.

15       Q.    So what I've gathered from all of your

16   testimony, Dickson, is that Ed Magedson has

17   indirectly told you that he is responsible for making

18   posts about companies.  He will make these posts.

19       A.    Yes.

20       Q.    And then he will manipulate the search

21   engines; is that true?

22       A.    No question about the search engines.

23   That's where the money is made.

24       Q.    Okay.  So --

25       A.    Because he doesn't take anything off his

1   website, but whoever -- whatever they're paying for

2   is the search-engine-related agreement deal.

3        Q.    Okay.

4        A.    That part.

5        Q.    So he will manipulate search engines after

6   he may make some of these posts himself about these

7   companies?

8        A.    There is no question he's doing it.

9        Q.    So he's -- no question Ed is making these

10  posts about these companies, and then he's

11  manipulating them in the search engines, and then

12  he'll go and try to get money from these companies --

13       A.    I don't --

14       Q.    -- to remove them or to manipulate the

15  search back into their favor?  Is that kind of how he

16  operates?

17       A.    I don't believe that he ever approaches --

18  that I know of.

19       Q.    Okay.

20       A.    That he ever approaches the victims.  I

21  think he just waits until they come to him.  I don't

22  know that for sure.

23       Q.    What do you mean by victims?  What are

24  you, what are you talking about?

25       A.    I'm saying the big victims like McKenzie

<pre>
 1                    CAUSE NO. 06-12231

 2   GW EQUITY, LLC,              )  IN THE DISTRICT COURT
          Plaintiff,             )
 3                               )
     VS.                         )  DALLAS COUNTY, TEXAS
 4                               )
     DIXON WOODARD, et al.,      )
 5        Defendants.            )  116TH JUDICIAL DISTRICT

 6
                      REPORTER'S CERTIFICATION
 7
             ORAL DEPOSITION OF DICKSON EARL WOODARD
 8
                      TAKEN ON MAY 8, 2007
 9
             I, Carla J. Shanks, Certified Shorthand
10   Reporter in and for the State of Texas, hereby
     certify to the following:
11           That the witness, DICKSON EARL WOODARD,
     was duly sworn by the officer and that the transcript
12   of the oral deposition is a true record of the
     testimony given by the witness;
13           That the deposition transcript was
     submitted on    5/17/07    to the witness or to the
14   attorney for the witness for examination, signature,
     and return to LONE STAR REPORTING by   6/7/07   ;
15           That the amount of time used by each party
     at the deposition is as follows:
16
     MS. PANNELL:       3 hrs. 47 mins.
17

18           That pursuant to information given to the
     deposition officer at the time said testimony was
19   taken, the following includes all parties of record:

20   Ms. Kristen Pannell and Mr. Brad Stockford, Attorneys
     for Plaintiff,
21   Mr. Dickson Earl Woodard, Pro Se.

22           I further certify that I am neither
     counsel for, related to, nor employed by any of the
23   parties in the action in which this proceeding was
     taken, and further that I am not financially or
24   otherwise interested in the outcome of the action.
             Further certification requirements
25   pursuant to Rules 205 and 206 of TRCP will be
     certified to after they have occurred.
</pre>

1
     Sworn to by me on this the   16th    day of

2
May    , 2007.

3

4
               Carla J. Shanks, Texas CSR 5054
               Certification expires 12/31/08

5
               LONE STAR REPORTING
               723 Woodlake Drive

6
               Coppell, Texas  75019
               Firm Registration No. 379

7
               (972) 402-9885  fax (972) 393-3611
               Date Reported:  5/8/07

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

APX 000047

1   CERTIFICATION UNDER RULES 205 AND 206 TRCP

2            The original deposition was/was not

3   returned to the deposition officer on            ;

4            If returned, the attached Changes and

5   Signature page contains any changes and the reasons

6   therefor;

7            If returned, the original deposition was

8   delivered to Ms. Kristen Pannell, Custodial Attorney;

9            That $   1159.70  is the deposition

10  officer's charges to Ms. Kristen Pannell for

11  preparing the original deposition transcript and any

12  copies of exhibits;

13           That the deposition was delivered in

14  accordance with Rule 203.3, and that a copy of this

15  certificate was served on all parties shown herein

16  and filed with the Clerk.

17           Witness my hand this        day of

18            , 2007.

19

20

21

            Carla J. Shanks, Texas CSR No. 5054
22          Expiration Date:  12/31/08
            LONE STAR REPORTING
23          723 Woodlake Drive
            Coppell, Texas   75019
24          Firm Registration No. 379
            Expiration Date:  12/31/07
25          (972) 402-9885    fax (972) 393-3611

APX 000048