# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF TEXAS
# DALLAS DIVISION

| | |
|---|---|
| GW EQUITY, LLC,           § | |
| § | |
| PLAINTIFF,           § | |
| § | CIVIL ACTION |
| v.           § | |
| § | No. 3-07-CV-0976-K |
| XCENTRIC VENTURES, LLC,           § | |
| WWW.RIPOFFREPORT.COM,           § | |
| WWW.BADBUSINESSBUREAU.COM,           § | |
| and EDWARD MAGEDSON,           § | |
| § | |
| DEFENDANTS.           § | |

## PLAINTIFF'S REPLY IN SUPPORT OF ITS
## APPLICATION FOR A PRELIMINARY INJUNCTION

        John T. Cox III
        Texas Bar No. 24003722
        **LYNN TILLOTSON & PINKER, LLP**
        750 North Saint Paul Street, Suite 1400
        Dallas, Texas  75201
        (214) 981-3800
        (214) 981-3839 Fax

        **ATTORNEY FOR PLAINTIFF**

TO THE HONORABLE COURT:

COME NOW Plaintiff GW Equity, LLC ("GW Equity") and files this reply brief in support of its Emergency Application for Preliminary Injunction against Defendants Xcentric Ventures, LLC, www.ripoffreport.com, www.badbusinessbureau.com, and Edward Magedson (collectively, "Defendants"). In support of its reply, GW Equity states the following:

## I.     INTRODUCTION

GW Equity is entitled to a preliminary injunction. GW Equity has demonstrated both a substantial likelihood of success on defamation and business disparagement, as well as the absence of an adequate remedy at law. Specifically, Defendants' publication of knowingly false and misleading statements to over one million individuals a week on the Internet makes it impossible for GW Equity to determine the number of business relationships it has lost and continues to lose on a daily basis. Additionally, Defendants have suffered no injuries while GW Equity has suffered and continues to suffer due to Defendants' statements.

Throughout their response brief, Defendants desperately try to shift this Court's focus away from their own wrongdoing. Defendants spend a great of deal of effort explaining to this Court how GW Equity initiated a parallel state court proceeding against Mr. Dickson Woodard.[1] Despite Defendants' suggestions to the contrary, GW Equity has done nothing to hide this fact from the Court.[2] The existence of this earlier lawsuit brought by GW Equity in a separate jurisdiction has done nothing to alter the factual scenario that gave rise to the instant proceeding. In fact, even after a resolution was reached in the state court lawsuit, the facts here remained the same—false and misleading statements regarding GW Equity remained on the Websites and the

---

[1] The style of the state court proceeding is *GW Equity, LLC v. Dickson Woodard*, Cause No. 06-12231, 160th Judicial District, Dallas County, Texas.

[2] In fact, GW Equity has clearly attached proceedings from the state court proceeding as exhibits to its Original Complaint for Damages and Emergency Application for Injunctive Relief ("Original Complaint") and Brief in Support of Its Application for Preliminary Injunction.

dissemination of such statements continued to harm GW Equity's business on a daily basis. It is precisely for this reason that GW Equity now requests this Court to enter a preliminary injunction preventing Defendants from maintaining these false and misleading statements on the Websites and engaging in conduct in violation of GW Equity's rights.[3]

## II. ARGUMENT & AUTHORITIES

### A. GW Equity Is Entitled To The Injunctive Relief It Seeks

The Fifth Circuit has held that a mandatory injunction is appropriate where the currently existing status quo is causing a party to suffer irreparable injury. *Canal Authority of the State of Florida v. Callaway*, 489 F.2d 567, 576 (5th Cir. 1974). The mandatory preliminary relief requested by GW Equity should be granted because the facts and law are in its favor. *See Martinez v. Mathews*, 544 F.2d 1233, 1243 (5th Cir. 1976).

#### 1. There Is A Strong Likelihood Of Success On The Merits Of Its Claims For Defamation and Business Disparagement

GW Equity has demonstrated a strong likelihood of success on the merits of both its claim for defamation and business disparagement. *See* Order of Proof, Apx. at 000103-000105.[4] To satisfy the element of substantial likelihood of success on the merits, GW Equity need only establish that a single claim has a substantial likelihood of success. *See Ramada Franchise Sys., Inc. v. Jacobcart, Inc.*, No. 3:01-CV-0306D, 2001 WL 540213, at *1 (N.D. Tex. May 17, 2001).

First, GW Equity has demonstrated its claim for defamation. Defendants have openly published false statements of fact regarding it on the Websites. *See* Binkley Affidavit ¶ 5, Apx.

---

[3] Contrary to any arguments Defendants may raise at a later time, Defendants are subject to personal jurisdiction in the state of Texas. Because Defendants operate an interactive website and engage in numerous commercial activities with citizens of this state, they have clearly submitted themselves to the jurisdiction of this state. *See Mink v. AAAA Dev. LLC*, 190 F.3d 333, 335-36 (5th Cir. 1999). If and when Defendants move to contest personal jurisdiction, GW Equity expressly reserves the right to respond in full to these arguments.

[4] All citations to "Apx. at __" refer to the Appendix in Support of Plaintiff's Brief in Support of Its Application for Injunctive Relief filed with the Court on June 11, 2007. GW Equity will attach an additional copy of this Appendix to this reply brief as well.

at 000050; Woodard Deposition, Vol. II, 414:1-18, 480:15-481:2, Apx. at 000118-000126. Additionally, it has lost existing and potential clients as a direct result of Defendants' false and misleading statements on the Websites. *See* Binkley Affidavit ¶¶ 15-19, Apx. at 000051-000054; Supplemental Binkley Affidavit ¶ 4, Apx. at 000128-000129.

Defendants do not dispute any of the factual evidence GW Equity has presented to this Court. Instead, Defendants hide behind case law they purport stands for the broad proposition that no injunction should ever be granted on the mere fact that a plaintiff has alleged a claim for defamation. *See* Opposition Brief at 11-12 (citing *Brammer v. KB Home Lone Star*, LP, 114 S.W.3d 101, 207 (Tex. App.—Austin 2003, no pet.) and *Hajek v. Bill Mowbray Motors, Inc.*, 647 S.W.2d 253, 255 (Tex. 1983)). Defendants are wrong. These cases recognize that an injunction can be entered on valid grounds if the speech at issue is false and misleading commercial speech. *See Brammer*, 114 S.W.3d at 108; *see also Amalgamated Acme Affiliates, Inc. v. Minton*, 33 S.W.3d 387, 393-95 (Tex. App.—Austin 2000, no pet.) (concluding that the trial court properly enjoined the false and misleading commercial speech that caused the deception and confusion). These cases do not hold that an injunction can never be issued on a defamation claim, but only that an injunction will be deemed unconstitutional if it is a prior restraint on speech. *See Brammer*, 114 S.W.3d at 107.

Here, because Defendants' speech on the Websites is false and misleading commercial speech, Defendants cannot find refuge under the First Amendment.[5] It is well-settled that "[c]ommercial communications that are deceptive, confusing, or even potentially misleading

---

[5] GW Equity has not requested that Defendants be enjoined from disseminating or posting all information found on the Websites. Instead, Defendants would only be enjoined from disseminating and posting *the false and misleading statements regarding GW Equity* on the Websites. Defendants would be forced to remove the six specific postings that reference GW Equity. As a result, Defendants' attempt to construe this as a restriction on its freedom of expression is an overstatement at best.

may be enjoined."[6] *Jenkins v. Transdel Corp.*, No. 03-04-0033-CV, 2004 WL 1404364 (Tex. App.—Austin June 24, 2004, no pet.). As a result, this Court may enter an injunction in this case for the reason that any concern against prior restraints of speech is inapplicable here. *See Friedman v. Rogers*, 440 U.S. 1, 10 (1979). Likewise, Defendants are not immune from GW Equity's claim for defamation based on the Communications Decency Act ("CDA"). As the creators and authors of original content on the Websites, Defendants are information content providers and remain liable for their wrongful conduct. *See MCW, Inc. v. Badbusinessbureau.com, LLC, et al.*, No. Civ. A. 3:02-CV-2727-G, 2004 WL 833595, at *10 (N.D. Tex. Apr. 19, 2004).

<u>Second</u>, GW Equity has demonstrated business disparagement. The statements on the Websites were false and misleading statements regarding GW Equity's business and reputation. *See* Binkley Affidavit ¶ 5, Apx. at 000050; Woodard Deposition, Vol. II, 414:1-18, 480:15-481:2, Apx. at 000118-000126. Defendants posted these false and misleading statements with ill will. *See* Binkley Affidavit ¶ 14, Apx. at 000052 (explaining how Defendants refused to correct or remove the false postings unless GW Equity paid a sum of money to participate in the remediation program). Additionally, GW Equity has suffered special damages in the form of lost sales and loss of trade caused by Defendants' statements. *See* Binkley Affidavit ¶¶ 15-19, Apx. at 000051-000054; Supplemental Binkley Affidavit ¶ 4-6, Apx. at 000128-000130. Based on this evidence, GW Equity has a substantial likelihood of success of prevailing on its claim for business disparagement.

---

[6] Defendants' speech on the Websites must be classified as commercial speech because they clearly intended to prevent the formation of contractual relationships with potential clients. *See Amalgamated*, 33 S.W.3d at 394.

### 2. The Communications Decency Act Does Not Provide Immunity To Defendants

The CDA offers no protection to Defendants.  The Chief Judge of the Northern District of Texas has already held that the CDA does not protect these specific Defendants because they edit and modify postings from third-parties.  *See MCW, Inc. v. Badbusinessbureau.com, LLC, et al.*, No. Civ. A. 3:02-CV-2727-G, 2004 WL 833595 (N.D. Tex. Apr. 19, 2004).  Surprisingly, Defendants fail to cite this case, much less address it in their brief.  GW Equity did not file this lawsuit simply because Defendants host multiple websites on the Internet.  Instead, GW Equity sued Defendants because they have created, authored, written, modified, published, provided, and posted false misleading, defamatory and disparaging information on the Websites.  It is these very acts that make Defendants liable to GW Equity and prevent them from finding protection under the CDA.

Courts interpreting the CDA have consistently held that the CDA does not immunize any person or entity, including an interactive computer service, with respect to information they themselves develop or create.  *See, e.g., Ben Ezra, Weinstein & Co. v. AOL*, 206 F.3d 980, 985 n.4 (10th Cir. 2000) (noting that the CDA "would not immunize Defendant with respect to information Defendant developed or created by itself"); *Zeran v. AOL*, 129 F.3d 327, 330 (4th Cir. 1997) (noting that "[n]one of this means . . . that the original culpable party who posts defamatory messages would escape accountability").  Recently, a court in the Northern District of Texas considered this precise issue in *MCW, Inc.*—a case involving the same defendants and identical facts as the instant case—and held that because defendants, Edward Magedson and Badbusinessbureau.com, were information content providers with respect to the report titles, headings, and some of the defamatory messages posted on the websites, they could not claim immunity under § 230 of the CDA.  *Id.* at *10.

In *MCW, Inc.*, the plaintiff's claims were based on the disparaging titles, headings, and editorial messages that it alleged defendants created. *Id.* The court reasoned that the "CDA does not distinguish between acts of creating or developing the contents of reports, on the one hand and acts of creating or developing the titles or headings of those reports, on the other." *Id.* The court noted that because the "titles and headings [were] clearly part of the web page content," the defendants were information content providers and thus were not immune from the plaintiff's claims. *Id.* Additionally, the court found that the defendants were not immune because they were "responsible, in whole or in part, for the creation of development of third party defamatory messages" due to the plaintiff's allegations that defendants actively encouraged, instructed, and participated in the consumer complaints posted on the websites. *Id.*

Similar to the facts alleged in *MCW, Inc.*, GW Equity alleged and proved Defendants have developed, created, written, authored and posted on the Websites false, misleading, disparaging and defamatory messages concerning GW Equity. Defendants do not just provide a website for people to post information they choose. Instead, Defendants take an active role in determining postings. Defendants create all of the titles to the postings, and include words in the titles such as "rip-off," "fraud," and "scam," to describe companies like GW Equity. *See* Original Complaint ¶ 16, Apx. at 000008; *see also* Exhibits 3-7 to Binkley Affidavit, Apx. at 000056-000074. Defendants also categorize postings under several headings, including one entitled "Corrupt Companies" that was used to group a report regarding GW Equity.[7] *See id.* ¶ 17, Apx. at 000008; *see also* Exhibit 3 to Binkley Affidavit, Apx. at 000056-000061.

---

[7] Relying on a self-serving declaration from Defendant Magedson, Defendants claim that they do not create the report titles and headings on the reports. Nevertheless, a review of the titles and headings on the various reports on the Websites reveals that these are not something that could be easily created by third-parties. The titles and headings have specific key word phrases that allow them to be easily found through the aid of Internet search engines.

Additionally, Defendants openly alter report titles on these specific reports to reflect how companies have suddenly gone from "bad" to "good" after submitting to Defendants' remediation program as a means to remedy the false and misleading statements already posted on Defendants' Websites.  *See* Various Reports from www.ripoffreport.com authored by Defendant Magedson, Apx. at 000079-000102.  In these reports, Defendant Magedson provides *his own* explanation regarding the results of the investigation and signs the report as the author of the material expressed therein.  *See id.*  This is evidence that Defendants are responsible for and create original content on the Websites.  Thus, this Court should find that Defendants are information content providers under the statute, and "the immunity of Section 230 does not extend to [them] as a matter of law."  *Carafano v. Metrosplash.com, Inc.*, 207 F. Supp. 2d 1055, 1067 (C.D. Cal. 2002); *see also MCW, Inc.*, 2004 WL 833595, at *10.

### 3. If Injunctive Relief Is Not Granted, There Is a Strong Threat Of Irreparable Harm

GW Equity has been and will continue to suffer immediate and irreparable damage if Defendants are not enjoined during the pendency of this lawsuit from disseminating, maintaining, hosting, using, or publishing false, misleading, disparaging and defamatory words and comments regarding GW Equity on the Websites.  GW Equity has provided substantial evidence to this Court as to why the harm it has suffered cannot be adequately measured in money damages.  *See White v. Carlucci,* 862 F.2d 1209, 1211 (5th Cir. 1989) (noting that the irreparable harm element must be satisfied by independent proof).  Contrary to Defendants' suggestion, GW Equity's request for injunctive relief is not based solely on its fear that its "reputation can only suffer."

GW Equity's remedies at law are inadequate to compensate it for this harm and damage because every day that Defendants continue to host such false and misleading statements on the

Websites severely impacts GW Equity's ability to form new business relationships with potential clients and persuades current clients to end their business relationships with GW Equity. Since filing its Original Complaint approximately one week ago, GW Equity has lost nine more potential clients. Each of these potential clients has informed GW Equity that they were not interested in pursuing a business relationship with GW Equity after reading the statements on Defendants' Websites. GW Equity would have received a total of $269,775.00 from these nine potential clients. *See* Supplemental Binkley Affidavit ¶ 4, Apx. at 000128-000129.

Significantly, such losses are the tip of the iceberg. Defendant Magedson himself admits that the Websites receive "millions of hits every week." Def. Appx. at 0001. Given the millions of people who visit the Websites weekly, it is impossible for GW Equity to know how many cancellations, non-calls from potential clients, and lost commissions it has lost and will continue to lose due to Defendants' false and misleading statements. Supplemental Binkley Affidavit ¶¶ 5-7, Apx. at 000128-000130. Because GW Equity cannot control who visits Defendants' Websites and who reads the false and misleading statements, GW Equity has no ability to neutralize the damaging effect Defendants' statements have on its clients. Unless Defendants are enjoined from disseminating and hosting such statements regarding GW Equity on the Websites, its known losses as well as its unknown losses will continue to grow at an exponential rate. More importantly, GW Equity will never truly be able to calculate the precise amount of damages it has suffered and continues to suffer.

In their brief, Defendants direct this Court to other articles on the Internet that refer to GW Equity, and contend that other "negative" information regarding GW Equity is widely available on the Internet. This argument, however, is unconvincing. The fact that *every single potential client* GW Equity has lost in the past week has pointed to the postings on

www.ripoffreport.com as their basis for not pursuing a business relationship is most telling. Consequently, there is little doubt that Defendants' Websites are clearly causing the harm to GW Equity's business. Indeed, the Defendants' use of aggressive marketing tactics is what continues to direct Internet users and potential clients to the defamatory information posted on the Websites. Thus, Defendants' repeated attempts to draw this Court's attention away from the harm their own false and misleading statements are causing GW Equity must be rejected.

### 4. There Is A Substantial Threat Of Immediate And Irreparable Harm

Ordering the Defendants to remove the false and misleading statements from the Websites will cause no harm to Defendants. As the operators of the Websites, Defendants do not make a profit by maintaining this information on the Websites. Thus, they will not suffer *any* monetary losses if they are forced to remove the false and misleading statements regarding GW Equity. Notably, the only potential "profit" Defendants experience as operators of the Websites is the money they receive by forcing companies—in positions similar to GW Equity—to submit to the "Rip-off Report Corporate Advocacy Business Remediation & Customer Satisfaction Program." GW Equity believes that this program is an extortion scheme and will not participate in Defendants' extortion attempts. Accordingly, Defendants have no legitimate or honest business interest in disseminating this false and misleading information to potential GW Equity customers. If the statements on the Websites are not removed, GW Equity will continue to suffer immediate and irreparable harm that clearly outweighs any harm that Defendants may suffer.

Defendants claim that the entry of an injunction will affect the "integrity" of the Websites because they have a long-standing policy of not removing reports from the Websites. This contention is baseless. Defendants host thousands of these reports on their Websites, and merely removing six reports about one company will not cause the entire goal of their business to be

defeated. It is a twisted and hollow claim of "integrity" when used to maintain the publication of knowingly false and misleading statements. In addition, Defendants' fear that there will be an influx of litigation by companies who believe they are posting harmful information is completely unsubstantiated. Notably, even before GW Equity filed its application for injunctive relief, Defendants have been defending themselves against numerous lawsuits for the last several years that involve similar issues to the ones presented in the instant proceeding. As a result, Defendants' so-called fear of future litigation appears to already be a reality.

### 5. Issuing A Preliminary Injunction Against Defendants Serves the Public Interest

The public will benefit from the granting of a preliminary injunction in this case. The false and misleading postings on the Websites only serve to deceive the public as to GW Equity's business and reputation. Moreover, courts have determined that there is a strong public interest in preventing false and misleading advertisements such as the comments here advising potential clients not to do business with GW Equity for clearly inaccurate reasons. *See, e.g., Rent-A-Center West, Inc. v. Aaron Rents, Inc.*, No. 3:03-CV1595-K, 2004 WL 813225, at *5 (N.D. Tex. Apr. 14, 2004). For these reasons, GW Equity's motion for a preliminary injunction should be granted.

### III.   CONCLUSION

For the reasons stated herein, GW Equity respectfully asks this Court to enter preliminary injunction prohibiting Defendants from disseminating, using, hosting, maintaining, modifying, or publishing the false, misleading, disparaging and/or defamatory words and comments regarding GW Equity on the Websites during the pendency of this lawsuit.

Dated: June 13, 2007                    Respectfully submitted,


                                                              _____*/s/ John T. Cox III*_____
                                                              John T. Cox III
                                                              Texas Bar No. 24003722
                                                              **LYNN TILLOTSON & PINKER, L.L.P.**
                                                              750 N. St. Paul Street, Suite 1400
                                                              Dallas, Texas  75201
                                                              (214) 981-3800 Telephone
                                                              (214) 981-3839 Facsimile

                                                              **ATTORNEY FOR PLAINTIFF**
                                                              **GW EQUITY, LLC**


## CERTIFICATE OF SERVICE

       The undersigned does hereby certify that a true and correct copy of the foregoing was served upon the following counsel *via ECF* on this 13th day of June, 2007.


| Maria Crimi Speth, Esq. | Jeffrey S. Seeburger |
| --- | --- |
| Jaburg & Wilk, PC | Kane Russell Coleman & Logan, P.C. |
| 3200 North Central Avenue, Suite 2000 | 3700 Thanksgiving Tower |
| Phoenix, Arizona 85012 | 1601 Elm Street |
| mcs@jaburgwilk.com | Dallas, TX 75201 |
| Tel: (602) 248-1000 | Tel: (214) 777-4200 |
| Direct:  (602) 248-1089 | Direct: (214) 777-4275 |
| Fax:  (602) 248-0522 | Fax: (214) 777-4299 |
|  | jseeburger@krcl.com |


                                                            ___*/s/ John T. Cox III*_____
                                                            John T. Cox III

REPLY IN SUPPORT OF APPLICATION FOR INJUNCTIVE RELIEF          PAGE 11
02033-701/163437