UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| GW EQUITY, LLC, | ) |
| | ) |
| Plaintiff, | ) CIVIL ACTION NO. |
| | ) 3-07 CV 0976-K |
| v. | ) |
| | ) |
| XCENTRIC VENTURES, LLC, *ET AL.*, | ) |
| | ) |
| Defendants. | ) |

**DEFENDANT XCENTRIC VENTURES, L.L.C.'S
MOTION TO DISMISS FOR LACK OF JURISDICTION**

Defendants XCENTRIC VENTURES, L.L.C. ("Xcentric") and ED MAGEDSON ("Magedson") respectfully request that this Court dismiss the above-captioned action pursuant to Fed.R.Civ.P. 12(b)(2) because this Court does not have personal jurisdiction over the Defendants.

**I. FACTUAL AND PROCEDURAL BACKGROUND**

The facts of this case likely remain fresh in this Court's mind in light of recent proceedings. Therefore, Defendants will provide only a brief background as it relates to the issue of lack of jurisdiction.

Defendant Xcentric is an Arizona-based LLC which operates a website located at **www.RipoffReport.com** and **www.BadBusinessBureau.com** (the "ROR Site" or "Rip-Off Report"). Xcentric does not own any assets in Texas, does not have any offices in Texas, does not have any agents in Texas and does not conduct any business in Texas.

Xcentric does business in Phoenix, Arizona, and its agents, and assets are all located in Phoenix, Arizona. (Declaration of Ed Magedson, attached as Exhibit "A")

Defendant ED MAGEDSON is a resident of the State of Arizona and has no property or agents in Texas. Mr. Magedson is the founder of Rip-Off Report and is the "EDitor-in Chief" of the ROR Site. (Declaration of Ed Magedson, Exhibit "A")

In considering whether there is jurisdiction over Defendants, this Court is not permitted to treat Defendants as publishers of content that they did not create. The Communications Decency Act, 47 U.S.C. § 230.

## II.   THE MATTER SHOULD BE DISMISSED FOR LACK OF JURISDICTION

Plaintiff GWE bears the burden of establishing this Court's jurisdiction over Defendants. *Wilson v. Belin*, 20 F.3d 644, 648 (5th Cir.), *cert. denied*, 513 U.S. 930 (1994). Whether a trial court has personal jurisdiction over a defendant is a question of law. *BMC Software Belgium, N.V. v. Marchand*, 83 S.W.3d 789, 794 (Tex.2002). Texas courts may assert *in personam* jurisdiction over a nonresident if (1) the Texas long-arm statute authorizes the exercise of jurisdiction, and (2) the exercise of jurisdiction is consistent with federal and state constitutional due-process guarantees. *Schlobohm v. Schapiro*, 784 S.W.2d 355, 356 (Tex.1990). The long-arm statute authorizes Texas courts to exercise jurisdiction over nonresident defendants doing business within the State. See TEX. CIV. PRAC. & REM.CODE ANN. § 17.042 (Vernon 1997). Pertinent to this case is the second subsection, which provides that a nonresident does business in Texas if it: " (2) commits a tort in whole or in part in this state." *Id*. § 17.042(2).

Xcentric is an Arizona-based LLC and Magedson is a resident of Arizona. Other than merely operating the ROR Site (free of charge to users) which can be viewed in Texas, Defendants have no contacts with this forum. This is insufficient to establish personal jurisdiction because United States courts are virtually unanimous in holding that the mere operation of a website in location "A" which is viewable in location "B" does <u>not</u> confer jurisdiction in location "B". *See, e.g., Revell v. Lidov,* 2001 WL 285253 (N.D. Texas 2001) (The fact that the website can be viewed in Texas can not, alone, be the basis for exercise of personal jurisdiction in Texas for statements posted by others on the website); *Cybersell, Inc. v. Cybersell, Inc.*, 130 F.3d 414, 418 (9th Cir. 1997) (noting, "as far as we are aware, <u>no court has ever held that an Internet advertisement alone is sufficient to subject the advertiser to jurisdiction in the plaintiff's home state</u>.") (emphasis added) (internal citation omitted).

In addition, as explained in Exhibit "A", every time a user submits a report to Rip-Off Report for publication, the user is required to agree that the State of Arizona shall have exclusive jurisdiction over any dispute arising from the report. Although forum-selection clauses are not dispositive, they "should not be ignored in considering whether a defendant has 'purposefully invoked the benefits and protections of a State's laws.' " *Michiana Easy Livin' Country, Inc. v. Holten*, 168 S.W.3d 777, 792 (Tex.2005).

    A.    **<u>Due Process Prevents This Court From Exercising Jurisdiction Over Defendants</u>**.

"Foreign defendants have a liberty interest, protected by the due process clause, 'in not being subject to the binding judgments of a forum with which [they have]

3

established no meaningful 'contacts, ties, or relations.'" *Burger King Corporation v. Rudzewicz*, 471 U.S. 462, 471–72, 105 S.Ct. 2174, 2181–82 (1985). In essence, the Due Process Clause ensures that persons will have fair warning that a particular activity may subject them to the jurisdiction of a foreign sovereign. *Id*. Due process requires two elements to exercise personal jurisdiction over a nonresident: (a) the nonresident must have some minimum contact with the forum which results from an affirmative act on its part; and (b) it must be fair and reasonable to require the nonresident to defend the suit in the forum state. *Stuart v. Spademan*, 772 F.2d 1185, 1189 (5th Cir. 1985).

Due Process mandates dismissal under the circumstances present in this case. To begin, none of the Defendants' business activities have any direct or purposeful connection to Texas. Rather, the ROR Site has over 249,530 reports pertaining to a multitude of different jurisdictions. Exhibit "B."

In evaluating the extent of the defendant's contacts with Texas, the touchstone of our jurisdictional analysis is "purposeful availment." *Michiana*, 168 S.W.3d at 784. In determining whether Defendants have purposefully availed themselves of the privilege of conducting activities within Texas, the Court must look only to the Defendants' contacts and not unilateral contacts of third parties. *See Id*. at 784-85. The Court must search for evidence showing the Defendants availed themselves of the forum by seeking some benefit, advantage, or profit. *Id*.

The purposeful availment requirement cannot be satisfied by "random," "fortuitous," or "attenuated" contacts with the forum state or by Plaintiff's or a third party's unilateral activities; instead, the Plaintiff must show "actions by the defendant

4

himself that create a 'substantial connection' with the forum state." A*uto Wax, Inc. v. Kasei Kogyo Co., Ltd.* 2001 WL 1891719, *2 (W.D.Tex.) (W.D.Tex.,2001). Even if this Court were to accept as true the Plaintiff's allegations, no such connection can be established here.

### B. General Jurisdiction is Lacking

General jurisdiction requires Defendants to have "continuous and systematic general business contacts" with the forum state [here, Texas]. *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 416, 104 S.Ct. 1868, 80 L.Ed.2d 404 (1984). General jurisdiction is established over a nonresident defendant when the nonresident's contacts in a forum are sufficiently continuous and systematic such that the forum may exercise personal jurisdiction over the nonresident even when the cause of action does not arise from or relate to its activities within the forum. *BMC Software*, 83 S.W.3d at 796; *Guardian Royal Exch. Assurance, Ltd. v. English China Clays, P.L.C.*, 815 S.W.2d 223, 228 (Tex.1991). "When general jurisdiction is asserted, the minimum contacts analysis is more demanding and requires a showing of substantial activities in the forum state." *Guardian Royal*, 815 S.W.2d at 228. In conducting a general-jurisdiction analysis, the Court is concerned with the quality and nature of the contacts rather than their number. *Am. Type Culture Collection, Inc. v. Coleman*, 83 S.W.3d 801, 809-10 (Tex. 2002). The Court may not view each contact in isolation; rather, they must carefully investigate, compile, sort, and analyze all contacts to determine if together they are sufficient to support general jurisdiction. *Id*. at 809.

5

A defendant's contacts with the forum "must be so extensive to be tantamount" to the defendant's "being constructively present in the state to such a degree that it would be fundamentally fair to require it to answer in a [Texas] court in any litigation arising out of any transaction or occurrence taking place anywhere in the world." *Purdue Research Foundation v. Sanofi-Synthelabo, S.A.*, 338 F.3d 773, 787 (7th Cir. 2003).

Plaintiffs point to reports about Texas companies on the website and to the fact that the Website markets a book. There are, as of today, 249,530 reports on Rip-off Report, of which 14,200 are about companies that the author identified as a Texas company. In other words, approximately 5.5% of the reports on Rip-off report by consumers are about Texas companies. (Exhibit "B"). Also, Rip-off Report markets two books on the website. One is a consumer guide and one is a guide to mortgages. The books are marketed on the website by an affiliated company, Consumer Media Publishing, LLC. Consumer Media ships the books to consumers throughout the country. Neither of these facts establishes the type of substantial and continuous contacts with the state of Texas to rise to the level of general jurisdiction.

## C. **Defendants Are Not Subject to Specific Jurisdiction In Texas**.

Specific jurisdiction exists if the cause of action is related to, or arises out of, the defendant's contacts with the forum, and those contacts meet the due process standard. *Holt Oil & Gas Corporation v. Harvey*, 801 F.2d 773, 777 (5th Cir. 1986), *cert. denied*, 481 U.S. 1015 (1987). The first and second parts of this analysis require the court to evaluate the relationship among the Defendants, the forum state and the cause of action. *Calder v. Jones*, 465 U.S. 783, 788, 104 S.Ct. 1482, 79 L.Ed.2d 804 (1984) (citing

6

*Shaffer v. Heitner*, 433 U.S. 186, 204, 97 S.Ct. 2569, 53 L.Ed.2d 683 (1977)). When specific jurisdiction is at issue, the minimum contacts inquiry focuses on whether the nonresident defendant has "purposefully directed" his activities at the forum state. *Spademan*, 772 F.2d at 1190. A defendant must know that his tortious actions will affect a person in a particular forum before that forum can assert personal jurisdiction over that defendant. *Taylor v. Alex, Brown & Sons, Inc.* 2002 WL 31245369 (N.D. Tex. 2002).

"Internet use is characterized as falling within three categories on a sliding scale for purposes of establishing personal jurisdiction." *J.A. Riggs Tractor Co. v. Bentley*, 209 S.W.3d 322, 332 (Tex.App.-Texarkana,2006); *see Michel v. Rocket Eng'g Corp.*, 45 S.W.3d 658, 677 (Tex.App.-Fort Worth 2001, no pet.) (citing *Jones v. Beech Aircraft Corp.*, 995 S.W.2d 767, 772 (Tex.App.-San Antonio 1999, pet. dism'd w.o.j.)). For purposes of establishing personal jurisdiction, websites fall into three categories: (1) fully interactive websites clearly used for transacting business over the internet, (2) interactive websites allowing the exchange of information between a potential customer and a host computer, and (3) passive websites used only for advertising over the internet. *Elk River, Inc. v. Garrison Tool & Die, Ltd.*, 2007 WL 926403, *5 (Tex.App.-Dallas) (Tex.App.-Dallas,2007); *see Reiff v. Roy*, 115 S.W.3d 700, 705-06 (Tex.App.-Dallas 2003, pet. denied). In cases involving interactive websites, the degree of interactivity determines whether there is personal jurisdiction. *Reiff*, 115 S.W.3d at 706.

In *Mink v. AAAA Dev. LLC.*, 190 F.3d 333, 336 (5th Cir.1999), the Fifth Circuit Court of Appeals characterized a website as "passive" and insufficient to confer jurisdiction, absent other contacts, where the customer could send information to the host

7

but there was no opportunity for response by the host computer.  Defendants have no contacts with Texas except that they operate a website that can be accessed in Texas (as well as anywhere else in the world).

The most often-cited case in analyzing jurisdiction based on Internet activities is *Zippo Mfg. Co. v. Zippo Dot Com, Inc.*, 952 F. Supp. 1119 (W.D.Pa. 1997), which established the sliding scale test for jurisdiction arising out of Internet activities:

> At one end of the spectrum are situations where a defendant clearly does business over the Internet. If the defendant enters into contracts with residents of a foreign jurisdiction that involve the knowing and repeated transmission of computer files over the Internet, personal jurisdiction is proper. At the opposite end are situations where a defendant has simply posted information on an Internet Web site which is accessible to users in foreign jurisdictions. A passive Web site that does little more than make information available to those who are interested in it is not grounds for the exercise personal jurisdiction. The middle ground is occupied by interactive Web sites where a user can exchange information with the host computer. In these cases, the exercise of jurisdiction is determined by examining the level of interactivity and commercial nature of the exchange of information that occurs on the Web site. (citations omitted).

*Mothers Against Drunk Driving v. DAMMAD, Inc.*, 2003 WL 292162 (N.D.Tex.) is a highly instructive case applying the *Zippo* sliding scale test in the trademark context. In *Mothers Against Drunk Driving*, the Court granted the defendant's motion to dismiss for lack of jurisdiction where the defendant operated an interactive web site which invited anonymous tips regarding illegal drug activity, solicited donations, and sold drug kits. The evidence was that the defendant had received approximately twenty (20) tips from Texas sources, had received several donations from Texas sources, and had sold two kits to Texas buyers.  The Court held that these activities represented "nothing more than

attenuated contacts with Texas that fail to meet the minimum threshold for specific jurisdiction." *Mothers Against Drunk Driving* at *6.

The activity which the Northern District found to be "attenuated contacts" in *Mothers Against Drunk Driving* is more substantial than the activity at issue here. Here, there are only six reports about GWE. That is approximately .0024% percent of the total reports on the website.

The present case is analogous to *Revell v. Lidov*, 317 F.3d 567 (5th Cir. 2002) where the Court granted a motion to dismiss for lack of jurisdiction over a university which hosted a web site upon which a professor posted an article which he authored which allegedly defamed the former associate director of the FBI who resided in Texas. The Court recognized that the university's web site was interactive in that readers could post their own articles. In doing so, the Fifth Circuit held that an article posted on a website bulletin board was "presumably directed at the entire world, or perhaps just concerned U.S. citizens," but "certainly was not directed specifically at Texas." *Id*. at 475. The Court held that the plaintiff must show that the defendant knew that the plaintiff would suffer the brunt of the harm caused by the tortious conduct in the forum and must point to specific activity indicating that the defendant expressly aimed its tortious conduct at the forum. *Id*. at 476. This is something that clearly GWE can not do. The activity complained of against Defendants is the hosting and publishing of information authored by others. This activity is in no way aimed expressly at Texas.

Here, all Defendants did was host a website upon which third parties posted their opinions and complaints about their experience with GWE. The postings were free.

9

Defendants did not engage in any commercial transaction at all.  Its purpose is to make information available. This case should be analyzed the same as either a passive web site or a minimally interactive website because the claims arise out of Defendants' passive activity of merely making information available.  In addition, even if the court analyzes this case under the test for an interactive web site, the level of interactivity here is simply that the author posted a complaint on the website and there was no commercial nature to the exchange of information because there was no money exchanged.  Rather, the posting was a classic exercise of non-commercial free speech.

Plaintiffs assert that Defendants transact business over the Internet and are interactive.  Defendants do not transact business over the Internet. Defendants' solicitation of donations is irrelevant because there is no claim here that arose out of a donation.

### III.  CONCLUSION

Based upon the foregoing, Defendants request that the Complaint be dismissed in its entirety for lack of jurisdiction.

DATED this 20th day of June, 2007.

**JABURG & WILK, P.C.**

/s/  Maria Crimi Speth
Maria Crimi Speth, Esq.
JABURG & WILK PC
3200 North Central Avenue
Suite 2000
Phoenix, Arizona 85012
(602) 248-1000
Attorneys for Defendants
*Pro Hac Vice* Application Pending

>Jeffrey S. Seeburger
>Texas State Bar No. 00788381
>KANE RUSSELL COLEMAN
>& LOGAN, P.C.
>3700 Thanksgiving Tower
>1601 Elm Street
>Dallas, Texas 75201
>Tel: (214) 777-4275
>Fax: (214) 777-4299

**CERTIFICATE OF SERVICE**

 I HEREBY CERTIFY that on this 20th day of June 2007, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system which will send a notice of electronic filing to the following:

John T. Cox, III
LYNN TILLOTSON & PINKER, LLP
750 N. St. Paul Street, Suite 1400
Dallas, TX 75201
tcox@lynnllp.com


   By: s/ Marie Crimi Speth

11

10297-1/LAR/LAR/593015_v1