UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| **GW EQUITY, LLC,** § | | |
| § | | |
| **PLAINTIFF,** § | | |
| § | **CIVIL ACTION** | |
| v. § | | |
| § | **No. 3-07-CV-0976-K** | |
| **XCENTRIC VENTURES, LLC,** § | | |
| **WWW.RIPOFFREPORT.COM,** § | | |
| **WWW.BADBUSINESSBUREAU.COM,** § | | |
| **and EDWARD MAGEDSON,** § | | |
| § | | |
| **DEFENDANTS.** § | | |

**GW EQUITY'S REPLY IN SUPPORT OF MOTION FOR LEAVE TO SUPPLEMENT APPLICATION FOR EMERGENCY INJUNCTIVE RELIEF AND REPLY IN SUPPORT OF EMERGENCY APPLICATION FOR INJUNCTIVE RELIEF WITH ADDITIONAL EVIDENCE**

This Court should grant GW Equity's motion to supplement the evidence. This evidence establishes that the Communications Decency Act ("CDA") gives no protection to Defendants.

First, this Court should admit GW Equity's new evidence because any factual disputes arising from it should go to weight and not admissibility. Under the Federal Rules of Evidence, relevant evidence is defined as "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more or less probable than it would be without the evidence." *See* FED. R. EVID. 401; *United States v. Madera*, 574 F.2d 1320, 1322 (5th Cir. 1978). Indeed, "[t]he fact to which the evidence is directed need not be in dispute." FED. R. EVID. 401 advisory committee's note. Here, the offered evidence has the tendency to make *every* consequential fact regarding the application of the CDA in this case more probable

than it would be without the evidence. Thus, this evidence is highly probative of the actions Defendants take on the Websites and critical to this Court's analysis under the CDA.

Second, Defendants' latest brief is nothing more than an attempt to paint the inaccurate and incomplete picture that began with the Declaration of Edward Magedson ("Magedson Declaration"). Defendants argue that Exhibit A—an email chain between Defendant Magedson and an employee of a company named Hy Cite—is consistent with the Magedson Declaration submitted in this case because the additional evidence does not indicate that Defendants actually edit or alter content on the Websites. Defendants' are incorrect. Defendants work hard to create the illusion that Defendants play a passive role in publishing and updating content on the Websites, highlighting some facts and omitting others. For example, Defendants highlight certain favorable language from Exhibit A but wholly fail to mention language from that *same* page, where Magedson informs Hy Cite that if a consumer fails to update a report, "*we* [Defendants] will then UPDATE the Report as to *our* [Defendants] investigation, and the title and the Report will reflect Hy Cites [sic] willingness to satisfy this customer." Exhibit A at 4 (emphasis added). In short, the evidence destroys the illusion and proves that Defendants actually publish statements on the Websites.

Moreover, Magedson's statements go to the heart of the issue before this Court. Exhibit A demonstrates the active role that Defendants play in soliciting, editing, and updating the information that appears on the Websites. Exhibit A illustrates Magedson's awareness that individuals (*e.g.*, "disgruntled employees") sometimes post inaccurate and defamatory information about a company on Defendants' Websites, and Defendants hold that company hostage unless and until the company pays Defendants a ransom of $30,000. This new evidence clearly illustrates that Defendants' Websites are not simply a forum for customers to air

consumer complaints; they are instead vehicles by which Defendants solicit negative, false, and misleading information about companies in the hopes of extorting money from those companies in exchange for the removal and updating of the negative information.

Third, Defendants' reliance on *Carafano v. Metrosplash.com, Inc.*, 339 F.3d 1119 (9th Cir. 2003) is misplaced. Indeed, the facts of *Carafano* are far different than those at issue here. In *Carafano*, the court concluded that the service could not "be considered an 'information content provider' under the [CDA] because no profile ha[d] any content until a user actively created[d] it." *Id*. at 1124. Even if the dating service could be considered a content provider for publishing its customers' profiles, the court noted that it was exempt from liability because it did not "create[] or develop[] the particular information at issue." *Id*. at 1125. The service was not a content provider of the offending information because it "did not play a significant role in creating, developing or transforming" it. *Id*. The instant case differs from *Carafano* because there the provided information was not solicited by the operator of the website. In *Carafano*, the website sought information about the individual posting the information, not about unsuspecting third-parties.

Additionally, Defendants fail to point out that *Carafano* has been limited by a recent decision by the Ninth Circuit. *See Fair Housing Council of San Fernando Valley v. Roommates.com, LLC*, ___ F.3d___, Nos. 04-56916, 04-57173, 2007 WL 1412650, at *4 (9th Cir. May 15, 2007) (finding that *Carafano* "must be read in light of its facts").[1] Moreover,

---

[1] In *Fair Housing*, the Ninth Circuit noted that it was "not convinced that *Carafano* would control in a situation where defamatory, private or otherwise tortious or unlawful information was provided by users in direct response to questions and prompts from the operator of the websites." 2007 WL 1412650, at *4. Interestingly, the court gave the following example, which is strikingly similar to the facts of the instant case:

> Imagine, for example, www.harrassthem.com with the slogan "Don't Get Mad, Get Even." A visitor to this website would be encouraged to provide private, sensitive and/or defamatory information about others--all to be posted online for a fee. To post the information, the individual would be invited to answer questions about the target's name, addresses, phone numbers, social

---

**PLAINTIFF'S REPLY IN SUPPORT SECOND MOTION FOR LEAVE TO
SUPPLEMENT APPLICATION FOR EMERGENCY INJUNCTIVE RELIEF**     **PAGE 3**

Defendants continue to ignore and discount a well-settled opinion from the Chief Judge of this District.  *See MCW, Inc. v. Badbusinessbureau.com, LLC*, No. Civ. A. 3:02-CV-2727-G, 2004 WL 833595 (N.D. Tex. Apr. 19, 2004).  Here, the evidence GW Equity seeks to introduce clearly demonstrates that Defendants are taking an active role in the creation and development of the defamatory information on the Websites.  Indeed, the courts in *MCW* and *Fair Housing* both reached their conclusions that the defendants lacked immunity under the CDA due to the fact that those websites actively encouraged, solicited and profited from the tortious communications.  *See MCW*, 2004 WL 833595, at *10 (noting that "actively encouraging and instructing a consumer to gather specific detailed information is an activity that goes substantially beyond the traditional publisher's editorial role"); *Fair Housing*, 2007 WL 1412650, at *4.  Exhibit A is thus plainly relevant to the facts of this case and this Court should admit it as evidence.

## CONCLUSION

For the reasons stated above, GW Equity respectfully requests this Court to grant leave for Plaintiff to supplement the record with the newly discovered evidence.

---

security number, credit cards, bank accounts, mother's maiden name, sexual orientation, drinking habits and the like. In addition, the website would encourage the poster to provide dirt on the victim, with instructions that the information need not be confirmed, but could be based on rumor, conjecture or fabrication.

*Id*.  The court determined that the operator of this hypothetical website would not be protected by the logic of *Carafano*.  *Id*.  "By providing a forum designed to publish sensitive and defamatory information, and suggesting the type of information that might be disclosed to best harass and endanger the targets, this website operator might well be held responsible for creating and developing the tortious information."  *Id*. at *5.  The court found that *Carafano* did not consider whether the CDA protected such websites.  *Id*.

Dated: June 22, 2007                                   Respectfully submitted,


                                                                   _____/s/ John T. Cox III_____
                                                                    John T. Cox III
                                                                    Texas Bar No. 24003722
                                                                    **LYNN TILLOTSON & PINKER, L.L.P.**
                                                                    750 N. St. Paul Street, Suite 1400
                                                                    Dallas, Texas  75201
                                                                    (214) 981-3800 Telephone
                                                                    (214) 981-3839 Facsimile

                                                                    **ATTORNEY FOR PLAINTIFF**
                                                                    **GW EQUITY, LLC**


## CERTIFICATE OF SERVICE

       The undersigned does hereby certify that a true and correct copy of the foregoing was served upon the following counsel *via ECF* on this 22nd day of June, 2007.


| | |
|---|---|
| Maria Crimi Speth, Esq. | Jeffrey S. Seeburger |
| Jaburg & Wilk, PC | Kane Russell Coleman & Logan, P.C. |
| 3200 North Central Avenue, Suite 2000 | 3700 Thanksgiving Tower |
| Phoenix, Arizona 85012 | 1601 Elm Street |
| mcs@jaburgwilk.com | Dallas, TX 75201 |
| Tel: (602) 248-1000 | Tel: (214) 777-4200 |
| Direct:  (602) 248-1089 | Direct: (214) 777-4275 |
| Fax:  (602) 248-0522 | Fax: (214) 777-4299 |
| | jseeburger@krcl.com |


                                                                    ___/s/ John T. Cox III_____
                                                                    John T. Cox III