**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | | |
|---|---|---|
| **GW EQUITY, LLC,** | § | |
| | § | |
| **PLAINTIFF,** | § | |
| | § | **CIVIL ACTION** |
| **v.** | § | |
| | § | **No. 3-07-CV-0976-K** |
| **XCENTRIC VENTURES, LLC,** | § | |
| **WWW.RIPOFFREPORT.COM,** | § | |
| **WWW.BADBUSINESSBUREAU.COM,** | § | |
| **and EDWARD MAGEDSON,** | § | |
| | § | |
| **DEFENDANTS.** | § | |

---

**GW EQUITY'S OPPOSITION BRIEF TO DEFENDANTS'**
**MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION**

---

John T. Cox III
Texas Bar No. 24003722
**LYNN TILLOTSON & PINKER, LLP**
750 North Saint Paul Street, Suite 1400
Dallas, Texas 75201
(214) 981-3800 Telephone
(214) 981-3839 Facsimile

**ATTORNEY FOR PLAINTIFF**

## <u>TABLE OF CONTENTS</u>

I.    INTRODUCTION ..................................................................................................... 1

II.   ARGUMENT & AUTHORITIES ............................................................................ 2

      A.    This Court Has Personal Jurisdiction Over Defendants. ....................................... 2

            1.    Defendants Have Sufficient Contacts To Establish Jurisdiction
                  Under The *Zippo* "Sliding Scale" Analysis. ................................................. 4

            2.    Defendants Have Sufficient Minimum Contacts With Texas To
                  Establish Specific Jurisdiction Under The *Calder* Effects Test. ............... 9

                  a.    The Defendants' Defamatory Statements Were Directed at
                        Texas. ........................................................................................ 10

                  b.    Defendants Knew and Intended Its Defamatory Statements
                        Would Cause GW Equity Harm in Texas. ..................................... 12

            3.    Defendants Have Sufficient Contacts To Establish General
                  Jurisdiction. ................................................................................................. 13

            4.    Asserting Personal Jurisdiction Over Defendants Would Not
                  Offend Traditional Notions Of Fair Play And Substantial Justice. ........... 14

      B.    The "Forum Selection Clause" Does Not Require GW Equity To Bring
            Suit In Arizona. ................................................................................................. 16

III.  CONCLUSION & PRAYER ................................................................................. 16

## **TABLE OF AUTHORITIES**

### **Cases**

*Access Telecom, Inc. v. MCI Telecomm.*
    197 F.3d 694 (5th Cir. 1999) ................................................................. 13

*Alpine View Co. Ltd. v. Atlas Copco AB*
    205 F.3d 208 (5th Cir. 2000) .................................................................. 3

*Alyon Technologies v. Badbusinessbureau.com, LLC*
    Civ. A. No. 03:1992 (JCL), slip op. at 15-25 (D.N.J. Jan. 23, 2004) ................ 1, 14

*American Eyewear, Inc. v. Peeper's Sunglasses and Accessories, Inc.*
    106 F. Supp. 2d 895 (N.D. Tex. 2000) ..................................................... 4

*Asahi Metals Indus. Co. v. Superior Court*
    480 U.S. 102 (1987) .......................................................................... 15

*Bullion v. Gillespie*
    895 F.2d 213 (5th Cir. 1990) .................................................................. 3

*Burger King Corp. v. Rudzewicz*
    471 U.S. 462 (1985) .......................................................................... 15

*Calder v. Jones*
    465 U.S. 783 (1984) .............................................................. 9, 10, 11, 12

*Carrot Bunch Co., Inc. v. Computer Friends, Inc.*
    218 F. Supp. 2d 820 (N.D. Tex. 2002) ..................................................... 4

*Central Freight Lines, Inc. v. APA Transp. Corp.*
    322 F.3d 376 (5th Cir. 2003) .................................................................. 3

*Double G Energy, Inc. v. AT Gas Gathering, Inc.*
    No. 3:05-CV-0749-P, 2005 WL 1837953 (N.D. Tex. July 28, 2005) .................. 10

*Energy Automation Sys., Inc. v. Xcentric Ventures, LLC*
    No. 3:06-1079, 2007 WL 1557202 (M.D. Tenn. May 25, 2007) ..................... 1, 14

*George S. May Int'l Co. v. Xcentric Ventures, LLC*
    409 F. Supp. 2d 1052 (N.D. Ill. 2006) ................................................... 1, 14

*Gundle Lining Construction Corp. v. Adams County Asphalt, Inc.*
    85 F.3d 201 (5th Cir. 1996) .................................................................. 15

*Helicopteros Nacionales de Colombia, S.A. v. Hall*
    466 U.S. 408 (1984) .......................................................................... 13

*Hy Cite Corporation v. Badbusinessbureau.com, LLC*
    297 F. Supp. 2d 1154 (W.D. Wisc. 2004) .................................................. 1

*International Shoe, Co. v. Washington*
    326 U.S. 310 (1945) ........................................................................... 14

*J.R. Stripling v. Jordan Production Company, LLC*
    234 F.3d 863 (5th Cir. 2000) ............................................................... 4

*Latshaw v. Johnston*
    167 F.3d 208 (5th Cir. 1999) ............................................................... 3

*MADD v. DAMMADD, Inc.*
    No. Civ. A. 3:02-CV-1712-G, 2003 WL 292162 (N.D. Tex. Feb. 7, 2003) ........ 8, 9

*McGee v. International Life Ins. Co.*
    355 U.S. 220 (1957) ........................................................................... 4

*Mink v. AAAA Dev. LLC*
    190 F.3d 333 (5th Cir. 1999) .................................................... 2, 3, 4, 8

*People Solutions, Inc. v. People Solutions, Inc.*
    No. Civ. A. 399-CV-2339-L, 2000 WL 1030619 (N.D. Tex. July 25, 2000) .......... 4

*Revell v. Lidov*
    317 F.3d 467 (5th Cir. 2002) ........................................................ passim

*Stuart v. Spademan*
    772 F.2d 1185 (5th Cir. 1985) ............................................................. 3

*Whitney Info. Network, Inc. v. Xcentric Ventures, LLC*
    199 Fed. App'x 738 (11th Cir. 2006) ..................................................... 1

*Zippo Mfg. v. Zippo Dot Com, Inc.*
    952 F.Supp. 1119 (W.D. Pa. 1997) .................................................. passim

TO THE HONORABLE COURT:

COME NOW Plaintiff GW Equity, LLC ("GW Equity") and files this brief in response to Defendants Xcentric Ventures, LLC, www.ripoffreport.com, www.badbusinessbureau.com, and Edward Magedson (collectively, "Defendants") motion to dismiss for lack of personal jurisdiction. In support of its response, GW Equity states the following:

## I.    <u>INTRODUCTION</u>

Defendants' actions have subjected them to personal jurisdiction in Texas. Numerous courts across the country have haled these *same* defendants into courts in Illinois, Florida, New Jersey, and Tennessee because they run interactive websites that affirmatively reach out to consumers. *See, e.g., Energy Automation Sys., Inc. v. Xcentric Ventures, LLC*, No. 3:06-1079, 2007 WL 1557202, at *8-10 (M.D. Tenn. May 25, 2007) (concluding that the website constituted purposeful availment of the privilege of acting in Tennessee because of the level of interactivity on the websites); *George S. May Int'l Co. v. Xcentric Ventures, LLC*, 409 F. Supp. 2d 1052, 1059 (N.D. Ill. 2006) (holding that the connections with Illinois through the website were sufficient to support jurisdiction because these websites were "a far cry from passive"); *Whitney Info. Network, Inc. v. Xcentric Ventures, LLC*, 199 Fed. App'x 738, 743-44 (11th Cir. 2006) (holding that the defendants failed to establish they were entitled to immunity under the Communications Decency Act, so as to fall outside the parameters of Florida's long-arm statute); *Alyon Technologies v. Badbusinessbureau.com, LLC*, Civ. A. No. 03:1992 (JCL), slip op. at 15-25 (D.N.J. Jan. 23, 2004) (finding that an assertion of specific jurisdiction over the defendants was appropriate) (Appx. at 3-37).[1] Not surprisingly, Defendants have failed to address this

---

[1] Defendants will likely point this Court to *Hy Cite Corporation v. Badbusinessbureau.com, LLC*, 297 F. Supp. 2d 1154 (W.D. Wisc. 2004), as persuasive precedent it should rely on in deciding the issue of personal jurisdiction here. Nevertheless, Defendants are incorrect. While the court in *Hy Cite* found that there was no personal jurisdiction, the

substantial body of case law in their opening brief.  Just as these courts have haled Defendants into courts in various states due to their actions through the Websites, this Court should do the same.

Defendants' superficial discussion of the facts of this case does not reveal the whole story.  In fact, Defendants' statements that neither Mr. Magedson nor Xcentric Ventures "conduct business in Texas" are completely contrary to the real facts here.  Even though Defendants are based in Arizona, Defendants operate interactive and commercial websites that solicit and receive payments from consumers in Texas for goods that they sell on the Websites. Defendants *directly* profit from this Internet activity in Texas.  Further, Defendants actively encourage the posting of content from individuals in Texas, and engage in email communications with Texas residents.  For these reasons, this Court has personal jurisdiction over Defendants based on the numerous contacts it has with the State of Texas.  It is likewise fair and reasonable to require Defendants to defend this action in Texas.  Accordingly, GW Equity respectfully requests this Court to deny Defendants' motion to dismiss.

## II.      ARGUMENT & AUTHORITIES

### A.    This Court Has Personal Jurisdiction Over Defendants.

Federal district courts may exercise personal jurisdiction over a nonresident defendant if: (1) the long-arm statute of the forum state permits the exercise of personal jurisdiction over the defendant; and (2) the exercise of such jurisdiction by the forum state is consistent with due process. *Revell v. Lidov*, 317 F.3d 467, 469 (5th Cir. 2002); *Mink v. AAAA Dev. LLC*, 190 F.3d 333, 335 (5th Cir. 1999).  "Because Texas' long arm statute has been interpreted to extend to the

---

court explicitly declined to apply the *Zippo* analysis that numerous circuits—including the Fifth Circuit—have adopted.  *See Zippo Mfg. v. Zippo Dot Com, Inc.*, 952 F.Supp. 1119, 1160 (W.D. Pa. 1997).  As a result, the holding in *Hy Cite* is limited, and this Court should not apply it in the instant case.

limits of due process," courts need only "determine whether subjecting [the Defendants] to suit in Texas would be consistent with the Due Process Clause of the Fourteenth Amendment." *Mink*, 190 F.3d at 335; *Latshaw v. Johnston*, 167 F.3d 208, 211 (5th Cir. 1999).

Exercising personal jurisdiction over a nonresident defendant is consistent with constitutional due process when: (1) the defendant has purposefully availed himself of the benefits and protections of the forum state by establishing "minimum contacts" with the forum state; and (2) the exercise of jurisdiction over that defendant does not offend traditional notions of fair play and substantial justice. *Central Freight Lines, Inc. v. APA Transp. Corp.*, 322 F.3d 376, 380 (5th Cir. 2003). Minimum contacts with a forum state may provide a basis for either specific or general jurisdiction. *Bullion*, 895 F.2d at 215.

A plaintiff bears the burden of demonstrating facts sufficient to support personal jurisdiction over a nonresident defendant. That burden is met by a *prima facie* showing; proof by a preponderance of the evidence is not necessary. *Revell*, 317 F.3d at 469; *Alpine View Co. Ltd. v. Atlas Copco AB*, 205 F.3d 208, 215 (5th Cir. 2000). The court may determine the jurisdictional issue by receiving affidavits, interrogatories, depositions, oral testimony, or any combination of the recognized methods of discovery. *Stuart v. Spademan*, 772 F.2d 1185, 1192 (5th Cir. 1985). Uncontroverted allegations in a plaintiff's complaint must be taken as true, and conflicts between the facts contained in the parties' affidavits must be resolved in favor of the plaintiff. *Bullion v. Gillespie*, 895 F.2d 213, 217 (5th Cir. 1990).[2]

---

[2] GW Equity believes that it would be unfair for this Court to hold it to any higher evidentiary standard than that described above. Indeed, a higher standard of proof would only apply in cases where discovery has taken place. If the Court is unable to decide this motion to dismiss in GW Equity's favor at this stage of the litigation, GW Equity respectfully requests that this Court stay its ruling on the motion to dismiss, and allow GW Equity to conduct discovery on this issue.

In this case, GW Equity is asserting both specific jurisdiction and general jurisdiction. Defendants' activities demonstrate that they deliberately established minimum contacts with Texas and purposefully availed themselves of the privilege of conducting activities in this forum under both the "sliding scale" analysis developed for Internet activities and the traditional "effects" doctrine. Furthermore, Defendants' contacts with Texas are of such a continuous and systematic nature that this Court must exercise jurisdiction over Defendants.

1.      **Defendants Have Sufficient Contacts To Establish Jurisdiction Under The *Zippo* "Sliding Scale" Analysis.**

Specific jurisdiction exists if the cause of action is related to, or arises out of the defendants' contacts with the forum state and those contacts meet the due process standard. *J.R. Stripling v. Jordan Prod. Co., LLC*, 234 F.3d 863, 871 (5th Cir. 2000).[3] The Fifth Circuit has adopted the *Zippo* sliding scale analysis for determining whether jurisdiction is proper based on the amount of internet activity involved. *See Mink*, 190 F.3d at 336.[4] The *Zippo* decision categorized Internet use into three distinct areas. On one end of the spectrum are websites where a defendant clearly does business over the Internet, *i.e.*, enters into contracts, takes orders, and processes payments. *Id*. In these situations, personal jurisdiction is proper. *Id*. On the other end of the spectrum are passive websites that merely post information that is accessible to users in the forum state. *Id*. Personal jurisdiction is not proper in these situations. *Id*. In the middle are interactive websites that allow a user to exchange information with a host computer. *Id*. In these

---

[3] When considering whether a defendant has purposefully directed its activities to the forum state, even a single act may permit the exercise of jurisdiction. *See McGee v. International Life Ins. Co.*, 355 U.S. 220, 223 (1957).

[4] District Courts in Texas have employed the *Zippo* analysis in specific jurisdiction cases. *See, e.g., Carrot Bunch Co., Inc. v. Computer Friends, Inc.*, 218 F. Supp. 2d 820, 824-26 (N.D. Tex. 2002); *American Eyewear, Inc. v. Peeper's Sunglasses and Accessories, Inc.*, 106 F. Supp. 2d 895, 900 n.10 (N.D. Tex. 2000); *People Solutions, Inc. v. People Solutions, Inc.*, No. Civ. A. 399-CV-2339-L, 2000 WL 1030619, at *3 (N.D. Tex. July 25, 2000).

situations, a court should determine jurisdiction based on the level of interactivity and nature of the commercial exchange. *Id*.

Here, Defendants' Websites are interactive, not passive. Because individuals can post and receive information, Defendants' Websites are interactive and fall into the upper and middle spectrum of the *Zippo* sliding scale. As a result, this Court must evaluate the level of interactivity and commercial nature to determine whether Defendants have purposefully availed themselves of the privilege of engaging in activity in Texas. *See id*.

The Websites have obvious commercial aspects to them. *First*, Defendants advertise and sell the "Do-It-Yourself Guide: How to Get Rip-off Revenge" package that persuades consumers to get revenge on companies through Defendants' techniques. Declaration of John T. Cox III ("Cox Declaration") ¶¶ 3-4, Appx. at 000038-39, 000042-47. Defendants claim that they are not affiliated with the marketing of this book. Nevertheless, these statements are blatantly untrue. Defendants' Websites openly offer this product for sale through a link on the Websites and state that this Guide is from the "founder of Rip-off Report.com." *Id*. ¶¶ 3-4, Appx. at 000038-39, 000046-47. When a customer purchases a book from the "affiliated" company, the customer is required to send a check or money order to the *same* address Defendants Xcentric Ventures and Magedson list as their place of business. *Id*. ¶¶ 3-4, Appx. at 000038-39, 000044. In addition, the customer receives a confirmation receipt showing it was sent from the seller at "editor@ripoffreport.com." Declaration of Michael Grishman ("Grishman Declaration") ¶ 3, Appx. at 000104, 000106. Thus, Defendants' attempts to distance themselves from this product must be rejected.

*Second*, Defendants market and sell the "Rip-off Report Corporate Advocacy Business Remediation & Customer Satisfaction Program" on the Websites to consumers in Texas. Cox

Declaration ¶ 5, Appx. at 000039, 000048-57; Complaint ¶ 26, Appx. at 000119-120; Affidavit of Ryan Binkley ("Binkley Affidavit") ¶ 14, Appx. at 000136.  *Third*, Defendants actively solicit donations from consumers for the "high cost" of pursuing the "bad guys."  Cox Declaration ¶ 6, Appx. at 000039, 000058-60 ("In order to do this job well—offering consumers the best help and the most comprehensive information available—we need YOUR help.  We need assistance from the general public to generate the funds needed to continue to offer this service nationwide and beyond."); Grishman Declaration ¶ 5, Appx. at 000104, 000108-09.

　　　　*Fourth*, Defendants sell advertising space on the Websites and have purposefully directed these activities at Texas.  Cox Declaration ¶ 7, Appx. at 000039, 000061-62.  *Fifth*, Defendants actively assist in the formation of class action lawsuits and inform consumers that they could be entitled to compensation if they participate.  *Id*. ¶ 8, Appx. at 000039, 000065 ("By filing a Ripoff Report, you might be contacted by one of us to notify you to make contact with a law firm that has shown interest in your case.  We get requests every week for class action lawsuits, bringing victims together with lawyers willing to sue the company after reading your Ripoff Report.").  *Sixth*, Defendants offer to assist complainants obtain media attention for the reports that they post.  *Id*.  *Seventh*, Defendants' Websites invite users to engage in communications with them via email.  *Id*. ¶ 8, Appx. at 000039, 000064-65.  *Finally*, Defendants offer consumers and complainants the possibility of future compensation for submitting reports on certain companies and recommends tactics for digging up information on companies.  *Id*. ¶ 8, Appx. at 000039, 000064 ("The more Reports filed on a Company or individual, the more likely it is that the authorities, media and attorneys will want to take action.").

　　　　Additionally, the Websites are extremely interactive.  If consumers want to post a report, they select the "file a report" icon on the home page, fill out personal identification information

and obtain a password.  *Id.* ¶ 9, Appx. at 000039, 000067-74.  Texas residents have made numerous postings on the Websites.  As a result, Defendants have obtained personal identification information from and provided passwords to residents of Texas.  As part of the registration process, users are given options to receive notifications from Defendants if a rebuttal is posted and to receive phone calls from lawyers or media outlets that may be interested in the reports posted by the user.  *Id.* ¶ 9, Appx. at 000039, 000067.  Previous reports can be searched by the state in which the company is located and other relevant categories.  Defendants also review and respond to user comments, often inviting consumers to post a report about their experience with the company and criticizing the content of the postings.  *Id.* ¶ 11, Appx. at 000039, 000076-95.  As of the date of filing this motion, Defendants have posted 175 responses to individuals who reside in Texas or whose postings relate to Texas companies.  *Id.* ¶ 10, Appx. at 000039, 000075.

Every time a user travels to the Websites using an internet search engine, the Websites automatically deposit several files onto the user's computer.  Declaration of Greg Jackson ¶ 3, Appx. at 000100, 000102.  These files include a "cookie" file that uniquely identifies the user and the website.  *Id.* ¶ 4, Appx. at 000100, 000103.  Every time the user clicks on a page of the Websites, the user's web browser transmits the unique user identification number to the Websites.  Defendants can thus maintain records of who visits the Websites, which specific pages they navigate to within the Websites, when they travel to the Websites, how long they spend on the Websites, and whether or not they are a first time visitor to the Websites.  In this way, Defendants interact with the user's computer.

These facts demonstrate that Defendants have gone beyond simply making information available to Internet users.  Defendants' Websites clearly fall into the interactive realm of the

*Zippo* sliding scale. *See Revell*, 317 F.3d at 472 (finding that because individuals *sent* information to be posted, and *received* information that others had posted, the defendant's bulletin board on its websites was interactive); *cf., Mink*, 190 F.3d at 337 (finding no personal jurisdiction because the defendant's "website does not allow consumer to order or purchase products and services online"). Given the high level of interactivity of Defendants' Websites and the nature and quality of Defendants' Internet contacts, the assertion of specific jurisdiction is consistent with principles of due process.

Although Defendants urge this Court to rely on *MADD v. DAMMADD, Inc.*, No. Civ. A. 3:02-CV-1712-G, 2003 WL 292162 (N.D. Tex. Feb. 7, 2003), a closer reading of this case reveals that the facts of the instant proceeding are entirely distinguishable from those at issue there. In *MADD*, the court found that the website at issue fell into the middle spectrum of *Zippo* because it allowed visitors to interact with a host computer, make donations, and purchase products. *Id*. at *5. The critical issue for the court was whether the level of interactivity and the commercial nature of the defendant's website were sufficient to warrant an exercise of jurisdiction over the defendant. *Id*. at *6. The court reasoned that the three contacts alleged between DAMMADD and Texas through the websites were nothing more than "attenuated contacts" with Texas due to the fact that: (1) the postings on the website that originated from Texas totaled only 20 out of 786 tips received by DAMMADD; (2) there was no evidence that DAMMADD had ever paid a reward to a Texas tip provider; (3) five donations received from Texas donors reflected a lack of "regular commercial activity;" and (4) the website was not a "virtual store" as it only dedicated a relatively minute portion of its website to the sale of certain goods. *Id*. Based on the totality of the contacts, the court found that the defendant had not

purposefully directed its activities toward Texas and had not availed itself of the benefits and protections of Texas law, and could not reasonably foresee being haled into court in Texas.  *Id.*

Unlike the contacts in *MADD*, the facts here show that Defendants' contacts with Texas result not from merely random or attenuated events, but from deliberately directed activities. Indeed, the interactivity between Texas residents and Defendants' Websites are substantial, continuous, and systematic.  Since 1999 Defendants' Websites have published reports regarding companies in Texas, and as of 2007, Defendants' Texas postings have grown to a total of 14,200 reports.  Further, the Websites are much more of a "virtual store" than in *MADD* because a considerable portion of the Websites is dedicated to the sale of goods and services.  As outlined above, Defendants' contacts are intended to create a commercial website through advertising and selling "rip-off revenge" packets, advertising and selling the mortgage guide, creating new "rip-off reporters," soliciting donations, assisting in the formation of class action law suits with the enticement of compensation, and selling advertising space.  *See generally* Cox Declaration ¶¶ 3-8, 13, Appx. at 000038-40, 000042-66, 000097.  Consequently, Defendants should not be upset that they are now being haled into Court here in Texas as they have been interacting with Texas residents in a continuous and systematic manner over the course of several years.[5]

### 2.   Defendants Have Sufficient Minimum Contacts With Texas To Establish Specific Jurisdiction Under The *Calder* Effects Test.

Jurisdiction may also properly be asserted over a defendant who directs his tortious conduct toward the forum state, knowing that his actions will cause harm to a resident of the forum.  *Calder v. Jones*, 465 U.S. 783, 789-90 (1984).  "It is well-established that the commission of an intentional tort aimed at the forum state will satisfy the minimum contacts

---

[5] The second part of the *Zippo* analysis is also met because the claims asserted against Defendants arise out of those contacts.  *See* Complaint ¶ 9, Appx. at 000114.

requirements." *Double G Energy, Inc. v. AT Gas Gathering, Inc.*, No. 3:05-CV-0749-P, 2005 WL 1837953, at *3 (N.D. Tex. July 28, 2005) (citing *Wien Air Alaska, Inc. v. Brandt*, 195 F.3d 208, 215 (5th Cir. 1999)).

The Supreme Court established an "effects" test for exercising specific personal jurisdiction based on tortious acts occurring outside the forum state in *Calder*. The Court ruled that a forum state may exercise its jurisdiction when a defendant "expressly aim[s]" allegedly tortious acts at the forum state such that the forum state serves as the "focal point" for the "effects" of the conduct. *Calder*, 465 U.S. at 789. In that case, a nationally circulated magazine published a libelous article about a California citizen. *Id*. at 788. The article was published in the National Enquirer and distributed nationwide. *Id*. at 785. Although the article's writers and publishers worked from Florida, the Court upheld personal jurisdiction in California. Because the article concerned California activities, the plaintiff's career was centered in California, the article was drawn from California sources, and the brunt of the harm was felt in California, the Court determined that the defendants' tortious activity was directed at California. *Id*. at 788-79. As a result, jurisdiction was proper based on the "effects" in California of the defendants' conduct in Florida and the defendants should have "'reasonably anticipate[d] being haled into court there' to answer for the truth of the statements made in their article." *Id*. at 789-90.

Under the effects test, a court may exercise personal jurisdiction over a nonresident defendants who (1) engaged in tortious action aimed at the forum state, if (2) the defendant knew its actions would harm the plaintiff in the forum state. *Id*. at 789.

###### a.      The Defendants' Defamatory Statements Were Directed at Texas.

Under the first element of the effect test, it is clear that Defendants expressly aimed their tortious activity purposefully at Texas. Defendants undoubtedly knew that GW Equity was

GW Equity's Opposition Brief to Defendants'                                                    Page 10
Motion to Dismiss for Lack of Personal Jurisdiction
02033-701/163524

located in Texas and that by causing harm to GW Equity's reputation, the force of the injury would be felt within Texas.  The evidence here shows that Defendants targeted their tortious activity at GW Equity in Texas.  Internet users can only access the "Rip-off Reports" through Defendants' Websites.  The defamatory and disparaging statements contained on the Websites directly target GW Equity's business operations in Texas and claim that GW Equity "scams" and "rips-off" consumers.  *See* Complaint ¶¶ 16, 20-24, Appx. at 000116-119; Binkley Affidavit ¶¶ 7-13, Appx. at 000134-136.  Defendants specifically reference the State of Texas on the Websites as GW Equity's business location.  *See* Complaint ¶¶ 20-24, Appx. at 000117-119; Binkley Affidavit ¶¶ 7-13, Appx. at 000134-136.  Further, Defendants organize these same postings under a geographical search engine that allows readers to search reports of Texas companies.  Cox Declaration ¶ 14, Appx. at 000040.  Defendants then categorize these defamatory and disparaging statements regarding GW Equity under a heading entitled "Corrupt Companies."  In addition, Defendants targeted GW Equity through the use of metatags on the Websites.[6]  *See* Complaint ¶ 15, Appx. at 000115.  By adding properties to the key words on the reports, Defendants ensure that the reports receive high placement on Internet search engines and increases the likelihood that these reports will be found by people searching the Internet.  *Id*.  Accordingly, Defendants' actions were intended to damage GW Equity in Texas, and the first prong of the effects test has thus been satisfied.[7]

---

[6] Specifically, Defendants incorporate the location of the companies that are the subject of the Websites by including their city and state as separate metatags for the reports.  Without the knowledge or consent of the person submitting the specific report, Defendants create separate metatags that identify the city and state of the reported company.  These metatags are not viewable on the actual report postings, but are used only by Internet search engines to identify webpages that concern, in this case, Dallas Texas.

[7] The facts of this case are distinguishable from those in *Revell*.  In *Revell*, a Texas plaintiff brought suit against a Massachusetts defendant who wrote a disparaging article that was posted on the website of a New York university.  The Court found that the facts in *Revell* were far different from those at issue in *Calder* because the article in question contained no reference to Texas, did not refer to plaintiff's Texas activities, and was not directed at Texas

**b.    Defendants Knew and Intended Its Defamatory Statements Would Cause GW Equity Harm in Texas.**

The second prong of the effects test is satisfied in this case as well.  *See Calder*, 465 U.S. at 789-90.  Here, GW Equity has suffered harm to its business in this state from the intentional defamatory and disparaging statements made about it by Defendants.  Defendants have caused damage to the reputation and goodwill of GW Equity in Texas.  As a direct result of Defendants' conduct, GW Equity has lost sales from potential clients in Texas.  Binkley Affidavit ¶¶ 16-24, Appx. at 000137-141 (describing the harm GW Equity has felt due to existing and potential clients terminating their business relationships with GW Equity); Supplemental Affidavit of Ryan Binkley ("Supplemental Binkley Affidavit") ¶¶ 4-9, Appx. at 000143-145 (same). Defendants' postings demonstrate that customers who reside in Texas have decided not to enter into a business relationship with GW Equity.  Based on this evidence, it is without question that Defendants knew such damage would be suffered by GW Equity.  Indeed, Defendants are completely aware of the wide dissemination their Websites have.  Defendants' own attorney stated at the hearing that the Websites receive "a million hits a day" and Defendants state on the Website that once a report is filed, it "will be discovered by millions of consumers."  Cox Declaration ¶ 8, Appx. at 000039, 000063.  Defendants are thus aware of the far-reaching effects that result from the defamatory and disparaging content on the Websites. Consequently, the second prong of the effects test is met and Defendants are subject to specific jurisdiction in this Court.

---

readers "as distinguished from readers in other states."  317 F.3d at 473.  The facts here are more akin to *Calder* than *Revell*.  Defendants statements specifically mention Texas, refer to GW Equity's in Texas, and are organized in such a manner that readers can easily search and read Texas specific statements, and are read by Texas residents.

### 3.     Defendants Have Sufficient Contacts To Establish General Jurisdiction.

General jurisdiction may be found when the nonresident's contacts with the forum are "continuous and systematic," even though the claim is unrelated to those contacts.  *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 415-16 (1984).  "General jurisdiction can be assessed by evaluating contacts of the defendant with the forum over a reasonable number of years up to the date the suit was filed."  *Access Telecom, Inc. v. MCI Telecomm.*, 197 F.3d 694, 717 (5th Cir. 1999).

Here, Defendants' contacts with Texas are continuous and systematic.  Specifically, Defendants have engaged in the following acts in Texas:

- Defendants edited and published over 14,200 "Rip-off Reports" directed at Texas companies and individuals.
- Defendants actively solicited and encouraged reports from Texas residents, and even wrote some reports regarding Texas companies.
- Defendants advertised, promoted, offered to sell, and sold a book entitled "Rip-off Revenge Guide" to Texas residents.
- Defendants marketed and sold the "Rip-off Report Corporate Advocacy Business Remediation & Customer Satisfaction Program" to Texas residents.
- Defendants communicated with numerous Texas residents and Texas companies.
- Defendants solicited and received donations from Texas residents.
- Defendants recommended certain strategies for complainants to follow when creating reports on the Websites.
- Defendants offered individuals the possibility of receiving compensation for submitting the "Rip-off Reports."
- Defendants offered to assist complainants organize class action litigation and other legal proceedings.
- Defendants offered users of the Websites the ability to search the "Rip-off Reports" by the state of Texas.
- Defendants offered to assist complainants obtain media attention for the reports that they filed.
- Defendants sold advertising space on the Websites.
- Defendants created and developed original content on the Websites regarding Texas companies on the "Rip-off Reports" and through the use of metatags.[8]

---

[8] *See* Cox Declaration ¶¶ 3-13, Appx. at 000038-40, 000042-99.

One court under similar facts has already determined that the contacts described above were sufficiently continuous and systematic to establish general jurisdiction with the same defendants. *See George S. May Int'l Co.*, 409 F. Supp. 2d at 1060 (finding that the assertion of general jurisdiction was proper because defendants sold books in Illinois and received donations from Illinois residents). Therefore, this Court should find that the exercise of general jurisdiction over Defendants is proper in this case.

In their brief, Defendants claim that because only 5.5% of the reports on the Websites come from Texas, this is not enough to establish jurisdiction. This argument, however, is wholly unsupportable. In other cases where courts have found jurisdiction over these same defendants, the number of reports posted on the Websites has been far less. *See, e.g., Energy Automation Sys., Inc.*, 2007 WL 1557202, at *8-10 (finding that personal jurisdiction was properly asserted even though there were just 2,340 reports filed regarding Tennessee companies); *George S. May Int'l Co.*, 409 F. Supp. 2d at 1059 (finding that personal jurisdiction was properly asserted even though there were just 7,920 reports filed regarding Illinois companies); *Alyon Techs.*, No. 03:1992 (JCL), slip op. at 15-25 (finding that personal jurisdiction was properly asserted even though there were just 5,560 reports filed regarding Illinois companies).

### 4. Asserting Personal Jurisdiction Over Defendants Would Not Offend Traditional Notions Of Fair Play And Substantial Justice.

The due process inquiry limits the Court's power to exercise personal jurisdiction over a nonresident if the exercise of jurisdiction under the circumstances would offend "traditional notions of fair play and substantial justice." *International Shoe, Co. v. Washington*, 326 U.S. 310, 316 (1945) (quoting *Milliken v. Meyer*, 311 U.S. 457, 463 (1940)). The fairness factors considered by the Court include: (1) the defendant's burden; (2) the forum state's interests; (3) the plaintiff's interest in convenient and effective relief; (4) the judicial system's interest in

efficient resolution of controversies; and (5) the state's shared interest in furthering social policies. *Asahi Metals Indus. Co. v. Superior Court*, 480 U.S. 102, 112 (1987). Once minimum contacts have been established, the defendant must present a compelling case that conducting the litigation in this court would be so gravely difficult and inconvenient that it would be at a severe disadvantage in comparison to the plaintiff. *See Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 477 (1985).

The exercise of jurisdiction in this case would not be unreasonable. Defendants have pointed to no burden on itself that outweighs the interests of Texas or GW Equity in litigating this matter in Texas. *See Gundle Lining Constr. Corp. v. Adams County Asphalt, Inc.*, 85 F.3d 201, 207 (5th Cir. 1996). Any burden Defendants would potentially face in this court is no more onerous than those every nonresident defendant faces when litigating outside its home state, and there is no indication that litigating this dispute in Texas would place Defendants at a disadvantage relative to GW Equity. In fact, the burden on Defendants to defend in Texas is not unreasonable given that they have already hired a local firm to represent them in this case. Texas also has a substantial interest in adjudicating disputes arising from defamatory and disparaging statements regarding resident companies. *See Burger King*, 471 U.S. at 473. Similarly, GW Equity has a real interest in obtaining convenient and effective relief so as to prevent other companies from suffering from Defendants' tortuous conduct. Accordingly, conducting the litigation in this Court does not offend traditional notions of fair play and substantial justice. This inquiry of the due process test is satisfied, and the exercise of personal jurisdiction over Defendants in Texas is proper.

**GW Equity's Opposition Brief to Defendants'**
**Motion to Dismiss for Lack of Personal Jurisdiction**
**02033-701/163524**                                                                 **Page 15**

**B.**     **The "Forum Selection Clause" Does Not Require GW Equity To Bring Suit In Arizona.**

GW Equity is not bound by a "forum selection clause" which limits jurisdiction to the "State of Arizona."  Defendants claim that a user of their Websites must enter into a contract with them and submit to Arizona's exclusive jurisdiction in order to post a "Rip-off Report" on the Websites.  Even if such an agreement did exist and was valid, the language of the agreement limits the application of the forum selection clause to disputes arising from the reports that the *user* posts on the Websites.  It does not bind a party—like GW Equity—from bringing suit against Defendants for false and misleading statements that were published on the Websites and posted by an unknown third-party about GW Equity.  Therefore, Defendants cannot claim that GW Equity has submitted to jurisdiction in Arizona under the narrow language in this forum selection clause.

### III.     CONCLUSION & PRAYER

For the reasons stated herein, GW Equity respectfully asks this Court to deny Defendants' motion to dismiss for lack of personal jurisdiction.

Dated: June 22, 2007                         Respectfully submitted,


                                             /s/ John T. Cox III_____
                                             John T. Cox III
                                             Texas Bar No. 24003722
                                             **LYNN TILLOTSON & PINKER, L.L.P.**
                                             750 N. St. Paul Street, Suite 1400
                                             Dallas, Texas 75201
                                             (214) 981-3800 Telephone
                                             (214) 981-3839 Facsimile

                                             **ATTORNEY FOR PLAINTIFF
                                             GW EQUITY, LLC**


## <u>CERTIFICATE OF SERVICE</u>

      The undersigned does hereby certify that a true and correct copy of the foregoing was served upon the following counsel *via ECF* on this 22nd day of June, 2007.


Maria Crimi Speth, Esq.                      Jeffrey S. Seeburger
Jaburg & Wilk, PC                            Kane Russell Coleman & Logan, P.C.
3200 North Central Avenue, Suite 2000        3700 Thanksgiving Tower
Phoenix, Arizona 85012                       1601 Elm Street
mcs@jaburgwilk.com                           Dallas, TX 75201
Tel: (602) 248-1000                          Tel: (214) 777-4200
Direct:  (602) 248-1089                      Direct: (214) 777-4275
Fax:  (602) 248-0522                         Fax: (214) 777-4299
                                             jseeburger@krcl.com


                                             /s/ John T. Cox III_____
                                             John T. Cox III