

37.      The Defendants' conduct as alleged above has caused special damages and will continue to cause special damages to GW Equity in the form of lost sales to potential clients. Further, the Defendants' publishing of false, misleading, disparaging and/or defamatory words, statements, and comments about GW Equity and its services has played a substantial part in inducing others not to deal with GW Equity with the result that GW Equity has suffered special damages, in the form of the loss of trade or other dealings. The Defendants' conduct entitles GW Equity to injunctive relief.

38.      Unless the Defendants are restrained and enjoined, the Defendants will continue to harm GW Equity irreparably, thereby further damaging GW Equity and impairing GW Equity's business reputation and activities. By reason of the foregoing, the Plaintiff has been injured in an amount not yet ascertained, and is entitled to monetary and equitable remedies.

### COUNT TWO – INTERFERENCE WITH BUSINESS RELATIONSHIPS

39.      GW Equity realleges and incorporates by reference all preceding paragraphs as fully set forth herein.

40.      The Defendants have created, solicited, and published on the Websites false and defamatory statements regarding GW Equity that have interfered with GW Equity's business relationships with its existing and potential clients.

41.      These false and defamatory statements have been communicated with the knowledge that clients and potential clients had an existing or prospective business relationship with GW Equity and with the intention of interfering with that relationship.

42.      The Defendants' wrongful interference with GW Equity's business relations has been willful and deliberate and has caused GW Equity to incur loss and damages.

43.      The Defendants' conduct has caused damages and will continue to cause damages to GW Equity in the form of lost clients. Further, the Defendants' publishing of false,

Appx. 000122

Dockets.Justia.com



misleading, disparaging and/or defamatory words, statements, and comments about GW Equity and its services has played a substantial part in inducing others not to deal with GW Equity with the result that GW Equity has suffered special damages, in the form of the loss of trade or other dealings. Defendants' conduct entitles GW Equity to injunctive relief.

44.    Unless the Defendants are restrained and enjoined, the Defendants will continue to harm GW Equity irreparably, thereby further damaging GW Equity and impairing GW Equity's business reputation and activities. By reason of the foregoing, GW Equity has been injured in an amount not yet ascertained and is entitled to monetary and equitable remedies.

### COUNT THREE – TEXAS BUSINESS DISPARAGEMENT

45.    GW Equity realleges and incorporates by reference all preceding paragraphs as fully set forth herein.

46.    The acts and conduct of the Defendants as alleged above in this Complaint constitute injurious falsehood or business disparagement under Texas law.

47.    The Defendants published false, misleading, disparaging and/or defamatory words, statements, and comments about GW Equity and its services.

48.    The Defendants' false, misleading, disparaging and/or defamatory words, statements, and comments were published without GW Equity's consent and with a lack of privilege.

49.    The Defendants published the false, misleading, disparaging and/or defamatory words, statements, and comments about GW Equity and its services with knowledge of the falsity of the words, statements, or comments or with reckless disregard for the words, statements, and comments' falsity.

50.    The Defendants' conduct as alleged above has caused special damages and will continue to cause special damages to GW Equity in the form of lost sales to potential clients.

Appx.  000123



Further, the Defendants' publishing of false, misleading, disparaging and/or defamatory words, statements, and comments about GW Equity and its services has played a substantial part in inducing others not to deal with GW Equity with the result that GW Equity has suffered special damages, in the form of the loss of trade or other dealings. The Defendants' conduct entitles GW Equity to injunctive relief.

51.    Unless the Defendants are restrained and enjoined, the Defendants will continue to harm GW Equity irreparably, thereby further damaging GW Equity and impairing GW Equity's business reputation and activities. By reason of the foregoing, the Plaintiff has been injured in an amount not yet ascertained, and is entitled to monetary and equitable remedies.

### COUNT FOUR – CIVIL CONSPIRACY

52.    GW Equity realleges and incorporates by reference all preceding paragraphs as fully set forth herein.

53.    The Defendants and unknown agents have had a common design by means of concerted action to solicit, develop, create, and publish on the Websites false and misleading statements regarding GW Equity.

54.    The Defendants and unknown agents have solicited, developed, created and published on their Websites such false and misleading statements.

55.    The Defendants and unknown agents have created the "Rip-off Report Corporate Advocacy Business Remediation & Customer Satisfaction Program." Through this so-called "program," the Defendants offer to attempt to resolve disputes between targeted companies and complainants regarding published "Rip-off Reports" on the Websites. This so-called service is offered on the Websites.

56.    Representatives of GW Equity informed Magedson of false statements regarding GW Equity on the Websites. Magedson demanded payment and participation in the Defendants'

Appx.  000124



"Rip-off Report Corporate Advocacy Business Remediation & Customer Satisfaction Program" before taking any action to remedy the false and misleading statements.

57.    These actions constitute a civil conspiracy to use coercion to obtain GW Equity's property.  These actions also constitute a civil conspiracy to create, solicit, and publish false, misleading, disparaging and/or defamatory statements regarding GW Equity.  These actions have caused GW Equity to incur loss and damages and entitle GW Equity to compensatory and punitive damages in an amount to be determined at trial.

### COUNT FIVE – VIOLATION OF THE RACKETEER INFLUENCED AND CORRUPT ORGANIZATIONS ACT (RICO), 18 U.S.C. § 1962(C)

58.    GW Equity realleges and incorporates by reference all preceding paragraphs as fully set forth herein.

59.    Xcentric is a "person" within the meaning of 18 U.S.C. §§ 1961(3) and 1962(c).

60.    Magedson is a "person" within the meaning of 18 U.S.C. §§ 1961(3) and 1962(c).

61.    Xcentric is an "enterprise" within the meaning of 18 U.S.C. § 1961(4) and 1962(c), which enterprise engaged in and the activities of which affected interstate commerce during the relevant times.

62.    Magedson was employed by or associated with an enterprise, Xcentric, and did conduct or participate, directly or indirectly, in the conduct of affairs of Xcentric through a pattern of racketeering activity within the meaning of 18 U.S.C. §§ 1961(1)(B) and 1961(5) and 1962(c), through the following acts:

(a) The Defendants have repeatedly attempted to obtain GW Equity's property, without its consent, through the wrongful use of actual or threatened fear by requiring payment to remedy the publication of false and defamatory statements that the



Defendants created and/or solicited.  This conduct amounts to extortion under 18 U.S.C. § 1951(b)(2).

(b) The Defendants have repeatedly and intentionally used their Websites as a scheme to obtain money from GW Equity and other companies by means of false and defamatory complaints created or solicited by the Defendants.  The Defendants have repeatedly created, solicited, and published false, misleading, disparaging and/or defamatory statements on the Websites and sent emails requesting that GW Equity pay a fee before the Defendants would agree to take any action related to the material on the Websites.  This conduct amounts to wire fraud under 18 U.S.C. § 1343.

63.    The Defendants' violation of 18 U.S.C. § 1962(c) has caused GW Equity to lose at least eight sales per month and has damaged GW Equity's business, goodwill, and reputation. The Defendants' unlawful conduct has caused damages to GW Equity, in an amount to be determined at trial, and threatens to cause additional damage.  GW Equity seeks three times its actual damages sustained, as well as other relief which is necessary and proper, including reasonable attorney's fees and costs.

64.    Because its remedy at law is inadequate, GW Equity seeks injunctive relief to protect its reputation and interests.  Unless the Defendants are restrained and enjoined, the Defendants and anonymous sources making false representations of fact about GW Equity will continue to harm GW Equity irreparably, thereby further damaging GW Equity's business reputation.

### COUNT SIX – VIOLATION OF THE RACKETEER INFLUENCED AND CORRUPT ORGANIZATIONS ACT (RICO) 18 U.S.C. § 1962(D)

65.    GW Equity realleges and incorporates by reference all preceding paragraphs as fully set forth here.

66.     Xcentric is a "person" within the meaning of 18 U.S.C. §§ 1961(3) and 1962(c).

67.     Magedson is a "person" within the meaning of 18 U.S.C. §§ 1961(3) and 1962(c).

68.     Xcentric is an "enterprise" within the meaning of 18 U.S.C. § 1961(4) and 1962(c), which enterprise engaged in and the activities of which affected interstate commerce during the relevant times.

69.     Magedson was employed by or associated with an enterprise, Xcentric, and conspired with Xcentric within the meaning of 18 U.S.C. § 1962(d) to violate 18 U.S.C. § 1962(c). The Defendants and one or more unknown agents did conspire to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity within the meaning of 18 U.S.C. §§ 1961(1)(B) and 1961(5) and 1962(c), through the following acts:

(a) The Defendants have repeatedly attempted to obtain GW Equity's property, without its consent, through the wrongful use of actual or threatened fear by requiring payment to remedy the publication of false and defamatory statements that the Defendants created and/or solicited. This conduct amounts to extortion under 18 U.S.C. § 1951(b)(2).

(b) The Defendants have repeatedly and intentionally used their Websites as a scheme to obtain money from GW Equity and other companies by means of false and defamatory complaints created or solicited by the Defendants. The Defendants have repeatedly created, solicited, and published false, misleading, disparaging and/or defamatory statements on the Websites and sent emails requesting that GW Equity pay a fee before the Defendants would agree to take any action related to the material on the Websites. This conduct amounts to wire fraud under 18 U.S.C. § 1343.

70.    The Defendants' violation of 18 U.S.C. § 1962(c) has caused GW Equity to lose at least eight sales per month and has damaged GW Equity's business, goodwill, and reputation. The Defendants' unlawful conduct has caused damages to GW Equity, in an amount to be determined at trial, and threatens to cause additional damage.  GW Equity seeks three times its actual damages sustained, as well as other relief which is necessary and proper, including reasonable attorney's fees and costs.

71.    Because its remedy at law is inadequate, GW Equity seeks injunctive relief to protect its reputation and interests.  Unless the Defendants are restrained and enjoined, the Defendants and anonymous sources making false representations of fact about GW Equity will continue to harm GW Equity irreparably, thereby further damaging GW Equity's business reputation.

## VI.
## REQUEST FOR EMERGENCY *EX PARTE* TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION

72.    GW Equity realleges and incorporates by reference all preceding paragraphs as fully set forth here.

73.    The Affidavit of Ryan Binkley, which proves the allegations in this application for injunctive relief, is attached as Exhibit A and incorporated by reference.

74.    Defendants     Xcentric     Ventures,     LLC,     www.ripoffreport.com, www.badbusinessbureau.com, and Edward Magedson have solicited, developed, and published on the Websites numerous false and misleading statements of fact concerning GW Equity, its executives, and its employees and have essentially placed the reputation and goodwill of GW Equity in the hands of Defendants.

75. Plaintiff GW Equity has been and will continue to suffer immediate and irreparable damage if Defendants are not enjoined during the pendency of this lawsuit from disseminating, using, or publishing false, misleading, disparaging and/or defamatory words and comments regarding GW Equity and its services and reputation and from disseminating, using, or publishing confidential information regarding GW Equity. GW Equity's remedies are inadequate to compensate it for this harm and damage. Defendants have refused to remove false and misleading statements after repeated requests by GW Equity. Every day that Defendants continue to disseminate, use, or publish false, misleading, disparaging and/or defamatory words and comments regarding GW Equity impacts GW Equity's business opportunities and persuades potential clients not to do business with GW Equity. GW Equity has no ability to monitor who visits the Websites and reads the false postings. As a result, its reputation can only suffer at the hands of Defendants. GW Equity's only option is to respond to these false and misleading comments and allegations in its dealings with existing and prospective clients. Once its reputation is tainted, it is virtually impossible to regain the trust of these potential clients.

76. There is a substantial likelihood that GW Equity will prevail on the merits. Defendants have been repeatedly notified to cease and desist disseminating, using, or publishing false, misleading, disparaging and/or defamatory words and comments regarding GW Equity and its services and reputation, but they have willfully continued to host such statements on the Websites with the understanding that such disparaging acts would be detrimental to GW Equity.

77. Any harm associated by the entry of a restraining order and preliminary injunction is outweighed by the potential damage to GW Equity's goodwill and reputation. As the operators of the Websites, Defendants will not suffer any monetary losses if they are forced to remove the false and misleading statements regarding GW Equity.

Appx. 000129

78. Issuance of a restraining order and preliminary injunction would not adversely affect the public interest and public policy because the public interest is served by preventing the dissemination of false and misleading statements about other businesses.

79. Plaintiff GW Equity is willing to post a bond in the amount the Court deems appropriate.

80. The Court should enter a temporary restraining order without notice to Defendants because GW Equity will suffer immediate and irreparable injury, loss, or damage if the temporary restraining order is not granted before Defendants can be heard and there is no less drastic means to protect Plaintiff's interests. *See* FED. R. CIV. P. 65(b).

81. GW Equity further asks the Court to set its application for preliminary injunction for hearing at the earliest possible time, and after hearing the request issue a preliminary injunction against Defendants from disseminating, using, or publishing false, misleading, disparaging and/or defamatory words and comments concerning either GW Equity and its services and reputation.

## VII.
## REQUEST FOR PERMANENT INJUNCTION

82. GW Equity realleges and incorporates by reference all preceding paragraphs as fully set forth here.

83. GW Equity further asks the Court to set its application for injunctive relief for a full trial on the issue in this application, and after the trial, to issue a permanent injunction against Defendants from disseminating, using, or publishing false, misleading, disparaging and/or defamatory words and comments concerning either GW Equity and its services and reputation.

## VIII.

Appx. 000130

## DEMAND FOR JURY TRIAL

84.    Plaintiff hereby demands a trial by jury.

### PRAYER FOR RELIEF

WHEREFORE, GW Equity demands that judgment be entered against the Defendants as follows:

(1)    That pursuant to federal and Texas state law, the Court issue preliminary and permanent injunctive relief that the Defendants, their officers, agents, representatives, servants, employees, attorneys, successors and assigns, and all others in active concert or participation with the Defendants, be enjoined and restrained, during the pendency of this action and permanently from disseminating, using, or publishing false, misleading, disparaging and/or defamatory words and comments concerning either (i) GW Equity and its services or (ii) GW Equity and its reputation or commercial activities;

(2)    That the Defendants be required to remove the false, misleading disparaging and/or defamatory words and comments regarding either (i) GW Equity and its services or (ii) GW Equity and its reputation or commercial activities and all confidential information regarding GW Equity's intellectual property and trade secrets;

(3)    That the Defendants be enjoined from posting any further comments and statements regarding GW Equity on the Websites without GW Equity having the opportunity to first respond to the alleged author privately;

(4)    That the Defendants be required to contact and notify any and all Internet business directory providers and Internet search engines to terminate all associations, if any, between Defendants and GW Equity and that all cached pages being kept by any Internet search engine be terminated as well;



    (5)    That the Defendant be required to pay three times GW Equity's actual damages for violations of 18 U.S.C. §§ 1962(c) and 1962(d) of the Racketeer Influenced and Corrupt Organizations Act (RICO) pursuant to 18 U.S.C. § 1964(c);

    (6)    That GW Equity recover all damages it has sustained as a result of Defendants' defamation, business disparagement, and tortious interference with prospective contracts;

    (7)    That GW Equity recover compensatory damages in an amount to be determined at trial;

    (8)    That the Defendants be required to pay GW Equity's costs, expenses, and reasonable attorney's fees in connection with this action; and

    (9)    That GW Equity be entitled to such other relief as this Court deems just and equitable.

Dated: June 1, 2007

Respectfully submitted,

John T. Cox III
Texas Bar No. 24003722
**LYNN TILLOTSON & PINKER, L.L.P.**
750 N. St. Paul Street, Suite 1400
Dallas, Texas 75201
(214) 981-3800 Telephone
(214) 981-3839 Facsimile

**ATTORNEY FOR PLAINTIFF
GW EQUITY, LLC**

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| GW EQUITY, LLC, | § | |
| | § | |
| PLAINTIFF, | § | CIVIL ACTION |
| | § | |
| v. | § | No. _____ |
| | § | |
| XCENTRIC VENTURES, LLC, | § | |
| WWW.RIPOFFREPORT.COM, | § | |
| WWW.BADBUSINESSBUREAU.COM, | § | |
| and EDWARD MAGEDSON, | § | |
| | § | |
| DEFENDANTS. | § | |

## AFFIDAVIT OF RYAN BINKLEY

| | |
|---|---|
| THE STATE OF TEXAS | § |
| | § |
| COUNTY OF DALLAS | § |

On this day, before the undersigned authority, personally appeared Ryan Binkley, known to me to be the person whose name is subscribed hereto and under oath states:

1.    My name is Ryan Binkley. I am over the age of 21, have never been convicted of a felony or crime of moral turpitude, and am, in all ways, capable of making this Affidavit. The facts stated in this Affidavit are within my personal knowledge and are true and correct.

2.    I am currently employed as President of GW Equity, LLC ("GW Equity"). Based on my service in this capacity, I am personally familiar with the facts stated in this affidavit and the documents attached to this Affidavit as Exhibit 3 through Exhibit 9.

## I.    The Parties

3.    Plaintiff GW Equity is a Delaware Limited Liability Company with its principal place in Dallas, Texas. GW Equity is duly registered and licensed to do business in the state of Texas. GW Equity is a mergers & acquisitions firm in the middle market assisting clients in



EXHIBIT

6



mergers, acquisitions, and strategic growth.    With over three hundred professionals and employees.  GW Equity brings a strategic domestic and international buying community to the middle market.

4.    GW Equity has buyers, investors and other capital markets interested in GW Equity's inventory of companies.  GW Equity therefore assists its customers in exit planning services including offering memorandum, evaluations, financial or ratio analysis and where appropriate, taking a customer to market.

5.    GW Equity is not a $120 billion enterprise and is in no way related to a company known as Geneva Enterprises which is a subsidiary of CitiGroup.  At no point in its history has GW Equity conducted business under the title of Geneva Enterprises.  GW Equity has had no involvement or participation in a $45 million class action lawsuit that was based in Irvine, California.

6.    Defendants    Xcentric    Ventures,    LLC,    www.ripoffreport.com, www.badbusinessbureau.com, and Edward Magedson (collectively, "Defendants") own and operate www.ripoffreport.com and www.badbusinessbueau.com (collectively, the "Websites") as centralized websites for publishing and posting alleged fraudulent business practices.  Through their websites, Defendants purport to expose companies and individuals who "ripoff" consumers.

**II.    Postings On Rip-off Report Regarding GW Equity**

7.    Beginning in November 2006, Defendants solicited, developed, created, authored, and published on the Websites numerous false and deceptively misleading statements of fact concerning GW Equity, its executives, and its employees to create the appearance that numerous businesses and clients are unhappy with GW Equity.

---



8.    Additionally, portions of the reports on the Websites contain discussions of intellectual property and proprietary information that clearly belong to GW Equity.    The information posted on the Websites contains facts that would only be known to GW Equity and essentially gives our competitors an unfair advantage now that this information has been revealed.

9.    On November 2, 2006, the Defendants published and posted false, misleading, and disparaging statements about GW Equity on their websites and named the posting "GW Equity – Geneva Business Research – Geneva Companies – Geneva Marketing Services – Geneva Consulting Services rip off defrauded my company out of $30,000 for retainer to sell my business . . . The Truth about GW Equity and Geneva." Moreover, responses to this post include references that GW Equity is not related to Great Western Business Services, Inc. and they are two separate companies.  I have attached a true and correct copy of this publication and posting to my affidavit as Exhibit 3.

10.    On November 7, 2006, the Defendants published and posted false, misleading, and disparaging statements about GW Equity and its services on their websites and named the posting "Gw Equity, Geneva Corporate Finance, Geneva Capital Markets, wasted eight hours of my time then hit me up for $30K." I have attached a true and correct copy of this publication and posting to my affidavit as Exhibit 4.

11.    On November 29, 2006, the Defendants published and posted false, misleading, and disparaging statements about GW Equity and its services on their websites and named the posting "GW Equity Wrongful Termination – Scam – perpetuating a fraud on the general public Dallas Texas." I have attached a true and correct copy of this publication and posting to my affidavit as Exhibit 5.

---

AFFIDAVIT OF RYAN BINKLEY                                                                PAGE 3
#162932

Appx. 000135



12.    On November 29, 2006, the Defendants published and posted false, misleading, and disparaging statements about GW Equity on their websites and named the posting "GW Equity, Citibank, Citigroup, Citi Commerce Solutions M&A Business Consulting, paid $30,000 for an inflated analysis of company that has yielded no results New York New York." I have attached a true and correct copy of this publication and posting to my affidavit as <u>Exhibit 6</u>.

13.    On November 29, 2006, the Defendants published and posted false, misleading, and disparaging statements about GW Equity and its services on their websites and named the posting "GW Equity, Citibank, Citigroup, Citi Commerce Solutions Big company Wasting Small Companies Time & Money New York New York." I have attached a true and correct copy of this publication and posting to my affidavit as <u>Exhibit 7</u>.

14.    Immediately after learning of the postings regarding GW Equity, GW Equity's Office of General Counsel contacted the editor of Rip Off Report known as EDitor@ripoffreport.com and upon information and belief this was in fact Defendant Edward Magedson. The purpose of the inquiry was to explain the falsity of the information posted, to determine if there was a way to resolve the presence of numerous false and misleading statements on the Websites regarding GW Equity. GW Equity's Office of General Counsel asked Mr. Magedson to remove the false and misleading statements. Mr. Magedson, however, refused to remove the statements and demanded payment pursuant to the "Rip-off Report Corporate Advocacy Business Remediation & Customer Satisfaction Program." This is a program offered on Defendants' Websites that will resolve disputes between targeted companies and complainants if the targeted company pays Defendants a sum of money. After learning about this program, I perceived it to be nothing short of an extortion scheme and I refused to pay for these services.

Appx. 000136



### III.    Loss of Existing and Potential Clients

15.    Since Defendants have posted the false, misleading, disparaging, and defamatory statements about GW Equity, we have suffered severe business losses and other consequences. Specifically, the postings have disrupted GW Equity's ability to conduct business as most of our potential clients use Internet search engines to conduct due diligence about GW Equity. When potential clients discover the false postings about GW Equity on the Websites, they ultimately decide not to attend our educational seminars or to terminate their contracts with GW Equity. Since November 2006, GW Equity estimates a loss of at least eight clients per month due to Defendants' conduct.

16.    The following non-exhaustive list represents potential clients who have decided not to pursue a business relationship with GW Equity in the last month due to the information on the Websites:

- On April 25, 2007, Total Immersion Software informed GW Equity that it was not interested in attending its conference after reading the statements on Defendants' Websites.  GW Equity would have received $29,975.00 from this potential client.

- On May 2, 2007, Ledger Furniture Company informed GW Equity that it was not interested in attending its conference after reading the statements on Defendants' Websites.  GW Equity would have received $29,975.00 from this potential client.

- On May 2, 2007, Salepoint, Inc. informed GW Equity that it was not interested in attending its conference after reading the statements on Defendants' Websites.  GW Equity would have received $29,975.00 from this potential client.

- On May 3, 2007, Hubert Department Store informed GW Equity that it was not interested in attending its conference after reading the statements on Defendants' Websites.  GW Equity would have received $29,975.00 from this potential client.

- On May 3, 2007, Wilson Corman & Taylor, LLC informed GW Equity that it was not interested in attending its conference after reading the statements

Appx.  000137



on Defendants' Websites.  GW Equity would have received $29,975.00 from this potential client.

- On May 7, 2007, Ames Lawn Care informed GW Equity that it was not interested in attending its conference after learning about the statements from another company who read the statements on Defendants' Websites. GW Equity would have received $29,975.00 from this potential client.

- On May 8, 2007, Dave Brookhouse of Traffic Management Services, Inc. informed GW Equity that it was not interested in attending its conference after reading the statements on Defendants' Websites.  GW Equity would have received $29,975.00 from this potential client.

- On May 27, 2007, Communications Specialists informed GW Equity that it was not interested in attending its conference after reading the statements on Defendants' Websites.  GW Equity would have received $29,975.00 from this potential client.

- On May 28, 2007, Nigel Rhodes of American K-9 Interdiction, LLC informed GW Equity that it was not interested in attending its conference after reading the statements on Defendants' Websites.  GW Equity would have received $29,975.00 from this potential client.

- On May 31, 2007, Craig Looney of CompRep informed GW Equity that it was not interested in attending its conference after reading the statements on Defendants' Websites.  GW Equity would have received $29,975.00 from this potential client.

- On May 31, 2007, Jeff Lebowitz of The Laredo Group informed GW Equity that it was not interested in attending its conference after reading the statements on Defendants' Websites.  GW Equity would have received $29,975.00 from this potential client.

17.    In certain circumstances, GW Equity has received written correspondence from potential clients explaining their reasons for deciding not to pursue a business relationship with GW Equity.  For instance, on December 4, 2006, GW Equity received a letter from Karl Fikar, an attorney at the law firm of Cleall Barristers Solicitors who represented Arttec Advertising, Inc.  The letter was sent to Ray Wood of GW Equity's Office of General Counsel and I have attached a true and correct copy of this letter to my affidavit as Exhibit 8.  After reading the statements about GW Equity on Defendants' Websites, Mr. Fikar explained that he and his client

Appx.  000138



became concerned about the business practices of GW Equity and decided to terminate their relationship with GW Equity. As a direct result of the false and misleading statements on Defendants' Websites, GW Equity was forced to refund Arttec Advertising, Inc. the contractually agreed upon payment for services to be rendered by GW Equity. This refund took place on or about December 19, 2006.

18.    In addition to the loss of business described above, other potential clients have demanded refunds from GW Equity after reading Defendants' false and misleading statements on the Websites. GW Equity has refunded money to the following clients in recent months:

- On January 4, 2007, GW Equity refunded American Furniture Liquidators $19,500.00 after they read Defendants' false and misleading statements on the Websites and questioned GW Equity's business practices.

- On January 29, 2007, GW Equity refunded Hargrave Dewayne $14,988.00 after they read Defendants' false and misleading statements on the Websites and questioned GW Equity's business practices.

- On February 6, 2007, GW Equity refunded Honquest Furniture $29,500.00 after they read Defendants' false and misleading statements on the Websites and questioned GW Equity's business practices.

- On March 2, 2007, GW Equity refunded Cardinal Fasteners $29,975.00 after they read Defendants' false and misleading statements on the Websites and questioned GW Equity's business practices.

- On April 29, 2007, GW Equity refunded Mary Nash $29,975.00 because after they read Defendants' false and misleading statements on the Websites and questioned GW Equity's business practices.

19.    GW Equity continues to suffer ongoing injury with respect to the false and misleading statements on Defendants' Websites in other ways as well. In May 2007, GW Equity learned that the false and misleading statements from Defendants' Websites were republished in *The Business Owner*, a bi-monthly business magazine that has approximately 30,000 subscribers, in an article entitled "Scam Alert: GW Equity?". I have attached a true and correct copy of this

Appx. 000139



publication and posting to my affidavit as <u>Exhibit 9</u>. Because of the wide distribution of this article regarding the business practices of GW Equity, the falsity of the statements contained on the Websites have continued to have a severe impact on GW Equity's reputation and goodwill. In fact, due to this article and the false and misleading statements contained therein, we almost lost our business relationship with our long-time certified public account.

**IV.    Irreparable Harm**

20.    The false and misleading postings by Defendants on the Websites have disrupted GW Equity's ability to conduct business. The majority of GW Equity's client base uses the Internet to learn more information about our company. Yet, when potential clients discover the false postings regarding GW Equity, they decline to do business with us. Despite GW Equity's efforts to neutralize the persuasive force of the false and misleading statements on the Websites, Defendants' conduct has caused us to lose at least eight customers per month and has severely damaged GW Equity's business and reputation.

21.    If the Defendants are not forced to remove the so-called "Rip-off Reports" regarding GW Equity from the Websites, GW Equity's will continue to suffer immediate and irreparable economic damage. The Defendants have refused to comply with GW Equity's reasonable requests to remove the false postings and delete every false statement of fact regarding GW Equity's business. Because GW Equity does not have the ability to monitor every person who accesses the Defendants' Websites and explain that the statements posted there are false, GW Equity will continue to lose potential clients at an increasing rate.

Appx.  000140



22.     GW Equity does not have an adequate remedy at law for money damages in the event that the defamatory "Rip-off Reports" regarding GW Equity remain on the Defendants' Websites.

23.     Defendants will not be prejudiced at all by taking down the false and misleading postings on the Websites because there is no evidence that they will suffer any damages.

24.     Unless this Court grants the requested relief, GW Equity will be irreparably harmed because the loss of existing and potential clients would cause GW Equity to suffer irreparable economic harm in that GW Equity may never be able to get those relationships back.

25.     I affirm under penalty of perjury that, to the best of my knowledge and belief, the above is true and correct.


AFFIANT SAYETH NOTHING FURTHER.

RYAN BINKLEY


Subscribed and sworn to before me, this 1st day of June, 2007.


Notary Public in and for the State of Texas

CHARITY L. PLATT
Notary Public, State of Texas
My Commission Expires
OCT. 31, 2009

My Commission Expires: 10/31/09

SEAL:


AFFIDAVIT OF RYAN BINKLEY                                          PAGE 9
#162932


Appx.  000141

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| **GW EQUITY, LLC,** | § | |
| | § | |
| **PLAINTIFF,** | § | |
| | § | **CIVIL ACTION** |
| **v.** | § | |
| | § | **No. 3-07-CV-0976-K** |
| **XCENTRIC VENTURES, LLC,** | § | |
| **WWW.RIPOFFREPORT.COM,** | § | |
| **WWW.BADBUSINESSBUREAU.COM,** | § | |
| **and EDWARD MAGEDSON,** | § | |
| | § | |
| **DEFENDANTS.** | § | |

### SUPPLEMENTAL AFFIDAVIT OF RYAN BINKLEY

| | |
|---|---|
| THE STATE OF TEXAS | § |
| | § |
| COUNTY OF DALLAS | § |

On this day, before the undersigned authority, personally appeared Ryan Binkley, known to me to be the person whose name is subscribed hereto and under oath states:

1.      My name is Ryan Binkley. I am over the age of 21, have never been convicted of a felony or crime of moral turpitude, and am, in all ways, capable of making this Affidavit. The facts stated in this Affidavit are within my personal knowledge and are true and correct.

2.      I am currently employed as President of GW Equity, LLC ("GW Equity"). Based on my service in this capacity, I am personally familiar with the facts stated in this affidavit. All of the information contained in this Supplemental Affidavit serves to supplement the facts previously stated in my Original Affidavit filed in support of GW Equity's Original Complaint for Damages and Emergency Application for Injunctive Relief.

3.      In my original affidavit, I explained in detail the losses that GW Equity has suffered due to the false, misleading, disparaging and defamatory statements about GW Equity

SUPPLEMENTAL AFFIDAVIT OF RYAN BINKLEY

**EXHIBIT**
7

PAGE 1

on Defendants' websites, www.ripoffreport.com and www.badbusinessbureau.com (collectively,

the "Websites").    Nevertheless, the financial injury GW Equity has suffered has not ended.

Since filing my original affidavit approximately one week ago, GW Equity has continued to

suffer severe business losses and other consequences due to the statements on Defendants'

Websites.

     4.    When existing or potential clients discover the false postings about GW Equity on

the Websites, they ultimately decide not to attend our educational seminars or to terminate their

contracts with GW Equity.    The following non-exhaustive list represents more potential clients

who have decided not to pursue a business relationship with GW Equity *in the last week* due to

the false and misleading information on the Websites:

- On June 5, 2007, Paul Roesel of The Sack Company informed GW Equity that it was not interested in pursuing a business relationship with GW Equity after reading the statements on Defendants' Websites.  GW Equity would have received $29,975.00 from this potential client.

- On June 6, 2007, David McDonald of DMC, Inc. informed GW Equity that it was not interested in pursuing a business relationship with GW Equity after reading the statements on Defendants' Websites.  GW Equity would have received $29,975.00 from this potential client.

- On June 6, 2007, Echo Magazine informed GW Equity that it was not interested in pursuing a business relationship with GW Equity after reading the statements on Defendants' Websites.  GW Equity would have received $29,975.00 from this potential client.

- On June 7, 2007, Bob Gard of Georgian Plantation Shutter Company informed GW Equity that it was not interested in pursuing a business relationship with GW Equity after reading the statements on Defendants' Websites.  GW Equity would have received $29,975.00 from this potential client

- On June 7, 2007, Keith White of Parkerwhite informed GW Equity that it was not interested in pursuing a business relationship with GW Equity after reading the statements on Defendants' Websites.  GW Equity would have received $29,975.00 from this potential client.

---

SUPPLEMENTAL AFFIDAVIT OF RYAN BINKLEY           PAGE 2

- On June 7, 2007, Tony Cobb of All Gutter Systems, Inc. informed GW Equity that it was not interested in pursuing a business relationship with GW Equity after reading the statements on Defendants' Websites. GW Equity would have received $29,975.00 from this potential client.

- On June 7, 2007, Don McGilvray of Olympia, Inc. informed GW Equity that it was not interested in pursuing a business relationship with GW Equity after reading the statements on Defendants' Websites. GW Equity would have received $29,975.00 from this potential client.

- On June 7, 2007, Scott Cafner of Angel Appliances Sales Services informed GW Equity that it was not interested in pursuing a business relationship with GW Equity after reading the statements on Defendants' Websites. GW Equity would have received $29,975.00 from this potential client.

- On June 7, 2007, Wayne Huber of Huber General Contracting LLC informed GW Equity that it was not interested in pursuing a business relationship with GW Equity after reading the statements on Defendants' Websites. GW Equity would have received $29,975.00 from this potential client.

5.    The false and misleading postings by Defendants on the Websites have clearly disrupted GW Equity's ability to conduct business. The damages I have identified above are just the losses we actually have knowledge about. Because the majority of GW Equity's client base uses the Internet to learn more about information about our company, there are certainly more unidentified potential clients who have read the false postings on the Websites and have then decided not to do business with us. It is thus virtually impossible for us to know how many clients we are losing on a weekly and monthly basis.

6.    Furthermore, it is incredibly difficult for GW Equity to neutralize the force of the false and misleading statements on the Websites. Because we do not know the identity of every single person who visits the Websites, we cannot try to explain to these potential clients that the statements are false and misleading. As a result, Defendants' actions have caused us to lose

---

customers at an increasing rate per month and have severely damaged our business and reputation.

7.    GW Equity does not have an adequate remedy at law for money damages in the event that the defamatory "Rip-off Reports" regarding GW Equity remain on the Defendants' Websites.  GW Equity cannot in any way estimate the precise losses we are experiencing due to the statements on the Websites.

8.    Defendants will not be prejudiced at all by taking down the false and misleading postings on the Websites because there is no evidence that they will suffer any damages.  Indeed, Defendants do not experience a profit by maintaining the false and misleading statements regarding GW Equity on the Websites.

9.    Unless this Court grants the requested relief, GW Equity will be irreparably harmed because the loss of existing and potential clients would cause GW Equity to suffer irreparable economic harm in that GW Equity may never be able to get those relationships back.  Furthermore, the goodwill and reputation GW Equity has worked so hard to establish with its customer base will be lost.

10.    I affirm under penalty of perjury that, to the best of my knowledge and belief, the above is true and correct.

Appx. 000145

AFFIANT SAYETH NOTHING FURTHER.

_____
RYAN BINKLEY

Subscribed and sworn to before me, this 11th day of June, 2007.



_____
Notary Public in and for the State of Texas

My Commission Expires: ___3/2/08___

SEAL:

JERRY G. HILL
MY COMMISSION EXPIRES
MARCH 2, 2008

---

Appx. 000146