UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| GW EQUITY, LLC, | § § | |
| PLAINTIFF, | § § | CIVIL ACTION |
| v. | § § | No. 3-07-CV-0976-K |
| XCENTRIC VENTURES, LLC, WWW.RIPOFFREPORT.COM, WWW.BADBUSINESSBUREAU.COM, and EDWARD MAGEDSON, | § § § § § | |
| DEFENDANTS. | § | |

## JOINT STATUS REPORT

Pursuant to the Court's Status Report Order of August 29, 2007, Plaintiff GW Equity, LLC and Defendants Xcentric Ventures, LLC and Edward Magedson (collectively, "Defendants") file this Joint Status Report.

**I.    Brief Statement of the Claims and Defenses of the Parties.**

   **A.    Plaintiff's Position.**

In November 2006, Plaintiff GW Equity, LLC ("GW Equity") learned that certain confidential information as well as disparaging and untrue statement regarding its business practices could be found on two websites www.ripoffreport.com and www.badbusinessubureau.com. These two websites are actively controlled and maintained by Defendants Xcentric Ventures, LLC and Edward Magedson and purport to expose companies who "rip-off" consumers. Over the course of November 2006, Defendants posted five complaints or reports regarding the business practices and reputation of GW Equity. Much of the information and statements contained in these postings were false and misleading assertions of fact.

After GW Equity discovered these false, misleading, and confidential statements on the websites, GW Equity contacted the editor of the websites. GW Equity explained and demonstrated the falsity of the information and requested that the false and misleading statements be removed from the websites. Additionally, GW Equity requested that any confidential information be removed the websites. Defendants refused. Instead, Defendants sought to "make a buck" demanding payment for remedying the falsities pursuant to the "Rip-off Report Corporate Advocacy Business Remediation & Customer Satisfaction Program."

GW Equity filed this lawsuit after Defendants ignored its demand to remove the false, misleading, and confidential statements from the websites. The existence of such statements on the Internet is particularly damaging to GW Equity because the information contained on the websites receives high placement on Internet search engines. Indeed, Defendants include GW Equity's name in the caption of pages on the websites, in report titles, and in metatags. When potential clients use search engines to find out more information about GW Equity, they find results which feature high-placed links to one or more reports published on the websites. Clients that follow the links to the websites are referred to postings containing false and misleading information regarding GW Equity's business and reputation.

GW Equity has expressly alleged that Defendants have participated in a pattern of wrongful conduct by developing, creating, writing, publishing, and posting defamatory information about GW Equity through the websites. GW Equity seeks to permanently enjoin Defendants from disseminating, using, publishing, maintaining and hosting such defamatory information regarding GW Equity on the websites because it has significantly disrupted GW Equity's ability to conduct business.

B.     Defendant's Position.

GW Equity, LLC ("GW Equity") has continuously attempted to manipulate the facts in order to circumvent the law and attempt to obtain relief to which it is not entitled. Utilizing two different law firms, GW Equity has filed two different cases, asserting completely opposite factual allegations, to attempt to obtain the same result.

Ed Magedson ("Magedson") is the Manager of Xcentric Ventures, LLC ("Xcentric"). Xcentric operates a website known as Rip-off Report ("ROR") located at www.ripoffreport.com. It is an extremely popular website where users of the website can both post complaints about businesses and look up a business' track record. In fact, ROR is used by law enforcement, including the FBI, governmental agencies, and the media to gather information about patterns of wrongful business practices.

ROR is a free service. The reports are posted for free, can be viewed and searched for free and can be replied to or "rebutted" for free. The website currently has more than 250,000 original reports, over 1,000,000 unique entries including rebuttals to reports, and an average of 500-800 new incoming submissions each day.

Magedson and the agents of Xcentric do not author complaints about companies posted on ROR. Specifically, neither Magedson, nor any other agent of Xcentric authored the reports posted on ROR regarding GW Equity. The evidence is that the reports at issue were actually created by a former employee of GW Equity named Dickson Woodard ("Mr. Woodard"), who GW Equity sued for posting the reports. According to ¶ 8 of GW Equity's Complaint against Mr. Woodard, GW Equity alleged: "On or about November 2, 2006, Defendant Woodard, writing under the name 'Jim from St. Paul, Minnesota," published a statement on the website www.ripoffreport.com regarding the Plaintiff and the Plaintiff's business practices." This

allegation refers to Report #218734, which is also the same report which GW Equity has alleged that Magedson wrote in ¶ 20 of the Complaint filed in the present case.

On or about December 4, 2006, GW Equity initiated legal proceedings against Dickson Woodard (the "First Lawsuit"). Similar to the present action, GW Equity requested injunctive relief from the Defendant. There, however, the defendant apparently agreed to enter into a stipulated injunction whereby he, among other things, agreed to "demand" that Ed Magedson remove any and all "publications made by Defendant Woodard" or "published at Defendant Woodard's direction" from the website located at www.ripoffreport.com ("ROR"). GW Equity clearly took the position in the First Lawsuit that the purportedly defamatory statements at issue were authored by Woodard and only published by Magedson and ROR.

Attached as Exhibit 1 to GW Equity's complaint in the First Lawsuit is an affidavit of Jim Willingham. According to this affidavit, Mr. Willingham is a private investigator hired by GW Equity to investigate the conduct of Mr. Woodard. Paragraph 7 of Mr. Willingham's affidavit indicates that Mr. Woodard confirmed that he was "hired … to kill Ed Magedson … ." Also attached to the complaint against Woodard is an affidavit of Ryan Binkley, President of GW Equity. In ¶ 1 of his affidavit, Mr. Binkley states that "no 'Jim from St. Paul Minnesota,' has ever attended a GW Equity seminar. However, this was the name and location of the last potential client that Dickson Woodard spoke to before being terminated from his employment with GW Equity."

On January 5, 2007, Magedson received an email from an attorney for GW Equity named Kristen Pannell. Attached to Ms. Pannell's email was a copy of an "AGREED ORDER GRANTING PLAINTIFF'S PETITION FOR TEMPORARY INJUNCTION." This order indicates that, "IT IS ORDERED THAT Defendant Woodard shall send to Ed Magedson, owner of www.ripoffreport.com, a written demand that any and all publications made by Defendant

Woodard or published at Defendant Woodard's direction be removed from www.ripoffreport.com within 5 days of the signing of this order."

Upon receiving Ms. Pannell's email and the enclosed order, Defendants' attorneys sent a response letter to Ms. Pannell. In this letter, Defendants' counsel explained to Ms. Pannell that the operator of Rip-Off Report, Xcentric Ventures, is generally subject to immunity from civil liability pursuant to the Communications Decency Act, 47 U.S.C. § 230 (the "CDA") absent affirmative proof that defamatory material was actually created by Magedson or by Xcentric. After this letter was sent to Ms. Pannell, Ms. Pannell thereafter took the deposition of Dickson Woodard and elicited testimony through highly leading questions to the effect that Mr. Woodard "knew" that Magedson had created the reports concerning GW Equity on Rip-Off Report, including the reports listed above.

In early June, 2007, Magedson spoke with Mr. Woodard by telephone and confronted him with the deposition testimony filed by GW Equity in support of its request for a preliminary injunction in this case. During a telephone conversation which took place June 11, 2007, Mr. Woodard admitted to Magedson that he had actually wrote the reports which GW Equity now claims were authored by Magedson.

Regardless of its knowledge of the preceding information, GW Equity filed the within action, suddenly alleging that it was Magedson and/or Xcentric who authored the defamatory material, rather than Woodard. The assertions in the present action include language alleging that Defendants "edit", "publish", "author", "alter", "change", "create", and/or "develop" reports posted on ROR. (Complaint, ¶¶ 14, 16, 17, 18, 19, 20, 21) These assertions directly contradict the position taken by GW Equity in the First Lawsuit that the reports at issue were made by or on behalf of Dickson Woodard.

GW Equity has manufactured evidence to fit into the law. Knowing that it could not bring an action alleging that Defendants should be liable merely for publishing statements authored by third parties, GW Equity has alleged facts that they know to be untrue – i.e., that Defendants have created defamatory content. In reality, Defendants merely published reports written by third parties; which activity is immune under the Communications Decency Act.

Similarly, GW Equity cannot maintain a claim for tortious interference with business relationships. Defendants were not aware of the existence of GW Equity until it was contacted by GW Equity in connection with reports that had appeared on the ROR Sites. At the time of the initial contact with GW Equity, reports had already been posted by third party consumers on the ROR Sites discussing their various experiences with GW Equity. As noted previously, Defendants have not authored, edited, altered, changed, or otherwise created any reports at issue. The gravamen of the tortious interference claim is publication of content about GW Equity; and, thus, it is also barred by the Communications Decency Act.

No business disparagement claim exists for GW Equity, either. The similarity of a business disparagement claim to a defamation claim applies not just in the elements necessary to prove the claim, but in the defenses available to such a claim. Defendants are entitled to publish the information at issue pursuant to the CDA. Furthermore, Defendants did not maliciously publish any information about GW Equity, since Defendants did not choose to publish any information about GW Equity. Instead, third party visitors to the ROR Sites chose to publish information about GW Equity. The actions of these third party visitors cannot be attributed to Defendants pursuant to the CDA, and therefore any claim for business disparagement is not sustainable.

GW Equity has also requested relief for civil conspiracy. However, since GW Equity cannot prove the existence of an underlying tort against Defendants, no recovery can be obtained under a theory of civil conspiracy.

Finally, GW Equity cannot prevail on either of its claims under the RICO statutes. No extortion occurred because GW Equity provided no compensation to Defendants, and Defendants merely offered a service that GW Equity chose not to avail itself of. Similarly, no conspiracy exists because no agreement was made to effect a substantive violation of the RICO statute. GW Equity can not prevail on the merits of a RICO claim. This is a simple, garden variety, defamation claim, at best. Numerous elements of RICO are missing, including the lack of a predicate act, the lack of a pattern, absence of damages, and the lack of a nexus between any RICO acts and any damages.

## II.  Proposed Time Limits.

The parties agree to the following deadlines for this case:

    **A.**    **Deadlines for Motions for Leave to Join Additional Parties:**

        November 2, 2007

    **B.**    **Deadlines to Amend Pleadings:**

        December 3, 2007

    **C.**    **Deadline for Filing Dispositive Motions:**

        Plaintiff Proposes: May 2, 2008
        Defendants Propose:  September 16, 2008 (unless discovery is bifurcated as set forth in section IV).

    **D.**    **Deadline for Initial Designations of Deadlines – Parties seeking affirmative relief as to an issue shall make initial designations of experts on all issues by:**

        February 4, 2008

    **E.**    **Deadline for Designation of Responsive Experts:**

        March 3, 2008

    F.    **Deadline for Objections to Experts (*Daubert* and similar motions):**

        April 4, 2008

    G.    **Proposed Plan and Schedule for Discovery:**

        1.    **Proposed Fact Discovery Deadline:**

            Plaintiff Proposes: April 18, 2008
            Defendants Propose: August 16, 2008

        2.    **Proposed Expert Discovery Deadline:**

            Plaintiff Proposes: April 18, 2008
            Defendants Propose: August 16, 2008

## III. <u>Discovery Taken and Subjects of Discovery</u>.

The parties plan to exchange the following forms of discovery: (1) Initial Disclosures; (2) Interrogatories; (3) Requests for Production; and (4) Requests for Admission.

    A.    **Plaintiff's Issues for Potential Discovery.**

GW Equity submits the following nonexclusive list of issues for potential discovery:

1.    All facts which support or otherwise relate to Defendants' contention that they did not publish, create, solicit, or develop any of the statements at issue in this matter as set forth in Defendants' First Affirmative Defense.

2.    All facts that support the application of the doctrine of unclean hands as set forth in Defendants' Second Affirmative Defense.

3.    All facts that support Defendants' Third Affirmative Defense of truth, and the identity of each and every true statement they rely on in this defense.

4.    All facts that support Defendants' assertion that they lacked actual malice and/or negligence sufficient to support a claim of defamation or disparagement as set forth in Defendants' Fourth Affirmative Defense.

5. All facts relating to or in support of Defendants' affirmative defense of the Communication Decency Act.

6. All information Defendants relied upon in posting the reports relating to GW Equity on the websites www.ripoffreport.com and/or www.badbusinessbureau.com.

7. The identity of any person in the Defendants' control who owns, operates, authors, or creates content for the websites www.ripoffreport.com and/or www.badbusinessbureau.com.

8. The identity of the IP addresses used to post information relating to GW Equity on the websites www.ripoffreport.com and/or www.badbusinessbureau.com.

9. The identity and contact information of any person who identified themselves as the author of any of the postings relating to GW Equity on the websites www.ripoffreport.com and/or www.badbusinessbureau.com.

10. The identity of all persons who have enrolled in the Rip-off Report Corporate Advocacy Business Remediation and Corporate Satisfaction Program from 2000 to present, and all agreements and documents related to such enrollment.

11. The identity of all content or facts related to the websites www.ripoffreport.com and/or www.badbusinessbureau.com that has been created, edited, formatted, added, and/or removed by Defendants.

**B.    Defendants' Issues for Potential Discovery.**

1. All facts that support Plaintiff's first claim for relief, defamation/libel.

2. All facts that support Plaintiff's second claim for relief, interference with business relationships.

3. All facts that support Plaintiff's third claim for relief, Texas business disparagement.

4. All facts that support Plaintiff's fourth claim for relief, civil conspiracy.

5. All facts that support Plaintiff's fifth claim for relief, violation of the Racketeer Influenced and Corrupt Organizations Act (RICO), 18 U.S.C. §1962(c).

6. All facts that support Plaintiff's sixth claim for relief, violation of RICO, 18 U.S.C. § 1962(d).

7. All facts which support or otherwise relate to Plaintiffs' contention that Defendants published, created, solicited, or developed any of the statements at issue in this matter.

8. All facts that support the application of the doctrine of unclean hands as set forth in Defendants' Second Affirmative Defense.

9. All facts that support Defendants' Third Affirmative Defense of truth.

10. All facts that support Defendants' assertion that they lacked actual malice and/or negligence sufficient to support a claim of defamation or disparagement as set forth in Defendants' Fourth Affirmative Defense.

11. All facts relating to or in support of Defendants' affirmative defense of the Communication Decency Act.

12. All current and/or former customers of Plaintiff who have been unsatisfied with Plaintiff's services.

13. All communications between Plaintiff and Dickson Woodard.

14. All communications between Plaintiff and any companies and/or individuals who are currently or have previously litigated against Defendants.

IV. **Proposed Plan for Discovery.**

The Plaintiff sees no need for discovery to be conducted in phases or limited to or focused on particular issues at this time.

Defendants propose to bifurcate discovery such that discovery on the issue of whether Defendants authored content posted on ripoffreport.com regarding Plaintiff is completed first, then dispositive motions are decided based on the Communications Decency Act. If the case survives such motions, the remaining discovery can be completed.

V.      **Proposed Changes in Discovery Rules.**

At this time, the parties see no need for changing the limitations on discovery imposed under the Federal Rules of Civil Procedure and the Local Rules of this Court.

VI.     **Trial Setting.**

A jury trial has been demanded. *See* Plaintiff's Original Complaint ¶ 84. Trial is estimated to last a week, and is requested by Plaintiff to begin on or around September 1, 2008. Defendant proposes December 10, 2008.

VII.    **Settlement Negotiations.**

At this time, the parties have not had any settlement discussions. Nevertheless, the parties remain amenable to mediation.

VIII.   **Initial Disclosures.**

GW Equity agrees to serve its Initial Disclosures on October 9, 2007 pursuant to Rule 26(a) and will supplement such disclosures as necessary. Defendants agree to produce their Initial Disclosures on October 12, 2007.

IX.     **Use of Magistrate at Trial.**

Plaintiff consents to a jury trial before a United States Magistrate Judge. Defendants do not consent to a jury trial before a United States Magistrate Judge.

X. **Mediation and Arbitration.**

The parties agree that mediation would be beneficial after limited discovery. The parties have discussed possible dates for mediation and are in the process of finding a mutually agreeable time and place to hold the mediation as well as a possible mediator.

XI. **Additional Proposals.**

At this time, the parties see no need for any additional scheduling or discovery provisions or proposals.

XII. **Conference with the Court.**

At this time, the parties see no need for a conference with the Court. However, if any discovery issues arise, the parties agree to meet and confer with each other prior to addressing the issue with the Court.

XIII. **Other Relevant Matters.**

At this time, the parties have nothing further to present to the Court relevant to the Scheduling Order.

Dated: October 9, 2007    Respectfully submitted,

/s/ John T. Cox III
John T. Cox III
Texas Bar No. 24003722
**LYNN TILLOTSON & PINKER, L.L.P.**
750 N. St. Paul Street, Suite 1400
Dallas, Texas 75201
(214) 981-3800 Telephone
(214) 981-3839 Facsimile

**ATTORNEY FOR PLAINTIFF
GW EQUITY, LLC**

- and -

/s/ Maria Crimi Speth
Maria Crimi Speth, Esq.
**JABURG & WILK, PC**
3200 North Central Avenue, Suite 2000
Phoenix, Arizona 85012
mcs@jaburgwilk.com
Tel: (602) 248-1000
Direct: (602) 248-1089
Fax: (602) 248-0522

Jeffrey S. Seeburger
**KANE RUSSELL COLEMAN & LOGAN, P.C.**
3700 Thanksgiving Tower
1601 Elm Street
Dallas, TX 75201
Tel: (214) 777-4200
Direct: (214) 777-4275
Fax: (214) 777-4299
jseeburger@krcl.com

**ATTORNEYS FOR DEFENDANTS**

## CERTIFICATE OF SERVICE

The undersigned does hereby certify that a true and correct copy of the foregoing was served upon the following counsel via ECF on October 9, 2007.

Maria Crimi Speth, Esq.
Jaburg & Wilk, PC
3200 North Central Avenue, Suite 2000
Phoenix, Arizona 85012
mcs@jaburgwilk.com
Tel: (602) 248-1000
Direct: (602) 248-1089
Fax: (602) 248-0522

Jeffrey S. Seeburger
Kane Russell Coleman & Logan, P.C.
3700 Thanksgiving Tower
1601 Elm Street
Dallas, TX 75201
Tel: (214) 777-4200
Direct: (214) 777-4275
Fax: (214) 777-4299
jseeburger@krcl.com

/s/ John T. Cox III
John T. Cox III