# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF TEXAS
# DALLAS DIVISION

| | |
|---|---|
| GW EQUITY, LLC, § | |
| Plaintiff, § | |
| § | Civil Action No. 3:07-CV-0976-O |
| § | |
| v. § | |
| § | |
| XCENTRIC VENTURES, LLC, et al., § | |
| Defendants. § | |

## FINDINGS, CONCLUSIONS, AND RECOMMENDATION
## OF THE UNITED STATES MAGISTRATE JUDGE

On September 9, 2008, under the authority of 28 U.S.C. §636(b), the District Court referred the Motion for Summary Judgment of Defendants Xcentric Ventures and Edward Magedson ("Defendants") (doc 164) to the United States Magistrate Judge for a recommendation for disposition of the motion. The findings, conclusions, and recommendation of the United States Magistrate Judge follow:

## BACKGROUND

### A.   The Parties

Plaintiff GW Equity ("GW") is a mergers and acquisition firm which acts as a consultant to middle-market business owners who seek to sell or merge their businesses. Defendant Xcentric Ventures ("Xcentric") is an Arizona-based Limited Liability Company ("LLC") which operates two websites, www.RipoffReport.com("ROR") and www.BadBusinessBureau.com (collectively, the "websites"). (Defs.' Separate Statement of Facts "DSOF".) Defendant Edward Magedson is the Manager of Xcentric and Editor of the Ripoff Report. (Doc. 166, Defs.' Appx., Ex. 28, Magedson Decl.) The Ripoff Report is a public message board which allows users, at no charge,

to post and review complaints about businesses and individuals. (DSOF ¶ 4.)

**B.      Procedural History**

Defendants published certain complaints regarding GW's business practices between November 2, 2006, and November 29, 2006. (Pl.'s Resp. at 2.) On June 1, 2007, GW brought suit against Xcentric, Magedson, ROR, and www.badbusinessbureau.com. (Pl.'s Resp. at 1.) On March 20, 2008, GW filed a First Amended Complaint suing Xcentric and Magedson for defamation, business disparagement, tortious interference, disclosure of trade secrets and confidential information, and civil conspiracy. (First Am. Compl. at 15-20.) Defendants now move for summary judgment, claiming: (1) Defendants are immune from GW's claims under the Communications Decency Act, 47 U.S.C. § 230(c)(1) ("CDA"), and (2) GW has no admissible evidence to support its claims. (Defs.' Mot. Summ. J. at 1.) GW responds that Defendants published defamatory statements about GW on the websites, and they develop, write, create, edit, and publish information contained in the Titles and Headings on the websites. (Pl.'s Resp. at 1.)

## STANDARD OF REVIEW

Rule 56 "mandates the entry of summary judgment, after adequate time for discovery and upon motion against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *See Celotex Corp. v. Catrett*, 477 U.S 317, 322 (1986). The party moving for summary judgment must "demonstrate the absence of a genuine issue of material fact," but need not negate the elements of nonmovant's case. *Id.* at 323. If the moving party meets the initial burden, the nonmovant must go beyond the pleadings and designate specific facts showing that there is a genuine issue for trial. *Id.* at 325. In making a summary judgment determination, "doubts are to

be resolved in favor of the nonmoving party, and any reasonable inferences are to be drawn in favor of that party." *See Evans v. City of Bishop*, 238 F.3d 586, 589 (5th Cir. 2000). When both parties have submitted evidence of contradictory facts, factual controversies are to be resolved in favor of the nonmovant. *See Lujan v. Nat'l Wildlife Fed.*, 497 U.S. 871, 888 (1990). Therefore, summary judgment is appropriate when, considering all of the allegations and evidence, and drawing all inferences in the light most favorable to the nonmovant, there is no genuine issue of material fact. *See Little v. Liquid Air Corp.* 37 F.3d 1069, 1075 (5th Cir. 1994).

## ANALYSIS

### Immunity Under the Communications Decency Act

The CDA immunizes interactive computer services from any cause of action that would make them liable for publishing information provided by a third party user of the service.[1] 47 U.S.C. § 230(c)(1).[2] Defendants allege they are immune from GW's claims under the CDA because (1) third parties, rather than Defendants, created the reports at issue, and (2) GW has no proof that Defendants' employees created the titles, headings, and categories at issue. (Defs.' Mot.

---

[1] *See, e.g., Carafano v. Metrosplash.com, Inc.*, 339 F.3d 1119, 1122 (9th Cir. 2003) (upholding immunity for a computer match-making service when false content in a dating profile was provided by a third party); *Green v. America Online*, 318 F.3d 465, 470-71 (3d Cir. 2003) (upholding immunity for the transmission of defamatory messages and a program designed to disrupt the recipient's computer); *Ben Ezra, Weinstein, & Co., Inc. v. Am. Online Inc.*, 206 F.3d 980, 985-86 (10th Cir. 2000) (upholding immunity for the on-line provision of stock information even though AOL communicated frequently with the stock quote providers and had occasionally deleted stock symbols and other information from its database in an effort to correct errors).

[2] The term "interactive computer service" is defined as "any information service, system, or access software *provider* that provides or enables computer access by multiple users to a computer server, including specifically a service or system that provides access to the Internet and such systems operated or services offered by libraries or educational institutions." *See* 47 U.S.C. § 230(f)(2) (emphasis added).

Summ. J. at 17-20.) GW responds that the CDA does not bar its claims because Defendants create, develop, edit, and publish titles and headings to the consumer reports, and the titles and headings are at issue here. (Pl.'s Resp. at 3-5.)

As a threshold issue, the Court will consider GW's argument that Defendants have not satisfied their initial burden under Rule 56 to identify record evidence that demonstrates that no genuine issue of material fact exists. Defendants support their motion with a Separate Statement of Facts that cites to Defendants' Appendix. GW's contention is without merit.

Pursuant to the CDA, "[n]o provider or user of an interactive computer service shall be treated as the publisher or speaker of any information provided by another information content provider." 47 U.S.C. § 230(c)(1). The Fifth Circuit Court of Appeals noted that "Congress provided broad immunity under the CDA to Web-based service providers for all claims stemming from their publication of information created by third parties, referred to as the 'Good Samaritan' provision. *Id.* § 230(c)(1)." *Doe v. MySpace, Inc*. 528 F.3d 413, 418-419 (5th Cir. 2008). Further, the CDA provides that "[n]o cause of action may be brought and no liability may be imposed under any State or local law that is inconsistent with this section." *Id.* § 230(e)(3).[3]

---

[3] Congress enacted this provision for two basic policy reasons: "to promote the free exchange of information and ideas over the Internet and to encourage voluntary monitoring for offensive or obscene material." *Batzel v. Smith*, 333 F.3d 1018, 1026-30 (9th Cir. 2003) (recounting the legislative history and purposes of this section). "Congress incorporated these ideas into the text of § 230 itself, expressly noting that 'interactive computer services have flourished, to the benefit of all Americans, with a minimum of government regulation,' and that '[i]ncreasingly Americans are relying on interactive media for a variety of political, educational, cultural, and entertainment services.' 47 U.S.C. § 230(a)(4), (5)." *Carafano*, 339 F.3d at 1123. "Congress declared it the 'policy of the United States' to 'promote the continued development of the Internet and other interactive computer services,' 'to preserve the vibrant and competitive free market that presently exists for the Internet and other interactive computer services,' and to 'remove disincentives for the development and utilization of blocking and filtering technologies.' 47 U.S.C. § 230(b)(1), (2), (4)." *Id*.

In accordance with the CDA, Defendants will be entitled to immunity from GW Equity's claims if they are able to establish that: (1) they are "provider[s] or user[s] of an interactive computer service"; (2) the claim treats them "as the publisher or speaker" of information; and (3) the claim against them is based on "information provided by another information content provider." *See Universal Communications Systems, Inc. v. Lycos, Inc.,* 478 F.3d 413, 418 (1st Cir. 2007). GW disputes only the third requirement.

At issue is whether there is a genuine issue of material fact with respect to whether GW's claims are based on "information provided by another information content provider." The CDA defines an "information content provider" as "any person or entity that is responsible, in whole or in part, for the creation or development of information provided through the Internet or any other interactive computer service." 47 U.S.C. § 230(f)(3). Accordingly, this Court must review the summary judgment evidence to determine whether a fact issue exists regarding whether the users of the ROR website were the sole information content providers of the postings about GW Equity, or whether Defendants were responsible, in whole or in part, for the creation or development of the information contained in these postings. *See Batzel,* 333 F.3d at 1031; *see also Carafano,* 339 F.3d at 1125 (noting that the CDA would operate to bar the plaintiff's claim unless the defendant "created or developed the particular information at issue.").

GW relies heavily upon the case of *MCW, Inc. v. Badbusinessbureau.com*, No. 3:02-CV-2727-G, 2004 WL 833595, at *9 n.10 (N.D. Tex. Apr. 19, 2004), characterizing it as factually similar and involving the same issue. The Court disagrees with both of these assessments. In *MCW*, Magedson argued, in a motion to dismiss, that he qualified for immunity under the CDA as

a provider of an interactive computer service because he operated the ROR website. *See id.* at *9. The court found that Magedson was not a provider or user of an interactive computer service. *See id.* In reaching this conclusion, the court noted that the defendants failed to provide any evidence establishing that Magedson was a provider or user of an interactive computer service, and that "more importantly," Defendants had "consistently portrayed Magedson as an individual who neither own[ed] nor operate[d]" the ROR website. *See id.* In this case, GW does not claim that Magedson was not a provider or user of an interactive computer service.

The circumstances and the facts that were at issue in *MCW* are distinguishable from those before the Court. In *MCW*, the court noted that the defendants failed to dispute the plaintiff's "allegations that they personally write and create numerous disparaging and defamatory messages about [plaintiff] in the form of report titles and various headings," and created and posted other disparaging editorial messages about the plaintiff. *See MCW, Inc*. 2004 WL 833595, at *9-10. Additionally, the plaintiff alleged that Magedson encouraged a consumer to take photos of (1) the owner, (2) the owner's car with license plate, (3) the owner handing out Rip-off Reports in front of the business, and (4) the sign in the background with the Rip-off Reports in hand, all so that the defendants could include these photos on the website. Taking all the well-pleaded facts as true and viewing them in the light most favorable to the plaintiff as the court was required to do on a 12(b)(6) motion, the court found defendants could "not disclaim responsibility for disparaging material that they actively solicited." *See id.*, at *10. The allegations, which the defendants neither denied nor addressed, suggested that the defendants were responsible for the materials created and developed by the consumer. *See id*. The defendants in *MCW* had gone substantially beyond the traditional publisher's editorial role and had participated in the process of developing information.

6

The court denied the defendants immunity under the CDA and dismissed the case on jurisdictional grounds without any decision on the merits. *See id.* Accordingly, *MCW* is both factually and legally distinguishable from this case.

GW's reliance on *Fair Housing Council of San Fernando Valley v. Roommates.com*, LLC ("*Roommates II*"), 521 F.3d 1157 (9th Cir. 2008) (en banc) is similarly misplaced. *Roommates II* involved a unique set of facts. The defendant operated a website that allowed users to look for roommates and to post information about rooms offered for rent. Each user was required to answer questions about his or her sex, sexual orientation, and number of children *See Roommates II*, 521 F.3d at 1161-62. The Ninth Circuit Court of Appeals found that the Roommates website violated the Fair Housing Act (FHA) by screening prospective housing applicants on the basis of race. However, in *Roommates II*, it was very clear that the website directly participated in developing the alleged illegality. *Roommates II*, 521 F.3d at 1174. The court in that case found that the CDA protected the web site with regard to "Additional Comments," which the website published as written. The court distinguished enhancement by implication or development by inference, such as by reference to the "Additional Comments" opportunity in *Roommates II*, noting that § 230 "must be interpreted to protect websites not merely from ultimate liability, but from having to fight costly and protracted legal battles." *Id*. at 1175.

Defendants' provision of a broad choice of categories from which a user must make a selection in order to submit a report is not sufficient to treat Defendants as information content providers of the reports about GW that contain the "ripoff," "scam" and "Liars" titles. *See Whitney Information Network, Inc. v. Xcentric Ventures, LLC*, No. 2:04-CV-47-FtM-34SPC, 2008 WL 450095, at *7 -13 (M.D.Fla. Feb. 15, 2008); *Global Royalties, Ltd. v. Xcentric Ventures,* 554 F.

7

Supp.2d 929, 932 (D.Ariz. 2008); *see also Carafano,* 339 F.3d at 1124;[4] *Prickett v. InfoUSA, Inc.,* 561 F. Supp.2d 646, 651 (E.D.Tex. 2006).

GW claims that the deposition testimony of Dickson Woodard and Gene Sartin, taken in a case in state court, raises a genuine issue of material fact as to whether Defendants write the titles or headings of the reports as well as other content on the website. (Pl.'s Resp. at 15.) The depositions in question were given in a case in state court to which Defendants were not parties. *See GW Equity, LLC v. Dickson Woodard*, et al. No. 06-12231 (116th Dist. Ct., Dallas County, Tex. Sept. 28, 2007). Defendants were not present or represented at the taking of the depositions. Under FED. R. CIV. P. 32(a), the depositions may not be used against Defendants in this case. Additionally, GW relies upon an affidavit of Joshua R. Bammel which states that although he wrote some of the reports regarding GW Equity and posted them on the websites, he did not write the titles of the reports. (Bammel Aff. ¶¶ 9-10, Pl.'s Appx 226.) However, in Bammel's deposition, he stated that he authored Reports #278636, 298273, 298308 but that he did not recall writing the titles. (Defs. Appx. 0022-032.) He testified that he was drinking heavily when he posted all three of the reports, that he doesn't "have a clue" what he wrote, and that "after four or five Crown and Cokes, man, you aren't going to remember what you wrote." (Bammel Depo. at 145, Pl.'s Appx. 434.) The content monitors who reviewed the three reports stated that they did not write the titles, add words to the titles, or change the titles, except maybe geographic references if they were duplicative. (Defs. Appx. 009, 017, 003.) Personal knowledge must be

---

[4] "[R]eviewing courts have treated § 230(c) immunity as quite robust, adopting a relatively expansive definition of 'interactive computer service' and a relatively restrictive definition of 'information content provider.'" *Carafano*, 339 F.3d at 1122.

established before the testimony of any witness may be admitted. *See* FED. R. EVID. 602 (stating a witness may not testify to a matter unless evidence is introduced sufficient to support a finding that the witness has personal knowledge of the matter). Bammel's affidavit is not competent summary judgment evidence because in Bammel's deposition, he called into question the reliability of his own affidavit. Bammel admitted in his deposition that he did not have personal knowledge of whether or not he wrote the titles to the reports. Bammel's affidavit does not raise a genuine issue of material fact with respect to whether Defendants wrote the titles to the three reports.

When a person posts a report on ROR, the user is required to sign up for a free account with the ROR website. The user profile provided by the author is captured and preserved and whenever that user submits a posting, the database automatically cross-references that posting with the user profile and captures and preserves the IP address from which the user posted. Defendants provided an administrative print out of that information to this Court, and this Court has reviewed it *in camera*. The report shows the IP addresses and locations involved in the reports and rebuttals about GW. The report also shows the IP addresses of the ROR servers, mail server, and machines used by the staff of ROR and the IP addresses of the content monitors who work from their homes. None of the latter match the IPs of either a report or a rebuttal. (Docs. reviewed *in camera* pursuant to July 8, 2008 Order, doc. 193.)

Magedson and all of the individuals who had administrative access to the ROR website provided declarations attesting that they did not author or submit any of the postings regarding GW and did not add any content to these postings. (Doc. 166, Defs.' Appx., Ex. 28, Magedson Decl.) Defendants had a policy against adding any content to reports. (Doc. 7, Magedson Decl. In Supp. of Defs.' Opp. To Pl.'s Mot for Prelim. Inj. at ¶ 8.) "In fact, in 2003, changes were made to the

9

technical end of the ROR Site such that if a content monitor changed a category, that change would not be activated and the report would be posted in the category chosen by the author." *Id*. The database of the ROR site automatically records any access by any agent of Defendants into a report. (Defs. Appx. 0018-21.)

In his deposition in this case, Dickson Woodard, a former GW employee, testified that he was the author of Reports numbers 218734, 222793, 222796, and 219512 and that he wrote the titles. He also wrote the title to #222795. (Defs. Appx. 0143.) The content monitor who reviewed Report # 253345 testified in her deposition that she did not add the title and that she would not have added any words to the title except perhaps the geographical State. (Defs. Appx. O110-11, 0012-13, 0015.) The content monitor who reviewed and posted Report #256581 testified in her deposition that she did not change or add anything to the title of the report and believes that she did not move the report into the category "corrupt companies." (Defs. Appx. 0015.) If she had changed the category, the program would have overwritten her change. (Doc. 166, Defs.' Appx., Ex. 28, Magedson Decl.) The content monitor who reviewed and posted Report #264983 testified that she does not add anything to reports and she does not add anything to a title of a report. (Defs. Appx. 0006-07.) The only content monitor who reviewed and posted Report #265371 testified that she did not write the title of the report, and there are no changes to that title that she would have made, except possibly removing a duplicate geographic reference if it was doubled. (Defs. App. 0009.)

Defendants did not solely provide users with a selection of categories that were negative and/or defamatory in nature. (Doc. 166, Defs.' Appx., Ex. 28, Magedson Decl.) GW has not provided the Court with any evidence to create a genuine issue of fact as to whether Defendants

10

played a role in creating or developing the postings regarding GW that are at issue here. Defendants have made and supported a motion for summary judgment as provided in Rule 56. GW has failed to set forth specific facts showing a genuine issue of material fact for trial with respect to GW's claim that Defendants are not entitled to immunity because they are information content providers of the reports about which GW complains.

GW further asserts that Defendants have engaged in activities that preclude them from obtaining summary judgment based upon the immunity afforded by the CDA, such as destroying evidence. (Pl.'s Resp. at 16-18.) The Court, by separate order, has denied GW's claim that it is entitled to sanctions because Defendants destroyed evidence. The claim need not be addressed here. Further, in light of the Court's findings with respect to Defendants' immunity under the CDA, the Court need not consider Defendants' arguments that res judicata, collateral estoppel, or judicial estoppel bars GW from proceeding in this case.

Finally, GW contends that Defendants are not entitled to summary judgment because Defendants offer the services of its "Corporate Advocacy Program" to "companies that have the misfortune of being defamed on Defendants' websites." (Pl.'s Resp. at 56.) Defendants explain that, as a matter of policy, the website never removes a rip-off report, once it has been posted. (Pl.'s Appx. 164-68.) Instead, the website invites concerned parties to write rebuttals to the "rip-off reports" with which they disagree. (*Id*.) Those rebuttals appear beneath the original report. (*Id*.) In addition, Defendants have created the "Rip-off Report Corporate Advocacy Business Remediation & Consumer Satisfaction Program," pursuant to which, for a fee, the defendants will investigate "rip-off reports" targeting member companies and will post more prominent rebuttals to those reports. (*Id*.) GW has not cited any case law in which this conduct was considered a bar

to a defendant's assertion of CDA immunity. Unless Congress amends the CDA, it is not a bar to immunity for an Internet provider to refuse to remove defamatory material created by a third party, or to otherwise use it to their advantage, even though the Internet provider's conduct may be considered reprehensible and offensive. Through the CDA, "Congress granted most Internet services immunity from liability for publishing false or defamatory material so long as the information was provided by another party." *Carafano,* 339 F.3d at 1122. Here, the material was unequivocally provided by another party. GW's contention that Defendants' conduct after the postings should bar them from receiving CDA immunity is without merit.

## RECOMMENDATION

Defendants have pointed to the absence of a genuine issue of material fact regarding their immunity under the CDA. Plaintiff has not raised a material fact issue regarding whether Defendants were information content providers for the information at issue here. This Court recommends that the District Court **grant** Defendants' Motion for Summary Judgment because Plaintiff's claims are barred, as a matter of law, by the CDA.

SO RECOMMENDED, this 8th day of October, 2008.

**PAUL D. STICKNEY**
**UNITED STATES MAGISTRATE JUDGE**

## **INSTRUCTIONS FOR SERVICE AND**
## **NOTICE OF RIGHT TO APPEAL/OBJECT**

The United States District Clerk shall serve a true copy of these findings, conclusions, and recommendation on the parties. Pursuant to Title 28, United States Code, Section 636(b)(1), any party who desires to object to these findings, conclusions, and recommendation must serve and file written objections within ten days after being served with a copy. A party filing objections must specifically identify those findings, conclusions, or recommendation to which objections are being made. The District Court need not consider frivolous, conclusory, or general objections. A party's failure to file such written objections to these proposed findings, conclusions, and recommendation shall bar that party from a *de novo* determination by the District Court. *See Thomas v. Arn*, 474 U.S. 140, 150 (1985). Additionally, any failure to file written objections to the proposed findings, conclusions, and recommendation within ten days after being served with a copy shall bar the aggrieved party from appealing the factual findings and legal conclusions of the Magistrate Judge that are accepted by the District Court, except upon grounds of plain error. *See Douglass v. United Services Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996) (en banc).