UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| GW EQUITY, LLC, | ) | |
|     Plaintiff, | ) | CIVIL ACTION NO. |
| v. | ) | 3:07-CV-0976-O |
| XCENTRIC VENTURES, LLC., et al., | ) | |

## FINDINGS, CONCLUSIONS, AND RECOMMENDATION
## OF THE UNITED STATES MAGISTRATE JUDGE

On August 14, 2008, the District Court referred "Plaintiff's Motion for Sanctions Against Defendants for Intentional Spoliation of Relevant Evidence (doc. 180)," filed July 7, 2008, to the United States Magistrate Judge for recommendation or determination. Defendants filed a Response (doc. 199) on July 24, 2008, and Plaintiff filed a Reply (doc. 210) on August 8, 2008. Because Plaintiff seeks dispositive relief,[1] the Court will enter its findings, conclusions, and recommendation.

### Findings and Conclusions

Plaintiff contends that Defendants published defamatory statements about Plaintiff on their website, RipoffReport.com ("ROR") and developed, wrote, created, edited, and published information contained in the Titles and Headings of the defamatory statements. Plaintiff demanded in writing that Defendants remove the false and misleading statements about Plaintiff from ROR. (Email from D. McCreary to E. Magedson, dated Nov. 15, 2006 and Letter from K. Pannell to E. Magedson, dated Jan. 5, 2007; Pl.'s Appx. 52-53.) Defendants refused and Plaintiff filed suit against Defendants on June 1, 2007. (Complaint, Pl.'s App. 1-22.) Plaintiff's Complaint included an

---

[1] Plaintiff requests that this Court (1) enter judgment in its favor on its claims against Defendants and strike Defendants' CDA immunity defense; (2) enter an adverse inference instruction in favor of Plaintiff; (3) preclude Defendants from calling any witness to testify at trial as to how Defendants do not create any content on the websites; (4) award Plaintiff its costs and attorney fees incurred in connection with this motion and with discovery; and (5) award Plaintiff such other and further relief as the Court deems just and proper. (Pl.'s Mot. at 17.)

Emergency Application for Injunctive Relief and Request for Permanent Injunction. (*Id*.) Plaintiff sought an order restraining Defendants from publishing false information about Plaintiff and ordering Defendants to remove the reports about Plaintiff from ROR. (*Id*.) In an Order dated June 6, 2007, the District Court denied Plaintiff's request for an ex parte Temporary Restraining Order but set Plaintiff's preliminary injunction application for a hearing. After the hearing, the District Court denied Plaintiff's preliminary injunction application. (Doc. 27.) Plaintiff filed a First Amended Complaint on March 20, 2008. (Pl.'s Appx. 23-47.)

On August 8, 2007, Plaintiff sent Defendants a letter ("preservation letter") demanding that they "preserve – and not alter in any way – any and all evidence regarding the individuals who posted the Rip-off Reports on [ROR], including electronic date." (Pl.'s Appx. 61-63.) In addition, Plaintiff demanded that Defendants not "[i]nitiate any procedures that would alter any active, deleted, or fragmented data;" "[r]otate, alter, destroy any media that stores electronic data;" "[d]ispose of any media that contains electronic data;" or "[o]verwrite any electronic data." (Pl.'s Appx. 62.)

Plaintiff claims that Defendants destroyed evidence and failed to distribute the preservation letter. During discovery, Plaintiff requested that Defendants produce "the original versions of the postings containing defamatory statements initially submitted to the websites by third-party users." (Pl.'s Appx. 68.) Defendants stated that no such documents exist. (Pl.'s Appx. 85-88.) Defendants' response is that: "Xcentric never has and never will destroy or fail to preserve the data regarding the individuals who posted any report. The user profile provided by the author is captured and preserved and whenever that user submits a posting, the database automatically cross-references that posting with the user profile and captures and preserves the IP address from which the user posted." (Defs.'

2

Resp. at 6.) Defendants claim there was no need to distribute the preservation letter because they already preserved the user profile and IP address from which the user posted. Defendants provided an administrative print out of that information to this Court and this Court has reviewed it *in camera*. It is available to the District Court for review. The report shows that none of the IP addresses of the reports in question came from Defendants' computers or those of the content monitors who work from home. (Docs. reviewed *in camera* pursuant to July 8, 2008 Order, doc. 193.) The Court finds that Defendants did not fail to preserve evidence concerning the individuals who posted the reports.

Defendants maintain a policy of never destroying any documents or electronic information. ( Declarations of Ed Magedson and Ben Smith, Defs.' Appx. 0001-0004.) Plaintiff claims that the deposition of Dickson Woodward proves that Ed Magedson wrote one of the reports. The deposition in question was given in a case in state court to which Defendants were not parties. *See GW Equity, LLC v. Dickson Woodard*, et al. No. 06-12231 (116th Dist. Ct., Dallas County, Tex. Sept. 28, 2007). Defendants were neither present nor represented at the depositions. Under FED. R. CIV. P. 32(a), the depositions may not be used against Defendants in this case. Plaintiff's claim is without merit.

Plaintiff claims that the content monitors said that on occasion they draft and post the titles and headings to reports. The Court has reviewed the deposition testimony of the content monitors. Some of the content monitors testified that they had modified titles, but they qualified their testimony by explaining it had not been done in four or five years. Other content monitors testified that they never added anything to a title. (Defs.' Appx. 0005, Griffith Depo. at 24:15-18 (when asked whether she ever changed a title to a post by modifying it, adding to it, or deleting from it, she responded, "No, sir."); (Defs' Appx. 0006-0007, Thompson Depo. at 16-17 ("I never add anything

3

into a post."))[2]

Defendants do not dispute that if the monitor makes a change to a report, the SQL database saves that change directly into the submitted content. Unlike a word processing program, the SQL database Defendants use is simply not designed to duplicate data before revising it. Moreover, Defendants receive between 500 to1,000 postings per day. (Defs.'Appx. 0008-0009, K. Smith Depo, at 50-51 (explaining that approximately 20-40 reports come in per hour each day)). Defendants state that duplication is not feasible because of the sheer volume and speed at which the data is entered. Defendants contend that Plaintiff inaccurately states that the content monitors "routinely" overwrite electronic data. Defendants insist that the content monitors: (1) do not add content to titles or reports and it is against Xcentric policy to do so; and (2) if they redact data (such as profanity or social security numbers) they reflect the redaction with the word "redaction" or with replacing the letters of a profane word with symbols. Plaintiff contends that because the content monitors work for Defendants, the content monitors have a motive to lie under oath. However, Plaintiff has presented no evidence that anyone has lied under oath. The Court finds that with respect to the specific reports at issue, the content monitors testified that they made no modifications. The undisputed testimony was that the written policy of Xcentric since at least August 2007 is that nothing is ever added to a report or a title. (Defs.' Appx. 0013-0014, Dorton Depo.at 20-21; Defs.' Appx. 0006, Thompson Depo. at 16:3-4). The Court also finds that the before the policy was written in August 2007, the unwritten policy was that nothing was ever added to a report or a title. (Defs.' Appx. 0010-0012, *K. Smith* Depo. at 53:19-25; 54-55, lines 22-2 (explaining that content monitors do not have discretion to add words or content to any postings).

---

[2] The depositions are filed under seal.

The three content monitors who used to add rip-off to some titles testified that they had not done so in many years. (Defs. Appx. 0018, Young Depo. at 10:22-25 ("You know, I have added the word 'rip-off.' Not in the last, I'd say, four, five years -- four years maybe"); Defs.' Appx. 0015-0017, Dorton Depo. at 14:14-15; 24-25, lines 25-4 (explaining that she stopped adding the word "rip-off" to the title of reports a "[v]ery long time ago. Like years."); Defs.' Appx. 0019; Wynn Depo. at 23:10-13 (testifying that they have stopped putting "rip-off" in the title of reports); Defs.' Appx. 0022, Craven Depo. at 32:1-4 (explaining that she would never add anything to a report title in violation of Xcentric policies). "In fact, in 2003, changes were made to the technical end of the ROR Site such that if a content monitor changed a category, that change would not be activated and the report would be posted in the category chosen by the author." (Doc. 7, Magedson Decl. In Supp. of Defs.' Opp. To Pl.'s Mot for Prelim. Inj. at ¶ 8.) The database of the ROR site automatically records any access by any agent of Defendants into a report.

If a content monitor makes any redactions from a report, the redaction is identified in the report itself both with the word "Redacted" and with a link explaining Xcentric's policies on why personal information is redacted from reports. (Defs. Appx. 0023-0026, 0020-0021; Wynn Depo. at 24-25, lines 11-10.) The face of the reports at issue here shows that no information was removed from any reports. Not a single report at issue in this litigation has any notation showing that any information was redacted, meaning that the information that is published on the Rip-Off Report website today is the same information that was entered by the author of the report, without any modifications.

## Analysis

"The Fifth Circuit permits an adverse inference against the destroyer of evidence only upon a showing of 'bad faith' or 'bad conduct.'" *Condrey v. SunTrust Bank of Georgia*, 431 F.3d 191, 203 (5th Cir. 2005) (citing *King v. Ill. Cent. R.R.*, 337 F.3d 550, 556 (5th Cir. 2003)). The test is whether the court, "from the fact that a party has destroyed evidence," could draw an inference "that the party did so in bad faith." *S.C. Johnson & Son, Inc. v. Louisville & Nashville Railroad Co.*, 695 F.2d 253, 258–59 (7th Cir. 1982). If a court finds that both evidence destruction and bad faith have been demonstrated, it may then infer that the evidence would be unfavorable to the destroying party if it were introduced in court. *Eaton Corp. v. Appliance Valves Corp.*, 790 F.2d 874, 878 (Fed. Cir. 1986). Courts generally do not draw an inference of bad faith when documents are destroyed under a routine policy. *See Vick v. Texas Employment Com'n*, 514 F.2d 734, 737 (5th Cir. 1975).

After a review of the record, the Court finds no evidence that Defendants intentionally destroyed evidence. Further, no evidence exists that Defendants acted in bad faith. Additionally, although Defendants failed to suspend their policy of allowing content monitors to save the reports with their edits (if any) as the sole record of the report, Plaintiff was not prejudiced because the record shows that no edits were made on the reports at issue here. Additionally Defendants' database had no capability that would allow the content monitors to save both the hypothetical "original" posting and the published posting showing any redaction of personal information or addition of the word "ripoff" to the title.

## Recommendation

Plaintiff has not met any of the prerequisites to show that sanctions for spoliation of evidence are warranted. Accordingly, Plaintiff's Motion for Sanctions should be DENIED.

IT IS SO RECOMMENDED, October 8, 2008.

_____
PAUL D. STICKNEY
UNITED STATES MAGISTRATE JUDGE

## INSTRUCTIONS FOR SERVICE AND
## NOTICE OF RIGHT TO APPEAL/OBJECT

The United States District Clerk shall serve a true copy of these findings, conclusions, and recommendation on the parties. Pursuant to Title 28, United States Code, Section 636(b)(1), any party who desires to object to these findings, conclusions, and recommendation must serve and file written objections within ten days after being served with a copy. A party filing objections must specifically identify those findings, conclusions, or recommendation to which objections are being made. The District Court need not consider frivolous, conclusory, or general objections. A party's failure to file such written objections to these proposed findings, conclusions, and recommendation shall bar that party from a *de novo* determination by the District Court. *See Thomas v. Arn*, 474 U.S. 140, 150 (1985). Additionally, any failure to file written objections to the proposed findings, conclusions, and recommendation within ten days after being served with a copy shall bar the aggrieved party from appealing the factual findings and legal conclusions of the Magistrate Judge that are accepted by the District Court, except upon grounds of plain error. *See Douglass v. United Services Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996) (en banc).