IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

GW EQUITY LLC,                        §
                    Plaintiff,        §
                                      §
v.                                    §        CIVIL ACTION NO. 3:07-CV-976-O
                                      §
XCENTRIC VENTURES LLC, et al.,        §
                    Defendants.       §

## MEMORANDUM OPINION AND ORDER RESOLVING OBJECTIONS AND AFFIRMING FINDINGS AND RECOMMENDATION OF THE UNITED STATES MAGISTRATE JUDGE

On June 2, 2008, this Court referred Defendants' Motion for Summary Judgment (Doc. # 164) to the magistrate judge for recommendation. *See* Order of Reference (Doc. # 225). On October 8, 2008, the magistrate judge found that Defendants pointed to the absence of a genuine issue of material fact, and that Plaintiff failed to raise an issue, regarding Defendants' immunity under the Communications Decency Act ("CDA"). Based on this finding, the magistrate judge recommended that this Court grant Defendants' Motion for Summary Judgment because Plaintiff's claims are barred, as a matter of law, by the CDA. Plaintiff filed a timely objection to the magistrate judge's findings and recommendation.

Having determined *de novo* those parts of the magistrate judge's findings and recommendation to which Plaintiff has objected, the Court affirms the magistrate judge's order and **GRANTS** Defendants' Motion for Summary Judgment.

## I.     Background[1]

Plaintiff GW Equity ("Plaintiff") is a mergers and acquisition firm which acts as a consultant to business owners who seek to sell or merge their business.  Doc. No. 109 (3:07-CV-976-O) (N.D. Tex. Mar. 20, 2008) ("Amd. Compl.").  Defendant Xcentric Ventures, LLC operates a website known as "The Rip-Off Report," which is located at www.ripoffreport.com and www.badbusinessbureau.com ("websites").  Doc. No. 166 (3:07-CV-976-O) (N.D. Tex. Jun. 2, 2008) ("Defs' Appx").[2]  Defendant Edward Magedson is the manager of Xcentric Ventures, LLC.  *Id.*  Plaintiff alleges Xcentric Ventures LLC, www.ripoffreport.com, www.badbusinessbureau.com, and Edward Magedson (collectively "Defendants") published defamatory reports about Plaintiff on their websites, and developed, wrote, created, edited, and published information contained in the titles and headings of the reports.  Plaintiff demanded in writing that Defendants remove these statements.  Doc. No. 186 (3:07-CV-976-O) (N.D. Tex. Jul. 7, 2008) ("Pl's Appx.").[3]  Defendants refused and Plaintiff filed suit on June 1, 2007. Plaintiff brings claims for defamation/libel, interference with business relationship, business disparagement, disclosure of trade secrets and confidential information, and civil conspiracy, and asks the court to permanently enjoin Defendants from disseminating, using, or publishing disparaging comments about Plaintiff.  Amd. Compl.

---

[1]  A detailed summary of the underlying facts is provided within the magistrate judge's Findings and Recommendation regarding Defendants' Motion for Summary Judgment, as well as the magistrate judge's Findings and Recommendation regarding Plaintiff's motion for sanctions.  *See* Doc. Nos. 241, 242 (3:07-CV-976-O) (N.D. Tex. Oct. 8, 2008).

[2]  Defendants' appendix in support of its motion for summary judgment is found at docket numbers 166 and 179, with all sealed materials at docket entry 179.

[3]  Plaintiff's appendix is found at docket numbers 186 and 205, with all sealed materials at docket entry 205.

Defendants move for summary judgment on all of Plaintiff's claims, alleging the undisputed evidence shows that (1) Plaintiff has no admissible evidence to support its claims, and (2) Plaintiff's claims are barred by the Communications Decency Act, 47 U.S.C. § 230(c)(1) ("CDA"). Doc. No. 164 (3:07-CV-976-O) (N.D. Tex. Jun. 2, 2008) ("Defs' Mot."). Plaintiff responds that the CDA does not bar its claims because Defendants are "information content providers" in that they created and developed titles and headings to the published reports regarding Plaintiff. Doc. No. 184 (3:07-CV-976-O) (N.D. Tex. Jul. 7, 2008) ("Pl's Resp."). Plaintiff also argues that Defendants are not entitled to CDA immunity because they profit by publication of defamatory content on their websites. *Id.*

On October 8, 2008, the magistrate judge found that the undisputed evidence before the Court demonstrates that Defendants are entitled to immunity under the CDA. *See* Doc. No. 241 (3:07-CV-976-O) (N.D. Tex. Oct. 8, 2008) ("FRC"). Based on this finding, the magistrate judge recommends this Court grant Defendants' Motion for Summary Judgment. *Id.* Plaintiff objects on a variety of grounds. *See* Doc. No. 245 (3:07-CV-976-O) (N.D. Tex. Oct. 24, 2008) ("Pl's Obj."). The Court now considers Plaintiff's objection.

## II.     Standard of Review

A district court must determine *de novo* any portion of the magistrate judge's conclusions and recommendations on dispositive matters to which the parties have filed specific, written objections. *See* 28 U.S.C. § 636(b)(1)(c); FED. R. CIV. P. 72(b); *Parks v. Collins*, 761 F.2d 1101, 1104 (5th Cir. 1985). The district court may accept, reject, or modify, in whole or in part, those portions of the proposed findings and recommendations. *See* FED. R. CIV. P. 72(b).

## III.    Summary Judgment Standard

Summary judgment is proper when the pleadings and evidence on file show that no genuine issue exists as to any material fact and that the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c). "[T]he substantive law will identify which facts are material." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). A genuine issue of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Id.* The movant makes a showing that there is no genuine issue of material fact by informing the court of the basis of its motion and by identifying the portions of the record which reveal there are no genuine material fact issues. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); FED. R. CIV. P. 56(c).

Once the movant makes this showing, the non-movant must then direct the court's attention to evidence in the record sufficient to establish that there is a genuine issue of material fact for trial. *Celotex*, 477 U.S. at 323-24. To carry this burden, the "opponent must do more than simply show. . . some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 586 (1986). Instead, the non-movant must show that the evidence is sufficient to support a resolution of the factual issue in his favor. *Anderson*, 477 U.S. at 249. Neither conclusory allegations nor unsubstantiated assertions will satisfy the non-movant's summary judgment burden. *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc); *Topalian v. Ehrman*, 954 F.2d 1125, 1131 (5th Cir. 1992). The party opposing summary judgment is required to identify specific evidence in the record and to articulate the precise manner in which that evidence supports his claim. *Ragas v. Tenn. Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998). Summary judgment in favor of the Defendant is

proper if, after adequate time for discovery, the Plaintiff fails to establish the existence of an element essential to her case and to which she will bear the burden of proof at trial. *Celotex*, 477 U.S. at 322-23.

When weighing the evidence on a motion for summary judgment, the court must decide all reasonable doubts and inferences in the light most favorable to the non-movant. *See Walker v. Sears, Roebuck & Co.*, 853 F.2d 355, 358 (5th Cir. 1988). The court cannot make a credibility determination in light of conflicting evidence or competing inferences. *Anderson*, 477 U.S. at 255. As long as there appears to be some support for the disputed allegations such that "reasonable minds could differ as to the import of the evidence," the motion for summary judgment must be denied. *Id.* at 250.

## IV.    Analysis

The Communications Decency Act provides that "[n]o provider or user of an interactive computer service shall be treated as the publisher or speaker of any information provided by another information content provider." 47 U.S.C. § 230(c)(1).[4] It further provides that "[n]o cause of action may be brought and no liability may be imposed under any State or local law that is inconsistent" with this immunity provision. *Id.* at § 230(e)(3). The CDA defines an "information content provider" as "any person or entity that is responsible, in whole or in part, for the creation or development of information provided through the Internet or any other interactive computer service." 47 U.S.C. § 230(f)(3). Thus, under the CDA, an interactive

---

[4] The CDA also provides that no interactive computer service is liable for "any action voluntarily taken in good faith to restrict access to or availability of material that the provider or user considers to be obscene, lewd, lascivious, filthy, excessively violent, harassing, or otherwise objectionable" or for providing "technical means to restrict access" to such material. 47 U.S.C. § 230(c)(2).

computer service qualifies for immunity so long as it does not also function as an information content provider for the portion of the content at issue. *See Carafano v. Metrosplash.com, Inc.*, 339 F.3d 1119, 1123 (9th Cir. 2003). Courts have construed immunity under the CDA broadly in all cases arising from the publication of user-generated content. *Doe v. Myspace, Inc.*, 528 F.3d 413, 418 (5th Cir. 2008).

Plaintiff objects to the magistrate judge's finding that there is no genuine issue of fact regarding whether Defendants are information content providers under the CDA. Specifically, Plaintiff argues that the magistrate judge erred in (a) misapplying *MCW, Inc. v. Badbusinessbureau.com*, No. 3:02-CV-2727-G, 2004 WL 833595 (N.D. Tex. 2004); (b) placing undue weight on case law from other jurisdictions that is distinguishable; (c) improperly weighing evidence establishing that Defendants created content in the form of titles and headings; (d) failing to attribute weight to the fact that Defendants destroyed evidence; (e) incorrectly analyzing the significance of administrative reports; (f) excluding former deposition testimony of non-party witness Dickson Woodard; (g) failing to attribute weight to Mr. Bammel's testimony; and (h) finding Defendants immune even though they profit by the publication of defamatory content on their websites.

**A.    *MCW, Inc. v. Badbusinessbureau.com***

Plaintiff argues that the magistrate judge erred when he refused to consider *MCW, Inc. v. Badbusinessbureau.com*, No. 3:02-CV-2727-G, 2004 WL 833595 (N.D. Tex. Apr. 19, 2004). Plaintiff claims *MCW* is factually analogous precedent that was overlooked by the magistrate.[5]

The Court does not find the magistrate judge refused to consider or overlooked *MCW*.

_____

[5] The plaintiff in *MCW* sued some of the same defendants as Plaintiff sues in this case.

The Court notes the magistrate judge's ruling contains a detailed discussion distinguishing this case from *MCW*. *See* FRC at 5-7.

In addition, *MCW* does not demonstrate that there is a genuine issue of fact regarding whether Defendants are information content providers here. In *MCW*, the court considered, among other things, defendants' motion to dismiss plaintiff's complaint for failure to state a claim. Plaintiff's complaint alleged that defendants had created disparaging titles, headings, and editorial messages. *MCW, Inc.*, 2004 WL 833595 at *10. Defendants did not dispute the substance of these allegations, and instead argued these allegations were insufficient as a matter of law to prevent them from receiving immunity under the CDA. *Id.* The Court denied this argument, noting that titles and headings of reports are part of web page content. *Id.*

Unlike *MCW*, the Defendants in this case dispute the substance of Plaintiff's allegations. Defendants argue that they did not create or develop the titles and headings at issue in this case, not that such allegations are insufficient as a matter of law. *See* Defs' Mot. at 17-20. The magistrate judge found the evidence before the Court failed to create a genuine issue of fact as to whether Defendants are responsible for the creation or development of the postings at issue in this case, and *MCW* does not demonstrate that a fact issue exists. *See* FRC at 10-11. Accordingly, the Court finds that the magistrate judge did not overlook or refuse to consider *MCW*.

**B.    Case law from other jurisdictions**

Plaintiff argues that the magistrate judge erred by placing undue weight on distinguishable case law from other jurisdictions. Specifically, Plaintiff argues that the magistrate judge should not have relied on *Global Royalties, Ltd. v. Xcentric Ventures, LLC*, 544

F.Supp. 2d 929 (D. Ariz. 2007) and *Whitney Info. Network Inc. v. Xcentric Ventures, LLC*, No. 2:04-CV-47-FtM-34SPC, 2008 WL 450095 (M.D. Fla. Feb. 15, 2008). Plaintiff contends that these cases should not be considered because both courts specifically refused to consider the application of *Fair Housing Council of San Fernando Valley v. Roommates.com, LLC*, F.3d 921 (9th Cir. 2007) ("*Roommates I*") because the case was scheduled for an en banc hearing. Plaintiff also argues that the magistrate judge erred in determining that the en banc ruling, *Fair Housing Council of San Fernando Valley v. Roommates.com, LLC*, 521 F.3d 1157 (9th Cir. 2008) ("*Roommates II*"), is inapplicable to this case.

In *Global Royalties, Ltd.* and *Whitney Info. Network Inc.*, defendants argued they were immune from plaintiffs' claims under the CDA.[6] In both cases, defendants operated a website inviting third-party users to post reports about companies. *Global Royalties, Ltd.*, 544 F.Supp. 2d at 930; *Whitney Info. Network Inc.*, 2008 WL 450095 at \*5. However, before posting, users were required to select a category for the report from a list of categories created by defendants. *Global Royalties, Ltd.*, 544 F.Supp. 2d at 932; *Whitney Info. Network Inc.*, 2008 WL 450095 at \*5. Plaintiffs argued that since defendants required users to select a category from a list defendants created, defendants were information content providers under the CDA. *Global Royalties, Ltd.*, 544 F.Supp. 2d at 932; *Whitney Info. Network Inc.*, 2008 WL 450095 at \*10. Both courts rejected this argument, finding that providing the list of categories was insufficient participation as a matter of law to make defendants information content providers. *Id.* In *Whitney Info. Network Inc.*, the court noted that the defendants did not solely provide users with

---

[6] As in *MCW*, *Global Royalties, Ltd.* and *Whitney Info. Network Inc.* involve plaintiffs' claims against some or all of the same defendants in this suit.

a selection of negative or potentially defamatory categories to choose from. *Whitney Info.*

*Network Inc.*, 2008 WL 450095 at *10.

In this case, the undisputed evidence shows that Defendants provide a broad choice of

categories from which a user must make a selection in order to submit a report. *See* Pl's Appx.

at 264, 335-337. While some categories are negative, such as the category entitled "corrupt

companies," other categories are neutral, including categories entitled "restaurant," "business

consulting," and "internet providers." Pl's Appx. at 264, 335-337. Based on this undisputed

evidence, the Court finds that the magistrate judge correctly found that Defendants did not lose

immunity under the CDA by requiring posters to chose from a wide range of categories.

In addition, the Court does not find that *Roommates II* requires a different result. In

*Roommates II*, the Ninth Circuit considered whether an operator of an online roommate-

matching website was entitled to immunity under the CDA in a lawsuit alleging violations of the

Fair Housing Act and state law. *Roommates.com, LLC*, 521 F.3d at 1161-62. The website

required users to fill out a profile and provide information on the user's sex, sexual orientation,

and family status. *Id.* Users also had to provide what characteristics they preferred in a

roommate. *Id.* The website also contained an open text box, and encouraged users to add

additional information about themselves and their desired roommate. *Id.* The website would

match people renting a room with individuals looking for a place to live based on their mutual

preferences. *Id.* at 1172. The Ninth Circuit held that the website operator was an "information

content provider" not entitled to CDA immunity for the website's mandatory profile questions

and drop-down menu of answers. *Id.* at 1164-1173. However, the Ninth Circuit held the

operator was immune under the CDA with respect to comments written in the space provided for

additional information.  *Id.*

While the Ninth Circuit found the operator of Roommates.com to be an "information content provider" with respect to its mandatory profile questions and list of answers, *Roommates II* is distinguishable from this case.  In *Roommates II*, the Ninth Circuit examined the scope of plaintiff's substantive claims, and noted that plaintiff alleged violations of state and federal laws that could be violated by "merely posing a question."  *Id.* at 1164.  The court analogized the case to the "physical world" situation where a real estate broker violates the law by inquiring as to the race of a prospective buyer.  *Id.*

In contrast, this case involves claims for defamation/libel, interference with business relationship, business disparagement, disclosure of trade secrets and confidential information, and civil conspiracy.  These are not claims in which a mere question leads to liability.  Additionally, Defendants' websites provide a broad range of categories, including neutral categories, for a user to choose from.  Asking a user to pick a category from the list Defendants provide does not in itself result in defamation/libel, interference with business relationship, business disparagement, disclosure of trade secrets and confidential information, or conspiracy.  In *Roommates II*, the Ninth Circuit did not hold that a website operator loses CDA immunity whenever users are required to answer questions from a drop-down menu.  *See* Roommates.com, LLC, 521 F.3d at 1169 (noting that a dating website that requires users to enter their sex, race, religion, and marital status through drop down menus does not necessarily lose its immunity under the CDA, as it is legal to discriminate along these lines in dating).  Rather, *Roommates II* demonstrates that website operators lose immunity where the questions posed and/or choice of answers is responsible for the creation of development of the alleged harmful content.  The Court

finds that there is no genuine issue of fact that Defendants' provision of a broad choice of categories did not create or develop the alleged harmful conduct here.

Accordingly, the Court finds that the magistrate judge did not err in considering *Global Royalties, Ltd.*, and *Whitney Info. Network Inc*. and in determining that Defendants' provision of a broad choice of categories from which a user must make a selection in order to submit a report is not sufficient to treat Defendants as information content providers.

C.     **Evidence regarding titles and headings**

Plaintiff argues that the magistrate judge erred in finding no issue of fact regarding whether Defendants were information content providers because Plaintiff submitted evidence raising an issue of fact as to who authored the titles, headings, and categories of the postings at issue. Specifically, Plaintiff argues that testimony from "content monitors" employed by Defendants creates a genuine issue of material fact, as content monitors admitted they, on occasion, add content to the titles of postings, including the words "rip-off" and "fraud." Plaintiff contends that even though content monitors could not specifically recall adding words to the postings at issue here, there can be no dispute that Defendants generally engage in the activity, creating a genuine issue of fact.

After a *de novo* review, the Court finds that the evidence fails to raise a genuine issue of material fact regarding who authored and published the titles, headings, and categories of postings about GW Equity. The evidence shows that Defendants employ people ("content monitors") to review reports and remove content that is offensive or personal. Defs' Appx. at 2-3, 12-13, 177-79, 188 (Declaration of Defendant Magedson, stating that after a report is submitted, it is held for examination by a team of "Content Monitors" employed by Xcentric

who briefly review each report in order to remove any obviously offensive or illegal material such as child pornography or social security numbers). The parties have submitted the deposition testimony of content monitors employed by Defendants, including the testimony of Lynda Craven, Paulette Griffin, Garyann Young, Amy Thompson, Kim Smith, Jackie Wynn, and Heather Dorton. *See generally* Defs' and Pl's Appxs. Several content monitors' testimony indicates that they have never added any information to titles or reports.[7] Other content monitors testified that they have added "rip-off" or geographic information to titles, but stopped adding "rip-off" years ago.[8] Ms. Craven was the only content monitor that did not testify unequivocally that it has been several years since she added "rip-off" to a title, but noted that it is not a normal practice of hers to add words to titles and that by at least August 22, 2007, Defendants had a written policy prohibiting adding content to titles.[9] Defs' Appx. at 17; Pl's Appx. at 237, 345. Contrary to Plaintiff's contention that there can be no dispute that Defendants generally engage in the activity of adding words to postings, the evidence before the Court demonstrates that content monitors only ever added geographical information or "rip-off," and that it has been

---

[7] There is nothing within the testimony of Ms. Griffin, Ms. Thompson, or Ms. Smith to indicate that these content monitors ever added anything to a report or title. *See* Defs' Appx. at 2-7; Pl's Appx. at 242-253, 318-329.

[8] Ms. Young and Ms. Dorton testified that they have added "rip-off" to titles, but not for a period of years. Defs' Appx. at 9; Pl's Appx. at 311, 331. Similarly, Ms. Wynn testified that she added "rip-off" to titles when she first started with Defendants around four years ago. Defs' Appx. at 13, 15; Pl's Appx. at 256. Ms. Wynn testified that she has never added anything other than location information or "rip-off" to a title, except that she has copied and pasted a company name from a report into a title where a title was left blank. Defs' Appx. at 11. None of the titles at issue contain only a company name. Amd. Comp.

[9] Ms. Craven testified that she has not added "fraud"or "scam" or any words other than "nationwide" or possibly "rip-off" to a title. Pl's Appx. at 237, 345.

several years since "rip-off" was added to a title.[10]  Accordingly, the Court finds no genuine

issue of fact regarding who authored the titles, headings, and categories of the postings at issue.


To the extent there is an issue of fact as to whether content monitors added geographical

information to the titles at issue here, the Court does not find this factual issue material.  Such

geographical information is insufficient participation for defendants to lose CDA immunity in

this case, where this information would have been added to allegedly disparaging titles of

disparaging reports authored by third parties.  The Court notes that courts have construed

immunity under the CDA broadly in all cases arising from the publication of user-generated

content.  *See Doe v. Myspace, Inc.*, 528 F.3d 413, 418 (5th Cir. 2008).

In addition, even were Defendants to lose CDA immunity with respect to geographical

information in titles, the Court finds summary judgment would still be appropriate.  Under the

CDA, website operators are only considered "information content providers," for the information

at issue that the operators are responsible for creating or developing.  *See Carafano v.

Metrosplash.com, Inc.*, 339 F.3d 1119, 1123 (9th Cir. 2003).  Thus, even if Plaintiff could prove

by a preponderance of the evidence that Defendants added geographical information to the

allegedly disparaging titles of the disparaging reports at issue in this case, the Court finds the

---

[10]  The sixteen postings Plaintiff complains of were posted from November 2, 2006 to January 9, 2008.  Amd. Compl.  Thus, some of the reports at issue were posted before the date found on Defendants' formal policy document, dated August 22, 2007.  However, content monitors' testimony establishes that, for several years prior to August 22, 2007 Defendants had an informal policy of not adding "rip-off" or other words to reports and titles.  Pl's Appx. at 256 (Ms. Wynn's testimony that when she started four years ago, she added "rip-off" but was told to stop), 262 (Ms. Young's testimony that she added "rip-off" a long time ago, but was corrected on it and didn't do it again), 311 (Ms. Dorton's testimony that she added "rip-off" years ago, but was told to stop), 332-33 (Ms. Young's testimony that while Defendants' policy was put into a document dated August 22, 2007, she essentially always operated under the policy).

addition of geographical information alone would not be sufficient for Defendants to be liable for defamation/libel, interference with business relationship, business disparagement under Texas law, disclosure of trade secrets and confidential information, and civil conspiracy as a matter of law.

Furthermore, the Court rejects Plaintiff's argument that a fact issue exists because several content monitors testified that they could not specifically remember reviewing reports regarding Plaintiff. The evidence shows that content monitors briefly review numerous postings each day. *See* Defs' Appx. at 9 (Ms. Young's testimony agreeing with statement that she can't remember a posting because she reviews hundreds of reports every day), 186-188 (Declaration of Defendant Magedson, stating that as of June 2008, the Rip-Off Report contained more than 330,000 individual reports and that, including rebuttal reports, the site contains more than one million unique entries, with Defendants receiving 500-800 new reports/rebuttals every day). Accordingly, the Court does not find the content monitors' failure to recall individual postings puts their credibility at issue or otherwise establishes a genuine issue of material fact regarding who authored the titles, headings, and categories of the posting about Plaintiff.

The Court also rejects Plaintiff's argument that a fact issue exists because content monitors testified that they sometimes changed the categories in which postings were listed. While several content monitors testified that they sometimes changed the category in which a report was posted, Defendants have produced uncontroverted evidence that the websites, as of 2003, would not save any changes to categories made by content monitors. Defs' Appx. at 188. Plaintiff has not presented any evidence contradicting this. Accordingly, the Court finds content monitors' testimony that they changed categories fails to raise a genuine issue of material fact

regarding whether Defendants are information content providers.

**D.    Destruction of Evidence**

Plaintiff argues that the magistrate judge erred in failing to attribute any weight to the fact that Defendants destroyed all the evidence that would prove Plaintiff's claim.  Plaintiff previously filed a motion for sanctions, alleging that Defendants intentionally destroyed relevant evidence.  On August 14, 2008, this Court referred Plaintiff's Motion for Sanctions Against Defendants for Intentional Spoliation of Relevant Evidence to the magistrate judge for recommendation or determination.  On October 8, 2008, the magistrate judge found Plaintiff failed to demonstrate that sanctions are warranted, and recommended denial of Plaintiff's motion for sanctions.  Plaintiff filed an objection to the magistrate judge's findings and recommendation, which this Court resolved pursuant to Rule 72(a) of the Federal Rules of Civil Procedure, finding the magistrate judge's ruling was not clearly erroneous or contrary to law.

This case presents issues of "nested" standards of review.  Plaintiff makes the same arguments regarding the alleged destruction of evidence in its objection to the magistrate judge's ruling on Defendants' motion for summary judgment as it did it in support of its motion for sanctions for intentional spoliation of evidence.  However, a party does not obtain a more discretionary standard of review than that generally required under the Federal Rules of Civil Procedure on a nondispositive order merely by objecting to it in response to a dispositive motion. *See Millennium Mktg. Group, LLC, et al. v. U. S.*, No. H-06-962, 2008 WL 4461999 at * 2 (S.D. Tex. Sept. 29, 2008).  Accordingly, for the reasons stated above, as well as in this Court's memorandum opinion and order resolving objections and denying Plaintiff's motion for sanctions, the Court does not find that the magistrate judge erred in failing to attribute any

weight to Plaintiff's contention that Defendants destroyed evidence that would have supported Plaintiff's claims.

### E.    Administrative reports

Plaintiff contends that the magistrate judge incorrectly analyzed the significance of administrative reports produced *in camera* in determining that Defendants are not "information content providers" regarding the posts at issue in this case.  First, Plaintiff contends that it was error to consider these reports at all in connection with Defendants' motion for summary judgment because the reports were not attached as evidence in support of Defendants' motion and were produced to the Court only for a ruling on whether the documents are discoverable. Second, Plaintiff argues that these reports do not support the magistrate judge's conclusion because, while they show the IP address of the person from whom the posting originated, the reports do not speak to whether content monitors edited or altered any content on the websites.

Having reviewed the summary judgment record before the Court *de novo*, the Court finds summary judgment is appropriate regardless of whether the administrative reports are considered.  The magistrate judge cites these reports in support of the noncontroversial fact that the basic reports about Plaintiff were originally submitted by third parties.  As Plaintiff notes in its objection, this point is undisputed.  The administrative reports are not material to the issue of whether Defendants added content to the postings at issue after reports were submitted by third parties, tending neither to prove nor disprove this point.  Accordingly, the Court finds the magistrate judge's consideration of the administrative reports was harmless, and does not call into question the magistrates findings and recommendation regarding Defendants' motion for summary judgment.

**F.  Mr. Woodard's former deposition testimony**

Plaintiff argues that the magistrate judge erred in failing to consider the deposition testimony of non-party Dickson Woodard from *GW Equity, LLC v. Dickson Woodard*, No. 06-12231, 166th Judicial District, Dallas County, Texas.  Plaintiff argues this testimony creates a genuine issue of material fact because Mr. Woodard testified that he did not write some of the postings at issue here, and that Mr. Magedson wrote some of these postings.  Plaintiff argues that Mr. Woodard's former testimony is admissible because he is unavailable as a witness under Federal Rule of Civil Procedure 32(a)(4)(D) and Federal Rule of Evidence 801(a)(2).

Former testimony is only admissible if the party against whom the testimony is being offered, or a predecessor of interest, had an opportunity and similar motive to develop the testimony by direct, cross, or redirect examination.  *See Battle v. Memorial Hosp. at Gulfport*, 228 F.3d 544, 552 (5th Cir. 2000).  Plaintiff does not dispute that the deposition in question was given in a state court case to which Defendants were not parties, and that Defendants were neither present nor represented at the deposition.  In addition, Plaintiff has not raised any issue that there was a similar motive for developing Mr. Woodard's testimony in the former case. Accordingly, even if Mr. Woodard should be considered "unavailable" as defined by the Federal Rules of Civil Procedure and/or Federal Rules of Evidence, Plaintiff failed to establish the admissibility of Mr. Woodard's former testimony.  *See Battle*, 228 F.3d at 552.

The Court rejects Plaintiff's argument that former deposition testimony can be used for any purpose, including as summary judgment evidence, whenever a witness is "unavailable"

under Rule 32(a)(4) of the Federal Rule of Civil Procedures.[11]  The Court notes that Rule

32(a)(1) conditions use of depositions against a party at hearing or trial to situations where the

party was present or represented at the taking of the deposition or had reasonable notice of it and

the use is allowed by 32(a)(2) through 32(a)(8).[12]  In addition, Rule 32(a)(8) limits the use of

former testimony to situations involving the same subject matter between the same parties or

their representatives or successors in interest.[13]  The Court does not find that former testimony is

competent summary judgment evidence whenever a witness is unavailable, and instead finds that

former testimony is not competent summary judgment evidence unless the party against whom

the testimony is being offered, or a predecessor of interest, had an opportunity and similar

motive to develop the testimony by direct, cross, or redirect examination.

---

[11]  Rule 32(a)(4) provides that [a] party may use for any purpose the deposition of a witness, whether or not a party, if the court finds:  (A) that the witness is dead; (B) that the witness is more than 100 miles from the place of hearing or trial or is outside the United States, unless it appears that the witness' absence was procured by the party offering the deposition; (C) that the witness cannot attend or testify because of age, illness, infirmity, or imprisonment; (D) that the party offering the deposition could not procure the witness's attendance by subpoena; or (E) on motion and notice, that exceptional circumstances make it desirable--in the interest of justice and with due regard to the importance of live testimony in open court--to permit the deposition to be used.

[12]  Rule 32(a)(1) provides that in general, at a hearing or trial, all or part of a deposition testimony may be used against a party on these conditions: (A) the party was present or represented at the taking of the deposition or had reasonable notice of it; (B) it is used to the extent it would be admissible under the Federal Rules of Evidence if the deponent were present and testifying; and (c) the use is allowed by Rule 32(a)(2) through (8).

[13]  Rule 32(a)(8) provides that a deposition lawfully taken and, if required, filed in any federal- or state-court action may be used in a later action involving the same subject matter between the same parties, or their representatives or successors in interest, to the same extent as if taken in the later action. A deposition previously taken may also be used as allowed by the Federal Rules of Evidence.

The Court also rejects Plaintiff's argument that Mr. Woodard's former testimony is admissible because Defendants had an opportunity to examine Mr. Woodard in connection with this action. Plaintiff has not cited any authority, and the Court has found none, to support the proposition that former deposition testimony of a witness is admissible if the witness was also deposed in the present action.[14] Finding no evidence raising an issue of fact regarding whether Defendants or a predecessor of interest had an opportunity and similar motive to develop Mr. Woodard's former testimony by direct, cross, or redirect examination, the Court finds Mr. Woodard's former testimony was properly excluded by the magistrate judge.

### G. Mr. Bammel's testimony

Plaintiff argues that the magistrate judge erred in failing to attribute any weight to non-party witness Josh Bammel's affidavit. Plaintiff contends this affidavit creates a genuine issue of fact, and that the magistrate judge made an improper credibility determination by crediting Mr. Bammel's deposition testimony and concluding that the affidavit was not competent summary judgment evidence.

Josh Bammel, a former employee of GW Equity, posted several reports disparaging Plaintiff on www.ripoffreport.com. In his affidavit, signed January 17, 2008, Mr. Bammel averred that while he submitted disparaging reports, he did not draft the headings found at the top of these reports. Pl's Appx. at 266. Mr. Bammel also averred that he used a yellow highlighter and clearly marked on exhibits to the affidavit all the words or statements that he did

---

[14] The Court notes that Mr. Woodard was deposed by Defendants in this action, but refused to answer questions from Plaintiff. *See* Doc. No. 246 (3:07-CV-976) (N.D. Tex. Oct. 24, 2008). While Mr. Woodard's refusal to answer Plaintiff's questions in this action may justify excluding his testimony in this action, the Court does not find this establishes the admissibility of Mr. Woodard's former deposition testimony. Plaintiff did not object to the magistrate judge's consideration of Mr. Woodard's deposition testimony taken in this action.

not personally draft or input into the website.[15]  *Id.*  Mr. Bammel further averred that he had

personal knowledge of every statement of fact contained in the affidavit, and that every

statement in the affidavit is true and correct.  Pl's Appx. at 266.

In contrast, Mr. Bammel's deposition, given May 8, 2008, is replete with statements

demonstrating Mr. Bammel's profound lack of personal knowledge regarding what he posted on

www.ripoffreport.com.   Pl's Appx. 421-436; Ds' Appx. at 22-32.  Mr. Bammel testified that he

had been drinking before posting on Defendants' website and, as a result, was unable to

remember what he posted.  Defs' Appx. at 25, 29-30 (where Mr. Bammel stated he had been

drinking and has "no clue" what he wrote).  Mr. Bammel testified that he didn't believe he put

all of the words in a particular title on the website, but couldn't identify specifically which words

he included, noting that "[a]fter four or five Crown and Cokes, man, you aren't going to

remember what you wrote."  Defs' Appx. at 30.  When asked if he believed his affidavit suggests

that Defendants added content to a title, Mr. Bammel said that he didn't remember what the title

was to begin with, so he couldn't say yes or no.  Defs' Appx. at 28.

Mr. Bammel also testified that he couldn't remember what he wrote for titles because, in

addition to being drunk, he wasn't interested in the titles.  Defs' Appx. at 27.  In explaining why

he could not remember what he titled a report, Mr. Bammel testified that he was "so

disinterested" in what to put as a title, and was just more interested in getting the body of the

posting done.  *Id.*  Mr. Bammel further testified that he didn't personally draft some of the

content he posted on Defendants' website, and instead copied and pasted the content from

---

[15]  The affidavit submitted by Plaintiff attaches exhibits consisting of "rip-off" reports printed off
of www.ripoffreport.com.  However, there is no discernible highlighting on the version of the exhibits
submitted to the Court.  *See* Pl's Appx. at 267-283.

someone's blog. *Id.* at 25. The Court finds this testimony demonstrates that Mr. Bammel does not have personal knowledge regarding what he posted on www.ripoffreport.com, and did not have such knowledge at the time of posting due to intoxication and disinterestedness. Given this testimony, the Court cannot conclude that the magistrate judge erred in not considering Mr. Bammel's affidavit competent summary judgment.

A few statements made by Mr. Bammel at his deposition suggest he is able to recall some things regarding the postings he made about GW Equity. For example, Mr. Bammel recalls that he personally posted reports about GW Equity, as well as that he copied some of the content from a blog. Defs' Appx. at 25. With regard to report titles, Mr. Bammel stated that he "knows" he didn't put in as much information in titles as was posted, and also that he doesn't "believe" he put all of the words in a particular title. Pl's Appx. at 435; Defs' Appx. at 30 (where Mr. Bammel agrees with the statement that he doesn't believe he put all of the words in the title "illegal contracts, lairs, and charlatans, Dallas, Texas" and also stated that he wrote "GW Equity," but doesn't recall writing "Generational Wealth").

While there are a few statements within Mr. Bammel's deposition testimony suggesting he has personal knowledge of some of the circumstances regarding posting on Defendants' website, the Court finds that Mr. Bammel's testimony as a whole demonstrates that Mr. Bammel lacks personal knowledge regarding the content of the titles he submitted to www.ripoffreport.com. While Mr. Bammel states that he knows, thinks, and believes that he didn't write some words in the titles posted on Defendants' website, he cannot recall which words he wrote or did not write, and also testified that it was possible that he wrote all of a particular title. *Id.* at 26. Accordingly, the Court finds that Mr. Bammel's testimony

demonstrates that, due to intoxication and disinterestedness, he was not aware of what he put as the content of titles to the reports about GW Equity submitted to www.ripoffreport.com. Considering this testimony, the Court does not find the magistrate erred in concluding Mr. Bammel does not have personal knowledge under Rule 602 of Federal Rules of Evidence. *See* FED. R. CIV. P. 602 (providing that a witness may not testify to a matter unless evidence has been introduced sufficient to support a finding that the witness had personal knowledge of the matter).

Additionally, the Court finds that were Mr. Bammel's affidavit considered competent summary judgment evidence, it fails to raise a genuine issue of material fact as to whether Defendants are "information content provider" because no reasonable jury could find Defendants added content to titles based on Mr. Bammel's testimony. Mr. Bammel testified at his deposition that when he signed his affidavit, he was merely averring that he didn't recall putting all the words in the titles on Defendants' website. Defs' Appx. at 30 (where Mr. Bammel states that he was never interviewed before Plaintiff drafted his affidavit, he doesn't know what wording Plaintiff used in drafting, and that all he said was that he didn't recall putting in all the words in titles). Mr. Bammel testified that Plaintiff drafted the affidavit without Mr. Bammel's input and that he "read through it real quick" before signing. Pl's Appx. at 431. Mr. Bammel also stated that he couldn't recall personally highlighting text of the exhibits to the affidavit. *See* Defs' Appx. 23-26; Pl's Appx. at 266-283. Mr. Bammel also testified that he was led to believe that if he signed the affidavit, GW Equity would release him from liability for his postings. Defs' Appx. at 23-26. There is no evidence before the Court contradicting Mr. Bammel's statements that his affidavit was drawn up by Plaintiff without his input, or that Mr. Bammel

only briefly read through the affidavit before signing.  In addition, there is no evidence contradicting Mr. Bammel's testimony that Plaintiff led Mr. Bammel to believe that if he signed the affidavit, Plaintiff would release him from liability for his postings about Plaintiff.

The other summary judgment evidence before the Court also demonstrates that no reasonable juror could find Defendants added content to titles based on Mr. Bammel's statements.  The three reports Mr. Bammel authored were posted well after Defendants put in place a formal policy against adding content to titles.  Defs' Appx. at 17 (Deposition of Lynda Craven, discussing formal policy prohibiting adding content to titles, policy dated 7/22/07), 177-179 (Policy, dated 8/22/07, stating that "CMs shall not modify, supplement, substantively alter, create, or materially edit any Posting, including titles to Postings); Pl's Appx. at 266-283 (indicating that Mr. Bammel posted reports to www.ripoffreport.com on 10/13/07, 1/8/08, 1/9/08).  Two of the content monitors who reviewed Mr. Bammel's postings testified specifically that they did not add content to the titles of these reports.[16]  Defs' Appx. at 9 (Garyann Young reviewed the 10/13/07 posting, and testified that she did not add anything to "GW Equity, illegal contracts, liars, and charlatans, Dallas, Texas," and at most would have removed a duplicate geographical reference), 17 (Lynda Craven reviewed the 1/8/08 posting, and testified that she would not have added anything to titles after the 7/22/08 policy was in place).  Additionally, the testimony of the content monitors who reviewed postings about GW Equity establishes that, at most, they only ever added geographical references or "rip-off" to titles, and none of Mr. Bammel's postings contain "rip-off" in the title.  Accordingly, the Court concludes that Mr.

---

[16]  Defendants' statement of facts (Doc. # 165) indicates that Paulette Griffith reviewed a third report posted by Mr. Bammel on January 9, 2008, and that she testified that she didn't add content to this posting.  Defs Stmt. of Facts at 8.   However, the page cited by Defendants does not address this specific posting.  *Id.*; Defs' Appx. at 3.

Bammel's affidavit fails to raise a genuine issue of material fact regarding whether Defendants added content to titles or are otherwise responsible for the titles at issue. *See Anderson,* 477 U.S. at 249-250 (if evidence is merely colorable, or is not significantly probative, summary judgment may be granted, as summary judgment is appropriate if there can be but one reasonable conclusion); *Scott v. Harris*, 550 U.S. 372 (2007) (court noted that where opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment). To go to trial on the barest of evidence presented by Plaintiff would be but "a bootless exercise, fated for an inevitable result but at continued expense for the parties, the preemption of trial date that might have been used for other litigants. . . and a burden on the court and taxpayers." *Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1195 (5th Cir. 1986).

The Court notes the perplexing situation that would arise were Mr. Bammel's affidavit to establish a genuine issue of material fact even though the evidence establishes that Mr. Bammel has no recollection of what words he put into the titles. As previously noted, Defendants only lose immunity under the CDA to the extent they are responsible for creation or development of the alleged harmful content. *MCW, Inc.*, 2004 WL 833595 at *8. Assuming a reasonable jury could conclude from Mr. Bammel's affidavit and testimony that Defendants added *some* content to titles, the Court is without a reasonable basis for determining *what* content was added by Defendants, as distinguished from the content contributed by third parties. The uncontroverted evidence establishes that third parties submitted content for titles, and there is no evidence before the Court tending to suggest that any particular word or phrase was added by Defendants with the exception of perhaps the addition of geographical references. The Court finds such evidence

24

fails to raise an issue of material fact and that summary judgment is appropriate.

**H.     Immunity in light of Defendants' Profits**

Plaintiff also argues that the magistrate judge erred by finding that Defendants are immune from liability under the CDA even though they profit by the publication of defamatory content on the websites.  Specifically, Plaintiff argues that because Defendants will add positive comments drafted by Defendant Magedson for a fee, Defendants are "information content providers."

The evidence demonstrates that Defendants have a "Corporate Advocacy Program," in which, for a fee, Defendants will investigate "rip-off reports" targeting a company and draft and post rebuttals to a negative report.  Pl's Appx. at 347-354.  The Court does not find this makes Defendants "information content providers" under the CDA.  Plaintiff cites no case law demonstrating that such conduct bars CDA immunity, and has not demonstrated that the "Corporate Advocacy Program" has played any role in this case.  Like other courts to consider this issue, this Court does not find the "Corporate Advocacy Program" prohibits Defendants from immunity under the CDA.  *See Global Royalties, Ltd. v. Xcentric Ventures, LLC*, 544 F.Supp. 2d 929, 932-33 (D. Ariz. 2007) (rejecting plaintiff's argument that the Corporate Advocacy Program made defendants responsible for the creation or development of all of the posts on their website); *Whitney Info. Network Inc. v. Xcentric Ventures*, LLC, No. 2:04-CV-47-FtM-34SPC, 2008 WL 450095 at *6-12 (M.D. Fla. Feb. 15, 2008) (finding CDA immunity even though aware of the Corporate Advocacy Program).  While Defendants may be liable for content they draft pursuant to this program, there is no evidence before the Court suggesting that content developed pursuant to the "Corporate Advocacy Program" is at issue in this case.  Accordingly,

25

Defendant's "Corporate Advocacy Program" does not demonstrate that there is an issue of fact regarding whether Defendants are "information content providers" under the CDA.

**V.      Conclusion**

For the forgoing reasons, the Court concludes that the magistrate judge's October 8, 2008 order recommending the Court grant Defendant's motion for summary judgment is hereby **AFFIRMED**, and Defendants' Motion for Summary Judgment is hereby **GRANTED**.

**SO ORDERED** on this **9th** day of **January, 2009**.

Reed O'Connor
**UNITED STATES DISTRICT JUDGE**